1           IN THE UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF FLORIDA
2                        **MIAMI**
             CASE NO. **18-CV-24586-PCH**
3    _____

4    **ALEXANDER JOHNSON**,
                     Plaintiff
5            vs.                          **May 9, 2019**

6    **OCARIS MANAGEMENT GROUP, INC.**,
                     Defendant.
7    _____

8               **MOTIONS HEARING (EXCERPT)**

9        BEFORE THE HONORABLE **PAUL C. HUCK**,

10       UNITED STATES DISTRICT COURT JUDGE
     _____

11                  **A P P E A R A N C E S**

12
     FOR **THE PLAINTIFF**:     **SCOTT R. DININ**, ESQ
13   ALEXANDER JOHNSON         Scott R. Dinin, PA
                               4200 NW 7th Avenue
14                             Miami, FL 33127
                               (786) 431-1333
15                             Srd@dininlaw.com

16   FOR THE DEFENDANT:        **EDWARD S. POLK**, ESQ
     OCARIS MANAGEMENT         Cole Scott & Kissane PA
17   GROUP, INC.               9150 S. Dadeland Blvd, #1400
                               Miami, FL 33156
18                             (305) 350-5338
                               Edward.polk@csklegal.com
19

20
     REPORTED BY:              **GIZELLA BAAN-PROULX**, RPR, FCRR
21                             United States Court Reporter
                               400 North Miami Avenue, 8th Floor
22                             Miami  FL  33128
                               (305) 523-5634
23                             gizella_baan-proulx@flsd.uscourts.gov

24   Also present:

25        ALEXANDER JOHNSON

<u>**P R O C E E D I N G S**</u>

*(The following proceedings were held in open court.)*

**THE COURT:**  Are you all ready to proceed?

**MR. POLK:**  We are.

09:58  **MR. DININ:**  Yes, Your Honor.

**THE COURT:**  I'll start with Johnson versus Ocaris Management Group, Inc., doing business as U-Gas.

Appearances, please.

**MR. DININ:**  It's Attorney Scott Richard Dinin for Mr.
09:59  Alexander Johnson who is in the courtroom this morning.

**THE COURT:**  How do you pronounce it, Dinin?

**MR. DININ:**  Yes, Your Honor, Dinin.

**THE COURT:**  And I think we have a real-time display for Mr. Johnson so he can follow the proceedings; is that
09:59  correct?

**MR. DININ:**  Absolutely.  I'm looking at it right now and it looks like it's working perfectly.

**THE COURT:**  Okay.  And there is no representative of the defendant in this case, correct?

09:59  **MR. DININ:**  We have yet to have contact with him.  I know we have mailed stuff out and followed the Court's orders.

**THE COURT:**  The other matter we have is Johnson versus CKC Food Stores doing business as Chevron.

May I have appearances in that case?

09:59  **MR. DININ:**  It's again, Attorney Scott Richard Dinin

1   for the plaintiff, Mr. Alexander Johnson, who in the courtroom

2   today.

3           MR. POLK:  Good morning, Your Honor.  Edward Polk,

4   Cole Scott and Kissane for the defendant.

10:00   5           THE COURT:  Can you spell your last name?

6           MR. POLK:  P-O-L-K.

7           THE COURT:  Polk.  One of our presidents used to be

8   Polk.  Okay.  Mr. Polk, I've decided to have you here because I

9   know you've got a fairly straightforward motion for extension

10:00   10  of time, the case hasn't been settled, but you're in the

11  process of working out the details, and I previously asked that

12  the settlement documents be submitted by a certain date.

13  Apparently, you couldn't make that date and now you want an

14  extension, but I thought rather than having a telephone

10:00   15  conference it was important to have you here because we were

16  talking about mainly fees and damages in the Ocaris case and

17  there may be some relevance with regard to what you've done in

18  the Chevron or the CKC, so I'll have you stay with us for a

19  while.  Okay?

10:00   20          MR. POLK:  That's fine, Your Honor.

21          THE COURT:  All right.  Who are the witnesses for the

22  plaintiff in the Ocaris case?

23          MR. DININ:  Well, Your Honor, you asked me to make

24  sure that the plaintiff is here and it's just the plaintiff,

10:01   25  Your Honor, and he can testify to his damages.

1          THE COURT:  He'll be testifying with regard to the

2    fees?

3          MR. DININ:  He made himself available today, per your

4    order, and he wanted to come down and provide whatever

10:01  5   testimony.

6          THE COURT:  Mr. Johnson is the witness with regard to

7    fees?  Are you going to be a witness with regard to fees?

8          MR. DININ:  I've just submitted my affidavit and the

9    time sheets as you've requested.

10:01  10         THE COURT:  All right.  But are you going to be a

11   witness?  I'll ask you questions about that.

12         MR. DININ:  I'll be glad to take any questions, yes,

13   Your Honor.

14   Thereupon,

10:01  15                    SCOTT R. DININ, ESQ.

16   having been duly sworn by the court reporter, testified as

17   follows:

18         THE COURT:  Okay, let me get some basis here which to

19   start from.  There are three items of relief that the -- and

10:01  20   I'll just refer to it as Johnson in the Ocaris case.  If I'm

21   going to refer to the CKC case, I'll refer to that

22   specifically; otherwise, I'm referring to the Ocaris case.

23         Do you all have that understanding?

24         MR. DININ:  Yes, Your Honor.

10:02  25         THE COURT:  It appears to me we have three types of

```
     1  relief that are requested.  There's injunctive relief, there is
     2  a claim for damages under the Florida Civil Rights Act, I think
     3  it's Chapter 760, as I recall, and then there's a claim for
     4  attorneys' fees and costs.  Okay.  That's it.  Okay.
10:02 5          Now, with regard to injunctive relief, what corrective
     6  measures are you seeking?
     7          MR. DININ:  Well, Your Honor, we -- you know, I've
     8  asked the client specifically because it relates to him as to
     9  how he would feel and I look to what we have negotiated to
10:02 10 similarly situated other defendants, because I decided to bring
    11  these cases on behalf of this plaintiff and others because of
    12  the proliferation of these TVs throughout over several years
    13  have built up, so we brought the suits together and negotiating
    14  with other petroleum and ownership people and groups, we have
10:03 15 decided the best course of action is to turn off the TVs until
    16  the appropriate captions can be put on those, and then so we're
    17  asking the TVs to be turned off on these pumps until the
    18  captions can be provided, and other groups --
    19          THE COURT:  I'm trying to absorb that because what
10:03 20 you're telling me is because there's not, at least currently
    21  available or at a prohibitive cost or something of that nature,
    22  that the remedy is to deprive everybody of the so-called
    23  benefit of news and entertainment that these videos provide.
    24  That's what you're telling me?
10:03 25          MR. DININ:  Yes, and I can furnish -- yes, Your Honor.
```

1           THE COURT:  Okay.  That's kind of an interesting

2      thing.

3           What is the current status with regard to closed

4      caption at these kind of facilities?  I'm sure everybody is

10:04  5      familiar with them, so the record is correct, or I have seen a

6      number of these videos when I gas up my car and they're around

7      the state.  They're about eight by eight, something like that,

8      fairly small screen, and as you pump gas or wipe off your

9      windshield they play.  Okay.

10:04 10           Is there currently on the market a closed caption

11      facility or ability?

12           MR. DININ:  Our research and our feedback from defense

13      counsel has been that a lot -- not all of these -- but some of

14      them do have captions and they can be done.

10:04 15           THE COURT:  There are some out there currently that

16      have captions?

17           MR. DININ:  Yes, they are, sporadically, but we have

18      seen them.  The vast majority don't, and from what I understand

19      from what other defense counsels who told me that the main

10:04 20      provider of this equipment is a company called Gas Station TV

21      that's owned by Destination TV, that obviously can't be sued

22      under the ADA laws.  That's why we had to bring the current

23      lawsuit.

24           But the old technology they're using apparently is

10:05 25      hard driven where it's not like an actual TV set, so it's

1   programmed the way it is.  They have to reconfigure --

2          THE COURT:  Wait, not all the technicalities.  Is it

3   readily available?  Are closed caption facilities readily

4   available for all -- well, there are 26 lawsuits that you filed

10:05  5   in Dade County and Broward County.  That's my count.  I may be

6   off by one, but I think it's 26, right?

7          MR. DININ:  Something like that, Your Honor.

8          THE COURT:  And they all claim the same thing about

9   these videos not having closed captioning capability?

10:05  10          MR. DININ:  That's correct.  Yes, Your Honor.

11          THE COURT:  All right.  Do those 26 have the

12   technology to do this with something that's not a prohibitive

13   cost?

14          MR. DININ:  The people that we have settled with are

10:05  15   all working towards requiring that.  That is per the settlement

16   agreement.

17          THE COURT:  What does that mean?

18          MR. DININ:  That means within a year or two, per our

19   agreement, they're going to have captions on the screen as they

10:06  20   provide them.  Until then, they're going to turn it off.

21          THE COURT:  So for a year or two they're going to shut

22   it off?

23          MR. DININ:  They didn't want to incur any other

24   liability, they didn't want to disenfranchise the other people

10:06  25   from that agency or that service once we brought it to their

1  attention and because --

2          THE COURT:  So it's Mr. Johnson's view the best

3  approach is to -- because it can't be done, you know, right

4  away, is just to shut off everybody, this news and

10:06  5  entertainment --

6          MR. DININ:  Yes.

7          THE COURT:  -- capability.

8          MR. DININ:  Yes.

9          THE COURT:  That's interesting.  Very interesting.

10:06  10  Okay.

11          Anything else in regard to the injunctive relief?

12          MR. DININ:  No.  I just think that it's proper

13  because --

14          THE COURT:  Anything else?

10:06  15          MR. DININ:  No.  No, Your Honor.

16          THE COURT:  What about, I note in the proposed final

17  judgment in this case that was submitted there was a blank left

18  for damages pursuant to the FCRA.  What's the claim for damages

19  in terms of dollars?

10:07  20          MR. DININ:  I don't believe that that case has been

21  finalized, but I brought Mr. Johnson here to do that.

22          Are you asking for the amount?

23          THE COURT:  Yes, sir.

24          MR. DININ:  Well, in California they award $4,000.

10:07  25          THE COURT:  This is not under California.  Don't

|  |  |  |
|---|---|---|
|  | 1 | interrupt me, please.  Excuse me.  Let's not talk over each |
|  | 2 | other.  It's difficult for the court reporter and frustrates |
|  | 3 | me. |
|  | 4 | Can we agree to that? |
| 10:07 | 5 | **MR. DININ:**  Yes, Your Honor. |
|  | 6 | **THE COURT:**  This is not under the California Civil |
|  | 7 | Rights Act, this is brought under the Florida Civil Rights Act |
|  | 8 | Right. |
|  | 9 | **MR. DININ:**  Absolutely. |
| 10:07 | 10 | **THE COURT:**  What are the damages that you're claiming, |
|  | 11 | the amount? |
|  | 12 | **MR. DININ:**  Well, we would be claiming $4,000. |
|  | 13 | **THE COURT:**  Okay.  And I think the general description |
|  | 14 | of those would be loss of dignity, mental anguish and other |
| 10:07 | 15 | tangible injuries.  That's what the alleged complaint is? |
|  | 16 | **MR. DININ:**  Yes, Your Honor. |
|  | 17 | **THE COURT:**  And it's your representation that $4,000 |
|  | 18 | would properly compensate Mr. Johnson for those losses? |
|  | 19 | **MR. DININ:**  Yes, Your Honor. |
| 10:08 | 20 | **THE COURT:**  Okay.  All right.  And then I've got your |
|  | 21 | summary of fees and costs.  I note that did not have an entry |
|  | 22 | for this particular motion.  At least I think that's the case. |
|  | 23 | Total in accordance with the submission of the summary was |
|  | 24 | $7,350, but that was through March the 15th of this year.  But |
| 10:08 | 25 | it does not include -- it's got filed a motion for final |

1  judgment, but it doesn't have in there, I don't think, entry

2  for preparation of the final judgment motion.

3      **MR. DININ:**  If I don't have every single extended

4  billing up to this day, I can live with what I've already put

10:09 5  there.  I'm okay --

6      **THE COURT:**  Am I correct there's no entry for the time

7  extended for doing that task, preparing the motion --

8      **MR. DININ:**  I'll stand with that.

9      **THE COURT:**  -- for the hearing today?

10:09 10      **MR. DININ:**  I'll be happy to stand on whatever was

11  submitted, Your Honor.

12      **THE COURT:**  So the answer is yes, it does not include

13  that?

14      **MR. DININ:**  Yes, sir, it does not include that.

10:09 15      **THE COURT:**  Let's talk about the Florida Civil Rights

16  Act claim first.  This case, and based on my review and, by the

17  way, I've reviewed all of the 26 counts -- complaints, rather,

18  that have been filed both in this county and Broward County and

19  they all contain a Count 2, correct?

10:09 20      **MR. DININ:**  I believe so.  Yes, Your Honor.

21      **THE COURT:**  It's my understanding -- and I think it's

22  correct -- let me pull this up here -- that in none of those

23  complaints does Mr. Johnson allege that he has exhausted his

24  administrative remedies; is that correct?

10:10 25      **MR. DININ:**  That's correct.

THE COURT:  I have before me, and I'm sure you're familiar since you have a lot of experience in this area and you filed 26 cases alleging Count 2, the Civil Rights Act here in Florida, that you're familiar with the contents of that statute?

MR. DININ:  I try to keep up-to-date as much as I can.

THE COURT:  And that statute provides the relief for which you're seeking in Count 2?

MR. DININ:  Yes.

THE COURT:  And you can't discriminate based on a number of items, including disability.

MR. DININ:  That's correct.

THE COURT:  And then it also says that if the statute prohibiting -- I'm quoting now from Section 760.07 entitled, "Remedies For Unlawful Discrimination," and in the middle of that paragraph it says, "If the statute prohibiting unlawful discrimination provides the administrative remedy, the action for equitable relief and damages provided for in this section may be instituted," or, excuse me, "may be initiated only after the plaintiff has exhausted his or her administrative remedies."

You're aware of that?

MR. DININ:  Yes.

THE COURT:  And then referring to Section 76.11 entitled, "Administrative and Civil Remedies Construction," and

1  it provides, any person -- quote, any person aggrieved by a

2  violation may file a complaint with the Commission without the

3  alleged violation -- with the Commission within 365 days of the

4  alleged violation naming the person responsible for the

10:12  5  violation described in the violation."

6         It says, "The person aggrieved by Section 760.1

7  through .10 may file a complaint with the Commission within

8  365 days of the alleged violation, namely the employer,

9  employment agency," et cetera, et cetera.

10:12  10         As I read the statute and as at least one judge in

11  this Southern District read it that there's a requirement that

12  you exhaust your administrative remedies by seeking relief

13  pursuant to 760.11.

14         Am I correct?

10:13  15         MR. DININ:  I believe you're correct.  And -- yes.

16         THE COURT:  And that's -- I'm looking at one

17  particular case, the Wittbold versus Miami-Dade County case

18  which is decided in this district by Judge Cooke, where she

19  talked about that statute and says that, citing another case,

10:13  20  quote, where a plaintiff fails to allege in his complaint an

21  exhaustion of administrative remedies under the FCRA, the claim

22  should be dismissed, closed quote.

23         You're aware of that case?

24         MR. DININ:  I don't believe I'm aware of that case.  I

10:13  25  know --

1          **THE COURT:**  But it was cited in a memorandum that was

2   in one of your cases.

3          **MR. DININ:**  It's not ringing --

4          **THE COURT:**  I'll tell you which case that was.

10:14   5   Alexander Johnson versus Speedway, LLC, 18-CV-62991, that's

6   before Judge Bloom.

7          And that's -- I believe that's where that case is

8   cited, together with a number of other cases where either the

9   Court have dismissed or you, on behalf of Mr. Johnson, have

10:14  10   voluntarily dismissed Count 2 when Count 2 has been challenged

11   by the defendant.

12          Is that true?

13          **MR. DININ:**  That's true.  It has been -- at the

14   current stage when it has been defended that he has not

10:14  15   exhausted all his administrative procedures, we have, in most

16   cases, done that.

17          Now we have looked at, in some cases, challenging it

18   because I think that the -- I don't have the statute in front

19   of me, the second paragraph, there's language that talks about

10:14  20   -- that would talk about challenging that, that it doesn't have

21   to be exhausted in some situations.  But so, right, today --

22          **THE COURT:**  Right now, you have to exhaust your

23   administrative remedies before you can file suit under the

24   Florida Civil Rights Act for discrimination based on

10:15  25   disability.

1       **MR. DININ:**  For that count, yes, Your Honor.

2       **THE COURT:**  And on a number of occasions, Judges have

3  either dismissed it pursuant to a motion to dismiss, done it

4  sua sponte, dismissed it, or you have taken a voluntary

10:15  5  dismissal when the defendant is coming in and challenges that

6  based on Count 2 based on the failure to exhaust remedies.

7  Isn't that true?

8       **MR. DININ:**  That is true, we have done that in several

9  situations, but we have been thinking about challenging it.

10:15  10       **THE COURT:**  And yet, you continue to file in every

11  single one of your cases, including the 26 cases that have been

12  filed based on the gas station videos, Count 2, even though in

13  none of those cases have you exhausted -- or at least you

14  haven't alleged that you have exhausted the administrative

10:15  15  remedies; is that correct?

16       **MR. DININ:**  For this plaintiff in those particular

17  cases, yes.  But in other cases we have not had that count, we

18  have not added it for other reasons.

19       **THE COURT:**  Are you telling me in no other case

10:16  20  involving Mr. Johnson based on a violation of his rights as his

21  disability allows him to make a claim, that no other claim

22  other than the gas station claims you've alleged Count 2?

23       **MR. DININ:**  No.  There's been ones we have alleged we

24  have been looking at it, but we have not had Count 2 alleged in

10:16  25  all of Mr. Johnson's complaints and I have other plaintiffs we

1  have not added that.  I just want to let you know, but in the

2  gas station cases that we've had --

3        THE COURT:  I'm talking about the Johnson case.

4        MR. DININ:  Yes.

10:16  5        THE COURT:  You have 26 cases that are recently,

6  within the last year filed, based on the gas station videos.

7        MR. DININ:  Absolutely, yes.

8        THE COURT:  And each one of those alleges Count 2?

9        MR. DININ:  Yes, Your Honor.

10:16  10        THE COURT:  In each of those situations there's been

11  no exhaustion of the administrative remedies, correct?

12        MR. DININ:  I think you're correct.  Yes, Your Honor.

13        THE COURT:  Based on the current law, that there's no

14  basis for those allegations or that claim?

10:16  15        MR. DININ:  Well, I don't -- excuse me a second.

16        I wouldn't say there's no basis.  Again, I was

17  thinking about challenging it but I would say we have been able

18  to take them out, we have not come forward and challenged them.

19        THE COURT:  How were you thinking about challenging

10:17  20  them?

21        MR. DININ:  There was a ruling that came out in

22  another case in the last couple months and I have hired other

23  counsel to advise me about going forward with this Count 2, and

24  after debating it around with several of my clients, I think we

10:17  25  have decided that in most cases we are advising their clients

1  to exhaust the Florida remedy before we will add that to their

2  lawsuits.

3         In these cases --

4         **THE COURT:**  But at this point you have not challenged

10:17  5  it in any of the 26 lawsuits or the other lawsuits that you've

6  alleged Count 2 that either been withdrawn voluntarily or

7  dismissed by the Court?

8         **MR. DININ:**  I don't have any current motions to

9  challenge it.

10:17  10  **THE COURT:**  I'm looking at the motion to dismiss filed

11  in Alexander versus Speedway, which is the one I referred to

12  before Judge Bloom, Civil 62991, and at page 12 of the motion

13  to dismiss, it talks about the general requirement of

14  exhausting remedies and cites a number of cases to that effect.

10:18  15  And then it says, notably -- I'm quoting now, "Notably, many of

16  plaintiffs' prior complaints have alleged similar FCRA claims

17  and those claims, paren, typically styled Count 2, closed

18  paren, have been repeatedly dismissed, either voluntarily or

19  involuntarily," and then they cite a number of cases, all

10:18  20  Johnson cases.  One cited November 2016, one cited a case in

21  May 2014.  Another one in 2016.  Another one more recently,

22  2018.  And another one more recently in 2018.

23         So for at least four or five years, you or the Courts

24  have been dismissing Count 2, correct?

10:19  25         **MR. DININ:**  Yes.

1    **THE COURT:**  And during that period of time, you have

2  never challenged that in court?

3    **MR. DININ:**  Not yet, Your Honor.  We believe it --

4    **THE COURT:**  At this point, four or five years you have

10:19  5  not challenged that ruling, that law?

6    **MR. DININ:**  Not yet.

7    **THE COURT:**  And yet, you continue to file Count 2, and

8  when challenged, in every instance when challenged, you have

9  taken a voluntary dismissal, correct?

10:19  10    **MR. DININ:**  I believe so, yes.

11    **THE COURT:**  Wouldn't that be the mechanism or the

12  vehicle for challenging it, having the Court rule that it

13  requires exhausting of administrative remedies and then appeal

14  from that order?  I mean, that seems to me the typical way that

10:19  15  you would bring that to the Court's attention to give it a

16  favorable ruling.

17    **MR. DININ:**  Where I've discussed it before is we

18  believe that Florida statute, with the notice of exhaustion of

19  administrative remedies clause applies primarily to employment

10:20  20  and not to the others.  I just haven't -- I'm still thinking

21  about how do it.

22    **THE COURT:**  That's interesting, because this argument

23  has a double edge to it, doesn't it?  If it applies only to

24  employment, none of these cases, none of these 26 cases

10:20  25  involving the use of a gas station video involve employment,

1   correct?

2           MR. DININ:  That's correct.

3           THE COURT:  So if it involved only employment, then

4   Count 2 would not be a viable claim, Mr. Johnson going to a gas

10:20  5   station and trying to gas up and not having access to the

6   video.

7           MR. DININ:  Your Honor --

8           THE COURT:  Correct.  That seems to me pretty obvious.

9           MR. DININ:  Let me rephrase.  I don't think the

10:20  10   statute, as risen (sic), has -- I think it applies to

11   Mr. Johnson in this case, I honestly do.  Mr. Johnson does.  I

12   just think, as written, the notice provision, the exhaustion of

13   administrative provision, applies to the employment, not to

14   everything else.  That's my contention.

10:20  15           THE COURT:  Well, that certainly doesn't comply with

16   the rule -- I mean, with the wording of the statute, and you

17   apparently have not taken, in the last four or five years, to

18   seek a relief and have a Court test your theory that it only

19   applies to employment and not a situation where someone uses a

10:21  20   facility.

21           MR. DININ:  You are correct.  I am waiting.

22           THE COURT:  I got it.  I'll tell you, I'm pretty

23   concerned about that.  I will put you on notice.

24           MR. DININ:  Yes, Your Honor.

10:21  25           THE COURT:  I think that's not in compliance with Rule

1  11.

2        **MR. DININ**:  Yes, Your Honor.  I'll take notice of that

3  and we'll either challenge the statute or not provide it to any

4  allegations where it doesn't fit.

10:21  5        **THE COURT**:  I have a question in the allegations in

6  the complaint, you say that -- you make a point of saying, and

7  I'm kind of paraphrasing now, but the allegation is to the

8  extent that there's a gas station, the defendant owns a gas

9  station and that's in connection with a convenience store, and

10:22 10  as a consequence, it's a place of public accommodation as

11  defined by the ADA, right?

12        **MR. DININ**:  Yes, Your Honor.

13        **THE COURT**:  It just begged the question to me, assume

14  it's a gas station.  You know, there are old-fashioned gas

10:22 15  stations that do not have convenience stores associated with

16  them or vice-versa.

17        Would a gas station standing alone meet a public

18  accommodation, the definition of the ADA?

19        **MR. DININ**:  I believe it would.  I don't think it has

10:22 20  to have a convenience store attached to it.

21        **THE COURT**:  I'm just curious because you know the ADA

22  more than I do.  I just was curious about that.

23        **MR. DININ**:  If I can say, Your Honor, I think the

24  biggest issue in this case, like the other cases, is the

10:22 25  proliferation of these TV screens, or whatever you want to call

1   them, screens throughout society where they haven't taken the

2   stance to bring all the stakeholders to bear before they deploy

3   these things, and what my client is worried about, and others

4   similarly situated, is that more of these flat screen TVs are

10:23   5   going to be --

6           **THE COURT:**  You're talking about other gas stations or

7   are you talking about other circumstances?

8           **MR. DININ:**  Everything in society, Your Honor.

9           **THE COURT:**  We're only talking about --

10:23   10          **MR. DININ:**  I understand.

11          **THE COURT:**  -- the case I have in front of me, but

12   I've indicated I looked at all the other 26 cases.  I read all

13   the other 26 complaints, and I can't say I've read them all

14   word for word because most of it is boilerplate, but I have

10:23   15   read through all of them and I focused in on those allegations

16   which are particular to this kind of a lawsuit, the video

17   screens.

18          **MR. DININ:**  If --

19          **THE COURT:**  So that's what I'm -- I don't know what

10:23   20   else is out there.

21          I also will note I have personally gassed up at some

22   of these gas stations that have these, and I have never

23   actually watched one.

24          It's my impression, and it's only an impression

10:23   25   because I've never watched one, when I turn on the gas, put my

1  car in, my attention is generally associated with two things;

2  one) gassing my car, or two) washing my front windshield.  And,

3  but I get the general impression -- and Mr. Johnson, correct me

4  if I'm wrong -- that rather being a source of news and

10:24  5  entertainment, it's more a source of advertisement.

6       Mr. Johnson, was that -- is my impression correct?

7       **THE DEFENDANT:**  I need to be sworn in, don't I?  You

8  just want me to answer the question?

9       **THE COURT:**  It's my impression that these videos play

10:24  10  what most often would be considered advertisements or

11  commercials as opposed to --

12       **THE DEFENDANT:**  No, they're both 50/50.  You have like

13  a --

14       **THE COURT:**  I'm sorry.  I thought he was sworn in but

10:25  15  apparently he's not.

16       Can you swear him in?

17       **THE DEFENDANT:**  Yes, I do.

18  Thereupon,

19                     **ALEXANDER JOHNSON,**

10:25  20  having been duly sworn by the court reporter, testified as

21  follows:

22       **THE COURT:**  My question is the content of these videos

23  being played, it's my impression that it's not for news and

24  entertainment, but rather it's more for promoting products and

10:25  25  other advertisement.  Is that impression correct?

1        **THE DEFENDANT:**  That depends which gas station chain

2   you go to.

3        **THE COURT:**  So am I correct then that that's -- it's

4   not really revealing entertainment, but -- and news, but rather

10:25   5   promoting products as any commercial would?

6        **THE DEFENDANT:**  No, I think I'm -- it really depends

7   on the chain.  Like I'm trying to think of which ones.

8   Speedway I think has more advertising about what's going on

9   inside the store as opposed to some of these other ones where

10:26   10   you'll have an ad and then you have news, and then you have an

11   ad, and then you have entertainment, and then you have an ad

12   and then you have weather.

13        So it's basically 50/50, one after the other.

14        **THE COURT:**  In my experience I have never seen one

10:26   15   with anything other than promoting products.  As a matter of

16   fact, I think in the one case you submitted some photographs,

17   we'll talk about later, and it shows promoting a product.

18        You have a snapshot of the video, and it shows

19   promoting some type of a product or service.

10:26   20        All right.  Tell us what your residence is.

21        **THE DEFENDANT:**  I live in Fort Lauderdale, Florida.

22        **THE COURT:**  And where in Fort Lauderdale, Florida?

23        **THE DEFENDANT:**  Victoria Park neighborhood.

24        **THE COURT:**  I'm sorry?

10:27   25        **THE PLAINTIFF:**  Victoria Park.

1    **THE COURT:**  And where is that located?

2    **THE DEFENDANT:**  That's like east of downtown, about a

3 mile east of downtown.

4    **THE COURT:**  How far east of downtown?

10:27 5    **THE DEFENDANT:**  Well --

6    **THE COURT:**  Give me your address and I'll be able to

7 figure that out.

8    **THE DEFENDANT:**  1700 Northeast 3rd Court.

9    **THE COURT:**  So it's not far from downtown, right?

10:27 10    **THE DEFENDANT:**  No, not at all.

11    **THE COURT:**  Okay.  The reason I ask that question is

12 because I'm going through the -- I can find it.  In going

13 through the 26 suits that you brought against gas stations, I

14 wrote down, with the assistance of my law clerk, the addresses

10:28 15 of each of the gas stations, and they range throughout Broward

16 County and Dade County.  As a matter of fact it goes up to --

17 I'm not familiar with Broward County as in Dade County, but

18 they go up to Ocean Boulevard, Oakland Park Boulevard, North

19 Federal Highway, places that are north of the -- what we

10:28 20 generally consider downtown Fort Lauderdale, and go as far as

21 the southwest section of Dade County; is that correct?  Is that

22 your understanding?

23    **THE DEFENDANT:**  That's correct.

24    **THE COURT:**  And you have alleged in your complaint

10:28 25 that you intend to, or your intention is to utilize these

1   facilities because, I may not have the exact language here, but

2   that these gas stations are within proximity of your regular

3   travel destinations; is that correct?  That's what you've

4   alleged?

10:28   5           THE DEFENDANT:  Yeah.  That's correct.  They also want

6   to --

7           THE COURT:  What are your regular travel destinations

8   that you're referring to in paragraph 25 of your complaint?

9           THE DEFENDANT:  Well, lately I went up to Gainesville,

10:29 10   Florida this past week twice, back and forth, and the whole

11   Florida Turnpike is inaccessibility of videos on there, but

12   generally, my normal area around here is up to like the Pompano

13   Beach line where my doctors are and as far south to where there

14   is one in the southwest right near the zoo, and I'm a member of

10:29 15   the zoo, so I go there often and when I'm --

16           THE COURT:  You go down the turnpike to the zoo from

17   Fort Lauderdale?

18           THE DEFENDANT:  Yes.  Part of the route.  But I don't

19   get gas on the turnpike in this area.

10:29 20           THE COURT:  I'm trying to figure out, how assuming

21   that's the case, that you go from Fort Lauderdale, close to

22   downtown Fort Lauderdale to the zoo, how that takes you

23   anywhere close to West Flagler Street, 2695 West Flagler or

24   2545 Northwest 42nd Avenue.

10:30 25           THE DEFENDANT:  My partner gets medicines from a

1  public agency that's right around the corner on Flagler Avenue.

2  Actually, it's about quarter mile away and I go there every

3  month for him to pick them up.

4         THE COURT:  So you're telling me that you go to all of

10:30  5  these locations on a regular basis, all 26 locations spread out

6  through Miami-Dade County and Fort Lauderdale?

7         THE DEFENDANT:  Not on a regular basis, no, I don't

8  think all of them on a regular basis, but I go and if I need

9  gas, I need gas.

10:30  10         THE COURT:  You say "regular travel destinations."  It

11  doesn't strike me as these 26 stations spread out through two

12  counties is really something that would fall within your

13  regular travel destinations.  Plus, I'll say this, there are

14  maybe a thousand gas stations in that area, maybe plural

10:31  15  thousands.  I don't know.

16         Are these the only 26 gas stations that are available

17  to you?

18         THE DEFENDANT:  No.

19         THE COURT:  You see what I'm getting at?  I'm trying

10:31  20  to figure out what your real damages are in this case, or

21  whether, in fact, you really have any damages or whether you

22  have any standing.  Because it doesn't strike me, and again,

23  maybe I'm being overly technical or I'm not understanding

24  something about this, but it strikes me as in the thousand or

10:31  25  so gas stations in Dade and Broward County that you're not

1 limited to these 26.  And that there are other stations which

2 are much closer to your regular travel destinations.

3      **THE DEFENDANT:**  I didn't know that I was limited to

4 only 26 gas stations out of a choice of probably a thousand.  I

10:32 5 mean, I go wherever my gas tank is empty.

6      **THE COURT:**  So you only go to fill up at these gas

7 stations when your gas tank is empty.  Is that what you're

8 saying, and you go wherever it happens to be?

9      **THE DEFENDANT:**  For the most part, I don't fill up my

10:32 10 whole tank so I don't drive around with a full tank of gas, so

11 I basically only fill up when my tank -- I fill it when it's

12 empty, but I only put in half a tank.

13      **THE COURT:**  Okay.  So in this case, our case, the

14 Ocaris case you visited twice, once on October the 2nd, which

10:32 15 is the second time, and the first time is August the 30th,

16 2018; is that correct?

17      **THE DEFENDANT:**  Well, there was another time before

18 that, but I didn't document it.

19      **THE COURT:**  Okay.  But on August the 30th, 2018, you

10:32 20 stopped at the Ocaris Management Group's gas station at 2695

21 West Flagler Street to gas up either half a tank or full tank;

22 is that right?

23      **THE DEFENDANT:**  Well, I got gas and a car wash.

24      **THE COURT:**  And a car wash.  But you went there to gas

10:33 25 up, right?

1    **THE DEFENDANT:**  (Nodding).  Yes.

2    **THE COURT:**  Then how is it that on that same day,

3    August the 30th, you stopped at two other gas stations, and

4    I'll tell you which they are in just one second.

10:33   5    There's a lawsuit, Johnson versus Valero Express,

6    Inc., which alleges that you visited that facility at 2222

7    Northwest 37th Avenue, also on October the 30th.

8    **THE DEFENDANT:**  Okay, that didn't come out right on

9    the printout here.  I don't know exactly which case you're

10:33  10   talking about, which facility.

11   **THE COURT:**  And on that same date, August the 30th,

12   2018, that you alleged in Johnson versus RSJ Investments, Inc.,

13   the gas station located at 2545 Northwest 42nd Avenue, that you

14   visited there to gas up.

10:34  15   By the way, that happened to be one of your cases.

16   So on one day when you say you go to gas up, or at

17   least fill half a tank you visited three gas stations located

18   in Dade County at different locations in Dade County.

19   Can you explain that to me?

10:34  20   **THE DEFENDANT:**  I would have to look at my calendar.

21   I don't have my phone with me so I can't recall what my

22   activities for that day was.

23   **THE COURT:**  Well, I'm just going by the allegations

24   and on one day you alleged in three separate lawsuits that you

10:34  25   visited that gas station to gas up.

1          **THE DEFENDANT:**  Yeah, it's certainly possible.  We

2   drive around a lot, you know.

3          **THE COURT:**  So you're representing to the Court that

4   you drove around and had to gas up three different times on

10:35   5   that one day.  That's what you're asking the Court to accept?

6          **THE DEFENDANT:**  I don't want to make any

7   representations because I don't have any of the facts in front

8   of me such as my calendar or anything else that I've done that

9   day.  I don't recall.  I would have to get my computer out and

10:35  10   look it up.

11          **THE COURT:**  Well, let me tell you, I looked at the

12   complaint and that's what the complaint says in each of those

13   three complaints, and then it also says you visited a gas

14   station in Fort Lauderdale, Lauderdale Lakes on August the 3rd.

10:35  15   Then you visited another gas station, a different location on

16   August the 8th.  So that would be five days later.  Then you

17   visit another gas station that you sued on August the 16th.

18   And then that's August the 23rd.  And then again, August

19   the 26th, which is only three days after August the 23rd.  And

10:35  20   then again four days later on August the 30th, you visited

21   three gas stations to gas up.

22          What strikes me as somewhat odd is that of the gas

23   stations that you say are within your usual travel route, that

24   all these are noncompliant gas stations, that you're filling up

10:36  25   at each of these gas stations either a half a tank or a full

1    tank.

2              I'll just state, it just strikes me as difficult to

3    accept, let me put it this way.

4              And also, I find -- because we're talking about

10:36  5    damages, really what have you been deprived of, and it seems to

6    me that there are so many options of gas stations that these

7    allegations in the universe of your gas station complaints, it

8    just doesn't make any sense to me.

9              So I just don't see -- it seems to me that you have a

10:37  10   serious problem with regard to your standing.  And I know

11   you're familiar with the recent decision by Judge Ungaro that

12   strikes me as one that applies here where she sua sponte

13   dismissed a case.  Let's see if I can find it here.

14             **MR. DININ:**  I'm aware of the case, Your Honor.

10:37  15             **THE COURT:**  That would be 18-CV-24585.  It's an order

16   entered on May the 29th (sic) of this year where the Court, on

17   its own, dismissed the case for lack of standing and

18   essentially was that it went through the four factors in making

19   the determination as to whether there were real damages that

10:37  20   would give rise to standing and she goes through those four

21   factors as set forth in -- I think it was the Lou John (ph.)

22   And/or the Houston versus Marod Supermarkets case, an 11th

23   Circuit decision in 2013.

24             And it says in her order, Judge Ungaro's order,

10:38  25   "Courts are generally guided by four factors in making its

determination.  One) the proximity of the defendant's business

to the plaintiff's residence; 2) the plaintiff's past patronage

of the defendant's business; 3) the definitiveness of the

plaintiff's plan to return; and 4) the frequency of the

10:38   5  plaintiff's travel near the defendant's business, and they cite

to page 1337 of the Houston versus Marod Supermarkets case

which is found at 733 F.3d, 1323.

        And considering those four factors, I've got to come

to the conclusion that you have no standing in this case.  I

10:39 10  mean, I've -- you can see I spent some time going through these

cases because, frankly, I was kind of curious about these cases

and --

          **MR. DININ:**  Can I address the Court, Your Honor?

          **THE COURT:**  Excuse me?

10:39 15            **MR. DININ:**  Can I address the Court?

          **THE COURT:**  You may.

          **MR. DININ:**  Okay.  I appreciate the work and you've

looked at this because that helps me with what we're trying to

do in these cases.  And I believe the client does have standing

10:39 20  and I think he does meet in this case the four factors.  His

partner routinely --

          **THE COURT:**  Wait a minute, let me interrupt you.  He

lives up in Fort Lauderdale.  And he's suing three gas stations

on one single day.  How does that comply with these four

10:39 25  factors?  Keeping in mind, and I don't have any knowledge about

1   the number of gas stations, but I would be surprised if there

2   weren't at least a thousand.  Every corner seems to have a gas

3   station.  And he's concerned about not having access to a six

4   by six or eight by eight, which for the most part, in my

10:40  5   experience, have been advertisements.

6         **MR. DININ:**  Like I said, if I may address the Court.

7   I think you brought up three points of concern.  I'd really

8   like to take a moment just to give you at least our perspective

9   so you can at least evaluate your decision within our testimony

10:40  10   because I don't believe there's anything else other than what

11   we filed, and we are here today.

12         And if I may, if I have a minute or so, I'd like to

13   address each one of those areas because there's different areas

14   within the standing argument and the concerns you raise, if

10:40  15   that's okay, Your Honor.

16         **THE COURT:**  Go ahead.

17         **MR. DININ:**  Okay.  As far as Judge Ungaro's decision,

18   we're going to appeal that decision.  And I think the crux of

19   her decision is about she didn't believe that these videos

10:40  20   constituted part of the business.

21         **THE COURT:**  Constituted what?

22         **MR. DININ:**  Constituted part of the business.

23         **THE COURT:**  Here is the problem.  You go to the

24   microphone --

10:41  25         **MR. DININ:**  I'm sorry.  I believe Judge Ungaro's

1  decision, if you read it -- can you hear me okay?

2      THE COURT:  You're getting too close.  You're getting

3  back-feed.

4      MR. DININ:  I believe Judge Ungaro's decision, while

10:41   5  she did address standing and the four factors that you just

6  addressed, and I will get to that, I think the main crux of her

7  argument is, in her mind, she didn't believe that the videos

8  constituted part of the business.  This was just some ancillary

9  thing that they didn't have to have captioned.

10:41  10      She also brought up --

11      THE COURT:  I think that's also true, but I'm not

12  going on that.  I think that's a valid argument that if I were

13  representing one of these defendants I would say, you're going

14  there to gas up, and your client has indicated that he goes

10:41  15  there to gas up, because he said he drives around a lot, so

16  much so that he stops at three gas stations within five miles

17  of each other three times in one day.  So I suspect he's not

18  going there to be entertained.

19      MR. DININ:  Like I said, if I can --

10:42  20      THE COURT:  Maybe he is.  It would strike me as a

21  stretch.

22      MR. DININ:  Yes, Your Honor.

23      THE COURT:  But that's a different argument than

24  whether there's actual concrete damages, future damages, which

10:42  25  is it likely that he's going to go back to these 26 gas

1    stations, all of which happened not to have the video caption,

2    closed caption?  I just -- to me, it's pretty obvious, the

3    answer is no.  He doesn't have a concrete intention to go back

4    to these based on those -- and has no standing based on those

10:42  5    four factors.

6         But, you know, again, I'm probably going to give you a

7    chance to appeal me, too, because that's going to be my ruling.

8         **MR. DININ:**  So if I could explain to the Court so we

9    can get it on the record, I'll explain where we're coming from

10:42 10    and as far as Judge Ungaro's decision, I think you are right,

11    there's two parts of it.  The first part was estoppel.  The

12    second part with the standing to the four factors.

13         I believe we -- in that case we provided enough

14    information that we're going to be able to withstand that at

10:43 15    appeal.  But we're here talking about this case and this case

16    only, and your concerns about Mr. Johnson's standing and his

17    damages, and if I can address the Court.

18         I believe, first of all, there's testers allowed in

19    the Eleventh Circuit.

10:43 20         **THE COURT:**  So let me stop you there.  You're not

21    abandoning the other argument that he actually goes to these

22    gas stations in the regular course of travel?

23         **MR. DININ:**  Absolutely not.  I'm just trying to put

24    the entire strength of the argument in front there that this

10:43 25    isn't just happening to the three gas stations Mr. Johnson

1   might have gone to that day.  It's happening at gas stations

2   throughout South Florida.  In fact, it's almost at every gas

3   station and, in fact, if Mr. Johnson in 2018 showed up at a gas

4   station that he believed that, you know, it's part of his route

10:43   5   of travels, by his partner's business, where he goes all the

6   time, I think he would expect that there would be videos in

7   2018 that would have captions on it.

8        And I would think that every time something like that

9   is not provided it creates an insult to the injury because it

10:44  10   obviously could have been done, but it wasn't done.

11        **THE COURT:**  So your answer to that is, at least for

12   the next year or so, is to shut them all down?

13        **MR. DININ:**  Excuse me, Your Honor.

14        **THE COURT:**  The relief that you told me you've gotten

10:44  15   in other cases is to shut them down until somewhere in the next

16   year or so they're going to come up with some technology to

17   allow closed captions.

18        **MR. DININ:**  It's not technology, it's just putting the

19   investment in.  There's no technology needed, it's all on the

10:44  20   shelf.  This is something where people decided to make a

21   decision to pull a string up to the public that would affect a

22   vast majority of people without the least concern of having

23   someone at the table recognizing that people who are hearing

24   impaired would not benefit from this.  And then they allow this

10:44  25   not to be at one gas station, but gas stations throughout South

1   Florida.

2        Mr. Johnson, while he might bring 26 complaints, I can

3   tell you from personal experience he represents a composite of

4   I would say almost a dozen people who have called my offices

10:45   5   over the last three years complaining about this throughout the

6   State of Florida.

7        THE COURT:  You're talking about the videos?

8        MR. DININ:  Yes.  This is a problem because they see

9   it at the gas stations, then it goes to the movie theaters,

10:45   10   then it goes to buildings, and where else are they going to --

11        THE COURT:  I'm not concerned about buildings.  I'm

12   concerned about gas stations which have about eight by eight,

13   maybe six by six screens that basically screens, in my

14   experience, commercials.  And that's why I have -- you know,

10:45   15   I'm not a big fan of commercials if I don't have to watch them.

16   That's why I have a fast forward button on my --

17        MR. DININ:  What about the insult of in 2018 not being

18   provided something that's easily readily achievable that's not

19   going to change their business, that's not impossible?

10:45   20        THE COURT:  So that's the crux of your case then, it's

21   not the loss of the enjoyment, but the fact that he feels that

22   he's been insulted by that?

23        MR. DININ:  Absolutely.

24        THE COURT:  Which is a legitimate concern.

10:45   25        MR. DININ:  Because if it happened --

1      **THE COURT:**  It's different than saying, "I've been

2  deprived of entertainment and news."  You see there's a

3  little --

4      **MR. DININ:**  Please, if it's anything --

10:46   5      **THE COURT:**  All right.

6      **MR. DININ:**  The point is.

7      **THE COURT:**  Here is my view.  We can go on all day

8  with this, but I'm going to adopt what I think Judge Ungaro --

9  the second point which is that there's a lack of standing here

10:46  10  based on my review of this case, your client's testimony today

11  and what I've seen in the other 26 cases which I've taken

12  judicial notice of that there is no realistic indication or

13  establishment that these this gas stations, in particular, are

14  within his sphere of usual travel.  And that he has no real

10:46  15  concrete plan to return to this gas station for the reason I've

16  previously stated.

17      There are hundreds of gas stations that are close by

18  where he lives, that are close by down by the zoo where he says

19  he goes once a month, and they're, I'm sure, many up by where

10:47  20  he goes to get medical attention up by the Palm Beach County

21  border.

22      So there's just too many options here.  So in this

23  particular case, I don't think he's established that.  So I

24  think I'm going to dismiss the count, the Count 1 as well on

10:47  25  that basis and we're going to dismiss Count 2 because,

obviously, he's failed to not only allege that he's exhausted

his remedies pursuant to 760, as I believe is required in this

case, but also because he hasn't, in fact, done so in this

case.

10:47    Now he raised his hand.  Maybe I'm wrong.  Maybe he

has exhausted his remedies, but it certainly hasn't been

alleged.  So he's raised his hand.  You want to confer with

your client.

**THE DEFENDANT:**  Yes, if I may address the Court.  I

10:47  have filed a 760 complaint with the Florida Commission of Human

Relations.

**THE COURT:**  On this case?

**THE DEFENDANT:**  And it is pending right now.

**THE COURT:**  On this case?  On the gas stations?

10:48  **THE DEFENDANT:**  Yes, on this case.

**THE COURT:**  On the various gas stations?

**THE DEFENDANT:**  On this gas station, yes.

**THE COURT:**  And it's pending?

**THE DEFENDANT:**  It's pending then.

10:48  **THE COURT:**  Then you should have waited until that was

resolved.  The issue is exhausting your administrative

remedies.  You can't file a lawsuit until you exhaust your

remedies.

**THE DEFENDANT:**  Well, you know, to say --

10:48  **THE COURT:**  Anyway, it's a legal matter, you can

discuss that with Mr. Dinin, I'm going to dismiss Count 2 as

well based on the fact that if there's an administrative remedy

exhaustion, maybe you can file it down the road, but you

haven't at this point so it's premature.  It's not only

10:48   premature, but patently premature.

Now we go to the next title which is attorneys' fees.

So let's -- I need to, I guess, discuss a little bit about the

CKC case because you're sitting there patiently, Mr. Polk.

What are the terms of that settlement?  Because the

10:49   terms of a settlement in another case with regard to fees where

other awards that are given, settlement, I think you indicated

that in your papers, Mr. Dinin, may have some relevance to what

would be a reasonable fee in other cases.  So what are the

terms of that agreement?  And are you subject to a

10:49   confidentiality agreement?

**MR. POLK:**  They are.

**THE COURT:**  Does either side have a problem disclosing

it to the Court?  We're not going to file a copy of it.  There

is no copy yet, but when it's completed, we won't file a copy

10:49   in the public record.

**MR. POLK:**  I don't have an objection to that.

**MR. DININ:**  I'm sorry, Your Honor?  What is it you're

asking exactly?

**THE COURT:**  To know what the terms of that settlement

10:49   agreement were.  Most of these seem to have confidentiality

provisions and I just don't want to step on anybody's feet with

regard to confidentiality, but it seems if it's disclosed to

me, then I won't disclose it to anybody else.  It will be --

the document will not -- the settlement document will not be

**10:50**  5  filed of record.

6         So, Mr. Polk, on behalf of his client doesn't have a

7  problem with disclosing that.  Do you?

8         **MR. DININ:**  I'm not quite sure, Your Honor.  We have

9  entered into a confidential agreement that we're finalizing

**10:50** 10  right now that takes care of everything that we have addressed

11  in the complaint about the injunctive relief that we have

12  agreed on about attorneys' fees and costs.

13         **THE COURT:**  Okay.  That's why I assume, and my

14  question is, do you have any problem with discussing those?

**10:50** 15  Those terms?

16         Mr. Polk is not going to invoke the confidentiality

17  with regard to this proceeding, so I'll have knowledge of that.

18         Do you have a problem with disclosing it?

19         **MR. DININ:**  I would have to consult with my client.

**10:50** 20         **THE COURT:**  Okay.  Yes, sir.

21         **MR. DININ:**  I have consulted with my client.  He

22  doesn't feel he should breach any confidentiality.  We have

23  discussed the hourly rate of what we were discussing, maybe

24  it's part of the agreement.  We can disclose the hourly rate.

**10:52** 25  I don't think any more generally we'd want to discuss.

1      **THE COURT:**  I didn't follow that.  There is a

2   confidentiality agreement that both parties agreed to it in

3   this case.  Mr. Polk, on behalf of the defendants, says he has

4   no problem disclosing the terms of the agreement, including the

10:52  5   amount of attorneys's fees and the relief, and now my question

6   is will you not invoke the confidentiality agreement?

7      **MR. DININ:**  We're invoking.  We'll discuss the hourly

8   rate and injunctive relief.

9      **THE COURT:**  No, I'm talking about terms.  The hourly

10:52  10  rate doesn't do it.  It's okay, I'm just asking.  And I

11  won't have this -- we'll seal this portion of the record.

12  *      *      *      *      *      *      *      *      *      *      *

13     **THEREUPON, A SEALED PORTION OF THE TRANSCRIPT WAS EXTRACTED**

14  *      *      *      *      *      *      *      *      *      *      *

10:56  15     **THE COURT:**  It's interesting to note that that's the

16  resolution, just basically turn it off until something else

17  develops and the attorney's fee issue is not going to be

18  relevant to this case?

19     **MR. POLK:**  Attorney's fees is one lump sum we're

10:56  20  paying for all of it.

21     **THE COURT:**  All right.  All right.  Anyone else want

22  to say anything about the injunctive relief or Count 2?

23     **MR. DININ:**  Well, we just believe, Your Honor, that if

24  these TVs are not shut off, particular at this station, you're

10:56  25  not only going to deprive my client of his right to have equal

1    enjoyment of services, but all the other people coming to this

2    station.

3              THE COURT:  I get it.  But if he doesn't have

4    standing, it's a moot issue.

10:57  5              MR. DININ:  Absolutely, Your Honor.

6              THE COURT:  And I don't think he has standing.

7              MR. DININ:  Yes, Your Honor.

8              THE COURT:  Frankly, I think this is an extreme case

9    of not having standing.  I know there's sometimes a close

10:57 10   question if it's a restaurant, you know, a particular kind of

11   restaurant that someone may or may not have gone once or twice,

12   maybe tested it or whatever, that meets the standard for having

13   standing, but this case is so different because of just the

14   number and the accessibility of all these gas stations

10:57 15   throughout Dade and Broward County.  Plus, and I think the

16   access to the audio portion of a video to the extent they even

17   exist is de minimis compared to going to a gas station and

18   actually gassing up your car which is the purpose that people

19   go to gas stations for or go into the convenience store

10:58 20   associated with the gas station to purchase a cold drink or to

21   use the restroom facilities which is not part of this case.  So

22   I think it's so de minimis, that -- and there's so many gas

23   stations available that there is no standing.  So that's my

24   ruling.  You know, I think it would be a good idea to probably

10:58 25   take the appeal and to get that resolved.

1          **MR. DININ:**  Yes, Your Honor.

2          **THE COURT:**  I don't know -- anyway, let's turn to the

3  fees.  I'm not sure if I dismiss the case whether you're

4  entitled to fees, but let's assume that you're entitled to

10:58  5  fees.  Let's look at them.

6          Did you bring with you the fees that were charged in

7  the CKC case?  I asked you to produce that at this hearing.

8          **MR. DININ:**  I brought the time sheets that -- for this

9  case, for the Ocaris Management.  We were on a confidential

10:59  10  settlement with them.

11          **THE COURT:**  That has nothing to do with the

12  confidential settlement, it has to do -- I thought I entered an

13  order in this case.  Yeah.  In the 18-CV-24447, the CKC Food

14  Stores case, I thought I had a request to bring documents

10:59  15  there.  Yes, bring them to the hearing, documents related to

16  the settlement of this case referring to the CKC case including

17  documents related to plaintiff's damages and attorneys' fees.

18          Did you bring those?

19          **MR. DININ:**  I have everything on my phone that I can

11:00  20  access and we have a confidential agreement that counsel has.

21  I have the time sheets.

22          **THE COURT:**  Well, there's nothing confidential with

23  your time sheets, are they?  Any more confidential than you

24  provided in this case in the public record.

11:00  25          **MR. DININ:**  Well --

1       **THE COURT:**  All it does is it talks about a date an

2  activity was performed, who performed it, the description of

3  the activity and the amount of time associated with it, and

4  then times the billing rate.

11:00  5       **MR. DININ:**  For the -- you want that for the other

6  case?  You want all our time sheets?

7       **THE COURT:**  Well, at the time I didn't know this was a

8  global settlement.  It was not indicated that it was anything

9  more than a settlement of the CKC case, so I was asking you to

11:00 10  provide the same document that you provided in this case which

11  was the summary.  But is there such a thing?  Because if

12  there's not --

13      **MR. DININ:**  There's six cases, there's other cases,

14  there's a combination, combined thing, and every case is

11:01 15  different, and that's what that case is about, and we

16  negotiated it, and at some point maybe even stopped keeping

17  separate time records because we have had many cases together

18  and we just move to negotiations.  A lot of times --

19      **THE COURT:**  So the answer is you don't have that?

11:01 20      **MR. DININ:**  I do not have exactly that with me.

21      **THE COURT:**  I thought it would be helpful.  But

22  apparently, not so much.

23      All right.  Let me pull up the documents I need in our

24  case, the Ocaris case on fees.  And I know we got it here

11:01 25  someplace because I had to look at it this morning.

1           Okay.  Do you have in front of you a copy of your

2   summary?

3           **MR. DININ:**  Yes, I do.

4           **THE COURT:**  All right.  Do you have a copy of the

11:02  5   complaint by chance?  Well, I've got extra copies.  Let me give

6   you a copy.  I'll give you a copy of the complaint and we

7   marked that as Court's Exhibit Number 1.

8           (Thereupon, the exhibit was marked for identification.)

9           **THE COURT:**  And it's Docket Entry Number 1 in the

11:02 10  docket in this case.  It's the complaint filed with a

11  verification of the complaint signed by Mr. Johnson.

12          Mr. Johnson, would you turn to the last page of your

13  verification.  Is that your signature?

14          **THE PLAINTIFF:**  Yes, it is.

11:03 15          **THE COURT:**  Okay.  And you say there that you have

16  declared under penalty of perjury that the allegations in the

17  complaint were true and correct to the best of your belief,

18  recollection and knowledge, and it's dated August the 31st,

19  2018, and your signature, correct?

11:03 20          **THE PLAINTIFF:**  No, it's dated October 31st.

21          **THE COURT:**  I'm sorry, October 31st, 2018, but other

22  than that, is that correct?

23          **THE PLAINTIFF:**  Yeah, that's correct.

24          **THE COURT:**  And before you signed this verification of

11:03 25  the complaint, I assume you read the final version of the

1  complaint to make sure that it was accurate?

2          THE PLAINTIFF:  Yes.

3          THE COURT:  Okay.  Let's turn to the summary which I

4  don't have an extra copy of that in my notation but we will

11:04  5  make a copy of the summary, a clean copy, and make that

6  Exhibit 2, Court's Exhibit Number 2.

7          (Thereupon, the exhibit was marked for identification.)

8          THE COURT:  And then you have a copy -- oh, Mr. Polk,

9  you can stay, you're welcome to stay or you're welcome to go.

11:04  10  We're going to be here another, maybe, 20 minutes.  You may or

11  may not think it's interesting enough to stay.

12          Now I know more about the settlement, I'm going to

13  grant the motion for extension of time, take as much time as

14  you want for the global settlement involving Chevron stations.

11:04  15          MR. POLK:  The Sunshine stations, and we appreciate

16  that, Your Honor.  Actually, we met shortly prior to this

17  hearing.  We got it worked out.  I think we have got the final

18  version of the document.  So you will get it shortly.

19          THE COURT:  I thought there would be more help because

11:05  20  now I see the case is so different than the settlement there

21  because it's a global settlement, but you're welcome to stay.

22  We'll be here another 15 to 20 minutes.

23          MR. POLK:  Thank you.

24          THE COURT:  Okay.  You have in front of you a copy of

11:05  25  the summary?

1          **MR. DININ:**  Yes, Your Honor.

2          **THE COURT:**  All right.  The first entry is the

3    telephone conference with the client regarding the violations

4    and it's you.  As a matter of fact, Mr. Dinin, you are

11:05  5    indicated under the column, "Owner."  It's your firm, right?

6          **MR. DININ:**  Yes, Your Honor.

7          **THE COURT:**  But I had assumed that on that column it

8    was the person who performed that activity.  But I see now it

9    says owner, not the person who did it.  But can I assume that

11:05 10    in that column under owner that it says Scott Dinin, that you

11    are the one who did that.

12          **MR. DININ:**  It's me and part of my staff assisting me

13    helping me.  I do the work and I have assistants who help me.

14    Owner indicates --

11:06 15          **THE COURT:**  Who else has done work in this case

16    besides you?

17          **MR. DININ:**  Well, I have about ten people in my office

18    who help me.

19          **THE COURT:**  Tell me who they are.

11:06 20          **MR. DININ:**  There were different people at different

21    times, but all the work I do and then I place it in my -- this

22    is a case management system and owner means who is doing the

23    task, which is me.

24          **THE COURT:**  That's my point.  In the column that says

11:06 25    owner, it represents who actually did the work.

1          **MR. DININ:**  Yes.

2          **THE COURT:**  Okay.

3          **MR. DININ:**  That's me, Your Honor.

4          **THE COURT:**  I've never -- it's just unusual to have

11:06  5  owner as opposed to, you know, the timekeeper or whatever else,

6  understanding that under owner it represents the person who

7  actually did the legal work.

8          **MR. DININ:**  Yes.

9          **THE COURT:**  And I note that there is nobody but you.

11:06  10         **MR. DININ:**  For -- yes.  That we're billing, it's just

11  me, I am not billing for any people who aren't doing work there

12  that are not paralegals or doing little Xeroxing, or maybe

13  ancillary things.

14         **THE COURT:**  Do you have any associates?

11:07  15        **MR. DININ:**  No, Your Honor.

16         **THE COURT:**  Have you had a number of paralegals during

17  this period of time we're talking about?

18         **MR. DININ:**  I don't know if you call them paralegals.

19  Are you talking about licensed people that have their

11:07  20  designation paralegal or clerks or people --

21         **THE COURT:**  A person that you can consider to be a

22  paralegal, qualified to do paralegal work.

23         **MR. DININ:**  Depending on the time frame there might

24  have been one, zero or two, depending.

11:07  25        **THE COURT:**  During this period of time.

1        **MR. DININ:**  At least one would help me.

2        **THE COURT:**  Do you bill for the paralegal's time?

3        **MR. DININ:**  From what I understand you can't bill

4 unless they're licensed, I understand, must be a licensed

11:07 5 paralegal.  And I don't think you can --

6        **THE COURT:**  I don't know.

7        **MR. DININ:**  I don't know.  So I just don't do that.

8        **THE COURT:**  Okay.  But it's your testimony that all

9 this work that's put forth in the summary was done by you and

11:08 10 not by a paralegal or someone else in your office?

11       **MR. DININ:**  People might have helped me and assisted

12 me, but I did the work.

13       **THE COURT:**  That's what I'm saying.  The time that's

14 represented in billed units is your time?

11:08 15       **MR. DININ:**  It's my time, yes.

16       **THE COURT:**  Not anybody else's time?

17       **MR. DININ:**  No.  If someone else is reviewing the work

18 or checking the grammar or rereading it for me, we're not

19 billing for that.  I'm billing my own time for that.

11:08 20       **THE COURT:**  Let's talk about the complaint.

21       **MR. DININ:**  Excuse me?

22       **THE COURT:**  Let's talk about the complaint, Exhibit

23 Number 1 first, because I have some question about that and

24 I'll tell you up front, I have some serious concerns about the

11:08 25 billing in this case.  And the reason is because I note this

was a case that was a default case.  There is not a single

substantive motion filed in this case.  The only one that would

come close to that description would be the motion for the

entry of default judgment which you haven't billed for because

11:09   you stopped -- you slid this together with the motion, but for

some reason you didn't include that.

So that raised a red flag for me how could you have

the number of hours, 14, almost 15 hours billed at $500 for a

case that basically had no defense and just was a default

11:09   judgment that was actually prompted by the Court to get this

case moving and then once a default was granted to get the

default judgment moving.

So I read the complaint.  And that, frankly, got me

thinking about the other complaints that were filed, and I

11:09   determined after reading the complaint in our case, the Ocaris

case, that it is virtually identical to the other 26 complaints

that have been filed in Broward and Dade County, with regard to

Broward and Dade County gas stations, and I say that because

for the most part, when I say "the most part," I can't put a

11:10   percent but maybe 90, 95 percent of the wording is boilerplate

ADA allegations, you know, the things that would apply to

probably every one of your cases that you filed in the last

couple of years.

As a matter of fact, I checked a couple of those other

11:10   cases, they're not gas station cases, such as the hotel case

1  with the TDY apparatus, and it's the same boilerplate language.

2      So that's about -- if I had to put a percentage, I

3  would say 90 to 95 percent, probably at the high end of that.

4      Then there are a number of allegations which are

11:10   5  devoted to the nature of the gas station.  And there are a few

6  allegations in that regard, you know, it's a gas station

7  associated with a convenience store and, therefore, it

8  qualifies as a public accommodation for ADA purposes.  And then

9  it talks, there's some allegations about, you know, in the

11:11  10  usual proximity of his business designation and it talks about

11  the videos in general, so there are a few allegations like

12  that.

13      And the only specific allegation directed to this

14  specific defendant are minimal.  And those allegations relate

11:11  15  to the name of defendant, if it's a d/b/a, in this case it's a

16  d/b/a, U Gas East Flagler, the date on which that facility was

17  visited, and the location of that facility.  Okay.  Those would

18  be the additional factors that come into this complaint that

19  make it different from the other 26 complaints and those

11:12  20  allegations that I talked about earlier which are general to

21  the gas station complaints are the only things that

22  differentiate it from all the other ADA cases that you filed in

23  the State of Florida based on my sampling of those.

24      So there's not a whole lot different about any of

11:12  25  these complaints, at least that's my view.

1       Am I wrong?

2           **MR. DININ:**  Yes.  I would think it's completely

3   different.  I think from looking at it --

4           **THE COURT:**  Do you have a complaint to show me what is

11:12   5   different about this complaint that is different from any other

6   complaint that's filed on behalf of gas station complaints and

7   what's different from the boilerplate ADA allegations?

8           **MR. DININ:**  If I didn't have to follow all the federal

9   rules and all the other rules --

11:12  10           **THE COURT:**  I'm not saying you don't have to follow

11  the rules.  You indicated in your moving papers you're a very

12  experienced ADA lawyer representing plaintiffs and you're one

13  of the most qualified people in the State of Florida.  And you

14  know the law backwards and forwards, know it a lot better than

11:13  15  I do.

16           My question, simply point to me where I'm wrong about

17  my analysis of what is boilerplate, what are the limited

18  allegations related to gas stations, and then what are those

19  allegations that are unique to each specific, in this case, the

11:13  20  U Gas East Flagler.

21           **MR. DININ:**  Your Honor, you might be absolutely

22  specifically correct, as you phrased it.  But I don't -- when I

23  address and start a lawsuit, I don't look at it the way you're

24  looking at it.  I have to start with a blank page -- not a

11:13  25  blank page on the computer obviously, we all cut and paste.  We

```
 1  all use what I guess you're calling boilerplate.  But
 2  unfortunately --
 3          THE COURT:  Do you have a better word than
 4  boilerplate?
 5          MR. DININ:  Yes.  Yes.
 6          THE COURT:  What's the better word?
 7          MR. DININ:  Boilerplate is not the word because --
 8          THE COURT:  You have a computer system, right?
 9          MR. DININ:  Yes, Your Honor.
10          THE COURT:  And in your computer system you've got all
11  these allegations in the computer?
12          MR. DININ:  Absolutely.  Absolutely.
13          THE COURT:  So tell me what is different about this
14  complaint that's different from all the other 25 gas station
15  complaints, and then tell me what those 26 complaints, how
16  they're different from what I consider to be boilerplate or,
17  let's say, verbatim allegations from every other ADA case that
18  you filed in the State of Florida.
19          Go through them and tell me what I missed.
20          MR. DININ:  What I believe you're missing, Your Honor,
21  is that --
22          THE COURT:  I don't want to know the allegations.  I
23  want to know the wording.
24          MR. DININ:  I don't know if there's any different
25  wording.
```

11:13 (line 5)
11:14 (line 10)
11:14 (line 15)
11:14 (line 20)
11:14 (line 25)

1       **THE COURT:**  Then you agree with me on at least the

2   basis of the wording that I'm correct?

3       **MR. DININ:**  You could possibly very be absolutely one

4   hundred percent or 99 --

11:14   5       **THE COURT:**  Tell me where I'm not, tell me where I'm

6   wrong.

7       **MR. DININ:**  I can't --

8       **THE COURT:**  I want you to take some time, look at your

9   complaint and tell me what -- excuse me.  Answer my question.

11:15  10       **MR. DININ:**  I'm not challenging --

11       **THE COURT:**  If I'm wrong, I want you to tell me where

12   I'm wrong.

13       **MR. DININ:**  Obviously, I think you could be correct.

14       **THE COURT:**  Am I correct?  I don't say could be.  Am I

11:15  15   or am I not correct?

16       **MR. DININ:**  I guess you're correct, Your Honor, yes.

17       **THE COURT:**  I think so, too.

18       **MR. DININ:**  I wouldn't say 100 percent, though.

19       **THE COURT:**  Let's look at the bill with regard to the

11:15  20   time you spent on this complaint.

21       You spent, according to you, Item Number 7, draft

22   complaint.  It's attributed to you, Scott Dinin, three hours.

23   Right?

24       **MR. DININ:**  Yes, Your Honor.

11:15  25       **THE COURT:**  At $500 per hour?

|   |   |
|---|---|
| 1 | **MR. DININ:**  Yes, Your Honor. |
| 2 | **THE COURT:**  For $1,500? |
| 3 | **MR. DININ:**  Yes, Your Honor. |
| 4 | **THE COURT:**  To draft this complaint that is as I |

11:15  5  described it?

6  **MR. DININ:**  Yes, Your Honor.

7  **THE COURT:**  I'll tell you, I don't think that's

8  reasonable.

9  **MR. DININ:**  Yes, Your Honor.

11:15  10  **THE COURT:**  Because this complaint was filed, I don't

11  want to say midway, but well within the time period after you

12  filed other complaints against gas stations.  Right?

13  **MR. DININ:**  Yes, Your Honor.

14  **THE COURT:**  So you had that template so all you had to

11:16  15  do was add the specifics about this particular U Gas East

16  Flagler gas station, right?

17  **MR. DININ:**  As far as the data into the complaint,

18  yes.

19  **THE COURT:**  Is that typically what you charge for this

11:16  20  kind of complaint in those 26 cases, approximately,

21  three hours?

22  **MR. DININ:**  I found in the smaller complaints, Your

23  Honor, it's between one-and-a-half and five hours.  Because --

24  **THE COURT:**  I'm talking about this complaint.  Now we

11:16  25  know, based on what you've acknowledged, that it's basically --

1    for the greater portion it's a boilerplate complaint with those

2    differences I mentioned with regard to all 26 gas stations, and

3    then it's limited to specific allegations with regard to each

4    individual gas station.

11:16    5        Now, keeping those terms or that description in mind,

6    have you charged three hours at $500 an hour for each of those

7    complaints?

8        **MR. DININ:**  I don't believe so.  Maybe.  Maybe not.

9    It depends.  Each case is different.

11:17   10        **THE COURT:**  What would be different between this case

11    and, say, the case before Judge Bloom or the case before --

12    Judge Moreno had some.  Judge Martínez, I believe.  What's the

13    difference between this case and, say, the case before Judge

14    Martínez?

11:17   15        **MR. DININ:**  Maybe how many times, I reread it, how

16    many times I changed it.  Maybe I added something, I took it

17    away.  I'm horribly dyslexic, I can read it, write it, put it

18    down, go back to it.

19        I have these problems, that's why there's a variance

11:17   20    in hours per complaint.

21        Like I was trying to explain to Your Honor, if I had

22    one of those old mimeograph machines where all you have to do

23    is just sitting and mimeograph that would be what I call

24    boilerplate.

11:17   25        The fact that I construct each complaint from scratch

1   and I create a custom complaint and it's exclusive to this --

2   each case, I don't call it boilerplate in my own mind.

3           THE COURT:  You are too young to know what a

4   mimeograph machine is.  I grew up with mimeographing.  A

11:18   5   computer doesn't make it that much easier.  A mimeograph

6   machine wasn't all that easy compared to a computer.

7           Anyway, I happened to pull up another case, another

8   gas station case, and it's Case Number 18-CV-24472 before Judge

9   Martínez, and it's Johnson versus 27th Avenue Caraf, Inc. d/b/a

11:18  10  Caraf Oil.

11          Do you remember that case?

12          MR. DININ:  I believe so, Your Honor.

13          THE COURT:  The reason I pull it up, because it's the

14  one that I could identify as a pending Motion for Judgment on

11:18  15  default.  Does that sound familiar to you?

16          MR. DININ:  Yes.

17          THE COURT:  And I notice, what I did was I looked at

18  the documents that were in support of your motion including

19  your printout of your time.  And let's see.  In that case, Item

11:19  20  Number 6 is the one specific to Caraf gas station, is draft

21  complaint and sent to client for review with Exhibit A, which

22  is the verification.

23          In that case, you charged 3.5 hours at $500 an hour

24  for 1,750, which was more than this case, about a half-hour.

11:19  25          Would it be fair to say that in those 26 cases that

1  you've charged for the drafting of this complaint somewhere

2  between three hours and three-and-a-half hours at $500 an hour?

3        MR. DININ:  I think a half-hour to five hours

4  depending, 90 minutes to 300 minutes.

11:19   5        THE COURT:  Some of them took a half-hour?

6        MR. DININ:  More than a half-hour.  I'd say

7  one-and-a-half minimum if I'm not rereading it a bunch of

8  times, and I'm not thinking of adding anything.

9        THE COURT:  What is there to reread on a case that is

11:19  10  basically boilerplate, only a few changes, the only changes

11  between Judge Martínez's case, and my case, the complaint, is

12  the identification of the defendant, and when your client

13  visited.

14        What else is there?

11:20  15        MR. DININ:  I'm just not that confident in my

16  abilities, Your Honor.  What I have to do is I have to look at

17  the stuff, I have to reread it, I'm dyslexic, sometimes the

18  words start merging and I can't tell what the words are.  I

19  have to make sure the facts are correct.  I want to look out

11:20  20  there at the environment, I'm being challenged by defense

21  counsel all the time, I'm looking at different ideas, and if I

22  can could just make it like pizzas and just get it down to the

23  most efficient process, I would just do that, but I don't

24  believe that's how it works, and I've been very challenged so

11:20  25  many times that I get very defensive about what I'm doing and I

1   am dyslexic and I have to take my time and each case has to be

2   a custom solution because the judiciary demands that and I do

3   my best to present that and it takes time.

4       **THE COURT:**  I'll use your words, this looks like just

11:20  5   making pizzas.

6       **MR. DININ:**  It's not, Your Honor.  It's not, Your

7   Honor.  It's not.

8       **THE COURT:**  I'll tell you --

9       **MR. DININ:**  It's not.

11:20  10       **THE COURT:**  -- I've looked at these other complaints.

11   They're all the same, except one might have pepperoni and one

12   might have mushrooms in terms of the very limited, and if you

13   have such a problem, and I'm sorry you have dyslexia because

14   that does create a problem with reading and the pressure is on

11:21  15   you and your inability to do things as quickly as you would

16   like, maybe other people do, how does that justify $500 an hour

17   then?  I mean, is that -- it doesn't equate to me.

18       **MR. DININ:**  Well, I think, actually, my rate is low,

19   Your Honor.  I believe I'm entitled to way more money, but I'm

11:21  20   trying to put a reasonable amount there.  So I've looked what

21   I've submitted to the Court.  I don't think $500 is even

22   accurate to capture the cost of what it costs to do my time.

23       **THE COURT:**  We'll get to some of these tasks in a

24   moment.  But I just want to focus on the complaint.  And then

11:21  25   you say with regard to after you drafted the complaint, you

1    sent the complaint to your client for review.  And you charged

2    point one for that.  So you, rather than one of your

3    paralegals, did that task?

4         **MR. DININ:**  A lot of times --

11:22  5         **THE COURT:**  The answer is yes or no.

6         **MR. DININ:**  Yes.  Yes.

7         **THE COURT:**  And then you said you had a -- you've

8    already had a half-hour discussion with your client.  I assume

9    that was to get the details about this particular gas station.

11:22 10   Right?

11        **MR. DININ:**  Yes.

12        **THE COURT:**  And that took a half-hour to find out

13   where the gas station is located, and then I guess somebody in

14   your office or maybe you could look it up and see who the owner

11:22 15   was, so that took a half-hour.  You had that discussion with

16   your client.

17        **MR. DININ:**  And it's also talking about the standing

18   requirements, why he's going there.

19        **THE COURT:**  Standing what?

11:22 20        **MR. DININ:**  Also, talking about the standing

21   requirements, why he is going to this gas station, how is this

22   one different.

23        **THE COURT:**  Do you have only that in this case or do

24   you have that in every case?

11:22 25        **MR. DININ:**  I try to do it in every case.

| | | |
|---|---|---|
| | 1 | **THE COURT:** So the standing requirements change, is |
| | 2 | that what you're telling me, you have the discussion with |
| | 3 | Mr. Johnson about the standing requirements in every case? |
| | 4 | **MR. DININ:** Mr. Johnson is -- |
| 11:22 | 5 | **THE COURT:** You said that's one of the reasons that |
| | 6 | you have this half-hour discussion. |
| | 7 | **MR. DININ:** I have discussions, they're fluid |
| | 8 | discussions for every case because these situations are mostly |
| | 9 | fluid. Mr. Johnson is not usually bringing cases involving |
| 11:23 | 10 | like steps that take a long time to remediate, usually things |
| | 11 | are happening very quickly as the lawsuits are being filed and |
| | 12 | people want to deal with them and it's fluid situations. |
| | 13 | **THE COURT:** Okay. The next item, Number 9, is |
| | 14 | discussed with the client, point two. I assume you discussed |
| 11:23 | 15 | -- you sent the complaint to him, that's on November the 11th. |
| | 16 | After you sent it to him, you discussed it with him. |
| | 17 | I assume you just wanted to see if it's accurate or |
| | 18 | things like that? |
| | 19 | **MR. DININ:** That's part of our procedures, have our |
| 11:23 | 20 | client review -- |
| | 21 | **THE COURT:** So he could then sign the verification? |
| | 22 | **MR. DININ:** Yes. |
| | 23 | **THE COURT:** Because you don't want him signing a |
| | 24 | verification that isn't accurate? |
| 11:23 | 25 | **MR. DININ:** Yes. |

1      **THE COURT:**  Then the next item is received client's

2  revisions of the complaint.  And that's, I assume when you say

3  "receive," you also received and reviewed those.

4      **MR. DININ:**  Yes.  And I'll probably reread the

11:24  5  complaint again and see if I got it right.

6      **THE COURT:**  So you've got one hour of revising the

7  complaint; is that correct?

8      **MR. DININ:**  It's also verifying the complaint,

9  rereading it to my own satisfaction, putting the work in to

11:24  10  make sure that what I'm looking on the page --

11      **THE COURT:**  Has anything changed in that complaint,

12  first of all, where you got revisions?

13      **MR. DININ:**  It might have, might not have.  This is my

14  procedures that I usually do.

11:24  15      **THE COURT:**  Under oath, right now, tell me, were there

16  changes made from the time you say you drafted it on October

17  the 31st, and then sent it to him on November the 1st?  It

18  seems to me that there weren't any changes.

19      **MR. DININ:**  The only thing from my memory --

11:24  20      **THE COURT:**  Excuse me.  I want to move this along.

21  Okay?  What were the revisions?

22      **MR. DININ:**  Like, Your Honor, I addressed to the

23  Court, what I believe, if I can remember that phone call,

24  Mr. Johnson was informing me about his partner's medical

11:24  25  facility that I was inquiring about that because I wanted to

1  know why is he going down to that area because he comes by my

2  office a lot and this is a new area over there, and I think I

3  might have been double-checking on that piece.

4        I might have changed it, I might have had it.

11:25  5        THE COURT:  There's nothing in there about his

6  partner, his business and allegations.  I want to know

7  specifically what are the revisions that took you an hour to

8  receive and review.

9        MR. DININ:  At this point, I couldn't tell you without

11:25 10 looking at further notes.

11        THE COURT:  Do you have notes to verify that?

12        MR. DININ:  I don't know, Your Honor.

13        THE COURT:  Just -- I'll tell you, I just find this

14 hard to accept.  Was this a unique situation that you would

11:25 15 draft the complaint, which is mostly boilerplate, send it to

16 your client for his comments, and get back revisions that would

17 require an hour to accomplish?

18        MR. DININ:  We had some.

19        THE COURT:  Is this an unusual situation?

11:25 20        MR. DININ:  It's very typical.  Sometimes there's a

21 lot of revisions, sometimes there's no revisions.  Sometimes

22 they're 15 minutes, sometimes it's three hours.

23        THE COURT:  Okay.  Then you've got the next item,

24 Number 11, finalized client's revisions, another half-hour.  So

11:26 25 you've got an hour-and-a-half receiving and revising the

1  complaint based on your client's revisions.

2  **MR. DININ:** And maybe it's more catchall because in

3  the Rocket Management you can make --

4  **THE COURT:** No, no. It says, "Finalize client's

11:26  5  revisions." Is that accurate or not accurate? One-and-a-half

6  hours?

7  **MR. DININ:** It's a catchall phrase, it's accurate.

8  **THE COURT:** No, no, no. Finalize client's revision,

9  that you, in fact, spent an hour-and-a-half receiving and

11:26  10  revising based on your client's proposed revisions.

11  **MR. DININ:** And that is my review of the complaint,

12  again, to my satisfaction, that's what is encountered. When I

13  say that, that's what I mean.

14  **THE COURT:** All right. It's interesting. You may

11:26  15  follow along if you would. I'm looking at the verification of

16  the complaint. That was filed on November the 1st. Right?

17  **MR. DININ:** (Nodding).

18  **THE COURT:** You see the stamp at the top? It's Docket

19  Number 1, 11-1-2018. Do you see that? It was filed on

11:27  20  November the 1st, right?

21  **MR. DININ:** Okay. Yes, Your Honor.

22  **THE COURT:** And it indicates that, if you turn to the

23  attachment, which is the verification, that the verification

24  was signed the day before, October the 31st, 2018, right?

11:27  25  **MR. DININ:** 10-31. Yes, Your Honor.

1       **THE COURT:**  Your summary of events indicate that in

2  your summary of time, October 31st you drafted the complaint,

3  which we talked about, and then the next day, the day after the

4  signature on the verification, November the 1st, you say you

11:27  5  sent it to the client for his review.  And then that same day

6  you say, "Discuss it with the client," and then that same day,

7  November 1st, you said you received that revision, and then the

8  same day, November 1st, you say you finalized based on that,

9  all of which was done after the dates your client verified the

11:28  10  truth and accuracy of the contents of the allegations which he

11  said were true and correct to the best of his belief,

12  recollection and knowledge.

13       That seems to be chronologically impossible.  If he is

14  verifying the accuracy of the complaint on October the 31st and

11:28  15  you have just sent it to him, and the next day he's doing

16  revisions, or suggesting revisions, and you're spending an

17  hour-and-a-half doing revisions, that is chronologically

18  impossible, it seems to me.  How am I wrong?

19       **MR. DININ:**  This all contemporaneously, Your Honor.

11:28  20  He filed this -- he signed this and we filed it and I'm

21  reviewing it, I'm calling him, sending e-mails back and forth,

22  so if I have some out of date there, this is all

23  contemporaneously.  Maybe --

24       **THE COURT:**  No, it's not.  One is October 31st, he's

11:29  25  verifying under oath that he's reviewed the complaint, all the

1 allegations, and those allegations are true and correct to the

2 best of his knowledge, under penalty of perjury, and he signed

3 it October the 31st.

4         You're then representing in your billing that the next

11:29  5 day you're having discussions with him and you're revising it

6 to the extent that it took you an hour-and-a-half --

7         MR. DININ:  That might be my typo.  This is all

8 contemporaneously it happened, this is after the fact.  I'm

9 typing, we're sending e-mails back and forth, we're talking,

11:29 10 I'm reviewing the documents.  This seems all contemporaneously.

11 Maybe I'm putting in the wrong date as I'm doing it or

12 afterwards.

13         THE COURT:  Are you telling me that your time slips

14 are inaccurate?

11:29 15         MR. DININ:  No, Your Honor.

16         THE COURT:  Okay, good.  Because I find -- let me tell

17 you, I'm just looking at dates and the dates tell me that it's

18 chronologically inconsistent.

19         MR. DININ:  We're not a defense firm, we're not

11:30 20 sending billing out every month or every week.  What we're

21 doing is we're working and I'm contemporaneously taking notes

22 as I can.

23         THE COURT:  But you have a computer system and you

24 input into your computer system the time.

11:30 25         MR. DININ:  To the best of my ability.

1    **THE COURT:**  And you put the person is you.  You put

2   the dates you do the work and you describe the activity.

3    **MR. DININ:**  To the best of my ability, I don't always

4   get it right, and I'm a little dyslexic.

11:30  5    **THE COURT:**  So you're saying this is a mistake, this

6   chronology?

7    **MR. DININ:**  Around this time frame, I'm not seeing

8   what you're saying.  I see that he signed this, and I see I

9   talked to him afterwards, but he could have signed it and we

11:30 10   could still be discussing it.  That's why I say it's all

11   contemporaneous.

12    **THE COURT:**  Let me, again, turn to the case, the Caraf

13   case and your billing summary in the Caraf case.  Again,

14   repeat, for background, 3.5 hours for drafting.  And you sent

11:31 15   it to the client.  All right.  Two days later, you revise the

16   complaint for client's changes and telephone conference with

17   him with regard to changes and e-mail the compliant to provide

18   him with a review, point seven.  And then you have received

19   client's approval of complaint, file complaint and pay

11:31 20   government filing fee another one hour.

21    So let's talk about Item Number 7 which is revising

22   the complaint.  Do you have a recollection of revising the

23   complaint in this case?

24    **MR. DININ:**  In the Caraf case?

11:31 25    **THE COURT:**  Yes.

1    **MR. DININ:**  Just vaguely, I didn't prepare myself for

2    that.

3    **THE COURT:**  What would take point seven hours to

4    revise what is essentially a case with very little unique

11:31  5    allegations, time ownership and place?

6    **MR. DININ:**  I mean, I'm not quite sure what you're

7    getting at?  I should keep a stopwatch and just try to do it as

8    fast as I can?  I'm making mistakes.

9    **THE COURT:**  I'm asking you, you're representing you're

11:32  10    making these revisions to what appear to be boilerplate

11    complaints with a few exceptions that we have discussed, I'm

12    not going to repeat them again.  And it seems to me you're

13    charging an inordinately high amount of time to accomplish

14    those activities.  That's my point.

11:32  15    **MR. DININ:**  I just -- Your Honor --

16    **THE COURT:**  And that's my job.

17    **MR. DININ:**  I take what you're saying and I just -- my

18    situation is different than other people's situation.  This is

19    how we act.

11:32  20    **THE COURT:**  But aren't you supposed to be efficient at

21    $500?  I can understand if this were a law clerk at the

22    University of Miami who is summer clerking for you and has to

23    learn things fast but -- excuse me, can I finish my --

24    **MR. DININ:**  Yes, Your Honor.

11:32  25    **THE COURT:**  I can understand that.  But this is

1  someone who has done this for a living for well over a decade,

2  what, 15 years or so, plus or minus.  See, that's what I don't

3  understand.  And you're charging, not the client in this case

4  but you're seeking to charge the defendant $500 an hour for

11:33  5  this activity, and it's my job because I'm not a potted plant,

6  is to make sure that it's reasonable and it's accurate.

7       That's why I'm going through this and it's not a

8  pleasant task for me and I'm sure it's not a pleasant task for

9  you.  I don't enjoy doing this, but that's my job.

11:33  10       MR. DININ:  Absolutely, and I'm here to address you.

11  I want to let you know that, first of all, I don't charge on

12  efficiency, okay?  I charge on knowledge and my time.  I'm a

13  private citizen, I take on these cases and I stop my life to

14  take these claims on.  My time is worth way more than $500 an

11:33  15  hour.  I'm not basing any --

16       THE COURT:  How many paying clients do you charge $500

17  an hour?

18       MR. DININ:  Well, Your Honor --

19       THE COURT:  I'm talking about a client that is your

11:33  20  client where you actually say, "I'm going to do this work for

21  you and I'm going to bill you on a monthly basis at X number of

22  dollars per hour."

23       Do you have any clients like that?

24       MR. DININ:  No.

11:34  25       THE COURT:  So you have not had the experience of

1    testing your value in the open market?

2         **MR. DININ:**  No.  That's correct, Your Honor.  First of

3    all, Your Honor, I have a master --

4         **THE COURT:**  I'm familiar with lawyers who charge $500

11:34   5    an hour, and they're not doing things, which we will get to in

6    a minute.  The things that you're charging $500 an hour, these

7    are not the type of things that lawyers who charge $500 an hour

8    do.  They have paralegals do it and usually an associate or

9    something like that, but we'll get to that in a minute.

11:34  10         So let me go through this.  I'm just telling you, I'll

11   put it on the record because this is going to be -- I'm going

12   to adopt the findings and facts in this hearing today as part

13   of my order.

14         But I find that that those summary of hours in the

11:34  15   tasks are not reasonable.  And not only are they not

16   reasonable, they're not close to being reasonable and, in

17   particular, when I've seen what you've done with the other --

18   only other case that you've done, the Caraf case.

19         But let's go through it some more.  You finalize the

11:35  20   revisions.  You sent -- Item Number 13, you sent it for

21   service.  That's what it says, quote, for service, point

22   two hours.  Does that mean you sent this to the process server?

23         **MR. DININ:**  I think what that item is is that someone

24   in my office is preparing the stuff for service.  I have to

11:35  25   then review it, I have to look at it, I want to look at then

1  the actual physical piece, probably someone else, but sent for

2  service, the reviewing of all that is me, and that's what that

3  is.

4        **THE COURT:**  And that's point two hours for that, for

11:35  5  what is basically an administrative activity?

6        **MR. DININ:**  Your Honor, each item is different.  I'm

7  not sitting there trying to push myself on a treadmill as fast

8  as I can go.  I am trying to keep it as accurate as I can at

9  the time of what I'm doing.

11:36  10        **THE COURT:**  I don't think that's reasonable.  That's

11  an administrative, low hanging fruit activity, sending it to

12  the process server.

13        **MR. DININ:**  But someone --

14        **THE COURT:**  Excuse me.  And you're charging $500 an

11:36  15  hour for that.  You see the problem that I'm having?

16        **MR. DININ:**  No, Your Honor.

17        **THE COURT:**  Okay.  Well, then we have a different view

18  here.  Item 14, research prior ADA.  I'm assuming that has to

19  do with my order that says I want to know if there have been

11:36  20  prior lawsuits against this location, right?

21        **MR. DININ:**  Yes, Your Honor.

22        **THE COURT:**  And you've got one hour.

23        **MR. DININ:**  Takes about two hours to do that whole

24  thing, I found with all the judges' orders in this case, by the

11:36  25  time you research it, you write the memo, you file it, you

1    review it, in my case I have to review it a couple of times to

2    make sure it's correct, it takes one to three hours, depending.

3         THE COURT:  Time out.  You've kind of combined things.

4    We're only talking about Item 14, research prior ADA.

11:36  5         MR. DININ:  I was putting those three things together

6    in my mind and I break it out later for this order.

7         THE COURT:  But the research part, that is going in

8    the computer, and finding it and putting in the location of the

9    gas station and seeing if there are prior lawsuits and going to

11:37  10    the Court to see if there were prior lawsuits, that's done

11    through the computer?

12         MR. DININ:  Yeah.

13         THE COURT:  That's something a paralegal could do,

14    correct?

11:37  15         MR. DININ:  They could.

16         THE COURT:  You choose not to.

17         MR. DININ:  Well, I don't have the ability to hire all

18    these paralegals.  We have some people who know how do this,

19    some people don't.  Some people quit.  It's not so simple.

11:37  20         THE COURT:  Here is the problem.  I think there's a

21    general principle that a law firm has an obligation to be

22    reasonable in assigning projects.  And typically, as I

23    understand the standards, you want to make sure that someone is

24    competent first.  And then rather than having the highest

11:37  25    biller do the task, you have someone who is competent but a

1    lower biller and that's the general principle.

2         Do you agree with that principle?

3         MR. DININ:  Yeah, if I could have really qualified

4    people, that would be the way to go.

11:38  5         THE COURT:  Maybe you should think about that.

6         MR. DININ:  It's hard to find people.

7         THE COURT:  It's true, but you're still charging the

8    highest rate of $500.

9         MR. DININ:  But that's --

11:38 10         THE COURT:  The only rate according to you, you don't

11    charge for paralegal time.  So, anyway, I just don't -- I just

12    have a tough time saying it's -- a lawyer should be on the

13    computer finding out if this lawsuit, the defendant's lawsuit

14    has been sued before or the property has been sued before and

11:38 15    spending an hour to do that.  I just find that difficult to

16    believe -- and hold on just one second.

17         Then after you have done the research, you draft a

18    notice of prior ADA, which means you've indicated there was no

19    prior lawsuits; is that correct?

11:38 20         MR. DININ:  Yes, Your Honor.

21         THE COURT:  All right.  I'm going to mark as Exhibit

22    Number 6, because that's the document, I'm just going to use

23    docket entries for documents that come from the docket, so it's

24    Exhibit Number 6 which is Docket Entry Number 6.  And that, I

11:39 25    believe, is the item which is the subject of Item Numbers 4,

1   15, and 16 of your summary; is that correct?

2        MR. DININ:  Yes, that looks correct.

3        (Thereupon, the exhibit was introduced into evidence.)

4        THE COURT:  And after you did the research, you're

11:39   5   charging a half-hour for this document, Exhibit Number 6,

6   right?

7        MR. DININ:  Yes.

8        THE COURT:  And it's a two paragraph order, right?

9        MR. DININ:  Yes.

11:40  10        THE COURT:  And basically what it says is according to

11   PACER report, you did not find any prior suits.  And that's it,

12   right?

13        MR. DININ:  Yes.

14        THE COURT:  And for that you charged your time at $500

11:40  15   an hour, half-hour.

16        MR. DININ:  Well, yes, because in this --

17        THE COURT:  I just want the record to be clear because

18   this document is going to be part of the record.  I just don't

19   think that's reasonable.  PACER, I mean, your secretary could

11:40  20   go on PACER and look up that information.  I just don't see you

21   spending over an hour-and-a-half on this project.  But anyway.

22   All right.

23        The next item we see here, statement of claim, I'm

24   going to mark as Exhibit Number 5.

11:40  25        (Thereupon, the exhibit was marked for identification.)

|  | 1 | **THE COURT:**  Docket Entry Number 5.  Here you go.  Here |
|---|---|---|
|  | 2 | is -- Exhibit Number 5 is your statement of claim, right? |
|  | 3 | **MR. DININ:**  Yes, Your Honor. |
|  | 4 | **THE COURT:**  And you charge a half-hour for that? |
| 11:41 | 5 | **MR. DININ:**  Yes, Your Honor. |
|  | 6 | **THE COURT:**  And you personally did that, right? |
|  | 7 | **MR. DININ:**  Yes, Your Honor. |
|  | 8 | **THE COURT:**  That is, in my view, not a half-hour |
|  | 9 | justification.  But -- |
| 11:41 | 10 | **MR. DININ:**  The actual typing on the computer. |
|  | 11 | **THE COURT:**  I'm talking about putting it together. |
|  | 12 | **MR. DININ:**  The whole review, looking at it, thinking |
|  | 13 | about it, that takes that time. |
|  | 14 | **THE COURT:**  The next item is Docket Entry Number 10, |
| 11:41 | 15 | give one to counsel.  So Mr. Polk, you get a copy.  That's the |
|  | 16 | only one I have of that. |
|  | 17 | (Thereupon, the exhibit was marked for identification.) |
|  | 18 | **THE COURT:**  I will mark Docket Entry Number 10 as |
|  | 19 | Exhibit Number 10.  Let's see.  Okay.  This was pursuant to my |
| 11:42 | 20 | order for status report, correct? |
|  | 21 | **MR. DININ:**  Yes, Your Honor. |
|  | 22 | **THE COURT:**  And basically, I was trying to find out |
|  | 23 | why is this case not moving along? |
|  | 24 | **MR. DININ:**  Yes, Your Honor. |
| 11:42 | 25 | **THE COURT:**  And so in response to my order which you |

1    charged point one hours to review, you've prepared a status
2    report?

3         **MR. DININ:**  Yes, Your Honor.

4         **THE COURT:**  And those are items 24, 25, 26, 27, and
11:42  5    twenty -- yeah, those items, 24, 25, 26, 27.  The first item
6    is -- it's not 25.  25 is entry of clerk's office.  So Number
7    26, draft and e-File status report after Scott approval.  And
8    that's a half-hour.  What does that mean, "after Scott
9    approval"?  You're the Scott, right?

11:43 10         **MR. DININ:**  Yeah.  This is wrong.

11         **THE COURT:**  You're the Scott?

12         **MR. DININ:**  Yeah, I'm Scott.

13         **THE COURT:**  This suggests to me that you didn't do
14   this work, that someone else did it and sent it to you for your
11:43 15   approval.

16         **MR. DININ:**  What I think 26 is not mentioning
17   correctly is that --

18         **THE COURT:**  Well, this is what you submitted to the
19   Court.  This is what you submitted to the Court.

11:43 20         **MR. DININ:**  Yes, Your Honor.

21         **THE COURT:**  And it says, "Draft and e-File status
22   report after Scott approval."

23         **MR. DININ:**  I think what's happening here is that
24   this, part of this is actually the clerk's default, not the
11:43 25   status report.  I think it was a typo, and I see this is

1   someone who has helped me and then I have them send it but I do

2   the work.  If this is 26, to me looks like it relates to 25,

3   not the status report.

4           **THE COURT:**  That's not the way I read it.

11:44   5           **MR. DININ:**  I understand, Your Honor.

6           **THE COURT:**  Because the next Item 27 says, "Review and

7   approve status report to e-File," same day, and you got, again,

8   time under your name of point two hours.

9           **MR. DININ:**  I think 27 relates --

11:44  10           **THE COURT:**  It seems to me -- here is how I interpret

11   it, maybe I'm wrong, but based on the document you submitted to

12   me, it looks like someone else did the drafting and the

13   e-Filing and submitted to you for your review and approval,

14   which you reviewed and approved and charged an additional point

11:44  15   two.

16           **MR. DININ:**  I think 27, Your Honor, is a typo, it

17   relates to Number 25, and the people definitely helped me.

18   It's not like I do everything myself, but I put everything

19   together.  I do everything, and that's what you're seeing here,

11:44  20   but I think 27 is the default, not the status report.  It's a

21   typo and my mistake.  That's how I see it, on this reading it

22   now looking at --

23           **THE COURT:**  I get --

24           **MR. DININ:**  I understand, Your Honor.

11:45  25           **THE COURT:**  I just don't think that.  I think it looks

     1    like someone else is doing this.

     2         **MR. DININ:**  People assist me --

     3         **THE COURT:**  Because you've got two, you've got one

     4    that says, "submit to me for approval," and then you've got

11:45    5    under your title, "approve."

     6         **MR. DININ:**  People assist me in all my documents, I

     7    never said they don't.  People assist me.  I do the documents

     8    though.

     9         **THE COURT:**  In my interpretation of this, someone else

11:45   10    was doing this work.

    11         **MR. DININ:**  People assist me, Your Honor.

    12         **THE COURT:**  And charging at your billing rate.  Okay.

    13         Now, that's the status report for which whatever the

    14    amount and whoever did it, it was point one hours, point five

11:45   15    hours, point two hours, right?  That's the total?

    16         **MR. DININ:**  It was almost an hour's worth of work

    17    altogether.

    18         **THE COURT:**  But those are the totals, regardless of

    19    who did the work, right?

11:45   20         **MR. DININ:**  Yes.

    21         **THE COURT:**  But regardless of who did the work, it was

    22    charged at $500 per hour for that point eight hours, right?

    23         **MR. DININ:**  Yes, Your Honor.

    24         **THE COURT:**  You got in front of you the status report,

11:46   25    Exhibit Number 10, right?

1          (Thereupon, the exhibit was introduced into evidence.)

2               MR. DININ:  Yes, Your Honor.

3               THE COURT:  Mr. Polk has a copy of it, too.  The

4     status report that involved point eight hours, has three

11:46 5     sentences in it.

6               MR. DININ:  Like I said, Your Honor --

7               THE COURT:  It has three sentences.

8               MR. DININ:  Absolutely, yes.

9               THE COURT:  And it says basically that it was returned

11:46 10    to service on a certain date, defendant failed to enter an

11    appearance, and that the plaintiff intends to file a motion for

12    default and pursue a final default judgment in this matter.

13    That's basically what it says.

14               MR. DININ:  Yes, Your Honor.

11:46 15               THE COURT:  Okay.  Again, my observation is that is

16    not reasonable and not even close to being reasonable.

17               MR. DININ:  I just want to --

18               THE COURT:  I'm just making my ruling as I go along.

19               MR. DININ:  I just believe, Your Honor, that that was

11:47 20    a typo that relates to Item Number 25, the entry for clerk's

21    default, not the status report, that's my typo.

22               THE COURT:  Whether or not it's a typographical error,

23    point eight hours for that document is beyond anything close to

24    being reasonable.

11:47 25               MR. DININ:  Oh, Your Honor, I agree.  That's why I'm

1    saying in looking at it, I think it relates to default, it's my

2    error, it's my scrivener's error, honestly, for something this

3    small I would say at the outside, even with my dyslexia, it

4    would take a half-hour at minimum, probably, but not point

11:47  5   eight, yes, Your Honor.

6         And I, again, think it's part of the clerk's default.

7         THE COURT:  But you're saying it's a typographical

8    error in that that work really related to the motion for entry

9    of the default?

11:47  10  MR. DININ:  I believe so.  I'm just looking at it

11   afterwards.

12        THE COURT:  Return to that document, which is at

13   Docket Entry 11, which we will mark as Exhibit Number 11.

14      (Thereupon, the exhibit was marked for identification.)

11:48  15  THE COURT:  I do not have a copy of that.  So bear

16   with me.

17        Now, Item Number 25, which follows the items that are

18   listed even though you say it might be a typographical error,

19   Item Number 25, it says, Number 11, plaintiff's motion for

11:48  20  entry of default on defendant, point one hours.

21        Item 26, draft and e-File status report after

22   Scott's -- I'm sorry, that's the wrong one.

23        Number 28, draft and e-File motion for clerk default

24   and prepare order, point six, right?

11:48  25  MR. DININ:  Twenty-eight, right, Your Honor?

1          **THE COURT:**  Twenty-eight, point six.

2          **MR. DININ:**  Yes, Your Honor.

3          **THE COURT:**  So you've got point one hours and point

4     six hours dealing with the motion for clerk's default, right?

11:49  5          **MR. DININ:**  Yes, Your Honor.

6          **THE COURT:**  All right.  And aside from the

7     introductory paragraph saying you're going to move for as

8     follows, then you outline in paragraphs 1, 2, 3, and 4 that

9     basically you filed this complaint.  You served on the

11:49  10    defendant on such-and-such a date, returned on such-and-such a

11    date.  Twenty-one days have passed, plaintiffs failed to

12    respond and pursuant to the Rules of Civil Procedure 1.500(a)

13    of the local rules that the clerk may enter a default.

14          That's it, right?

11:49  15          **MR. DININ:**  The words on the paper, yes, Your Honor.

16          **THE COURT:**  Okay.  And then you prepared an order.

17    Now, this is, except for the dates, you know, when service was

18    made and this is a form that you're having -- you have in your

19    computer, isn't it?

11:50  20          **MR. DININ:**  Well, we have all these documents we have

21    done before.

22          **THE COURT:**  That's what I'm saying.  It's a form.

23          **MR. DININ:**  It's a document, yes.

24          **THE COURT:**  The person that goes to the computer says,

11:50  25    okay, I want to look at a motion for entry of clerk's default,

1  gets the template and types in the date that it was filed which

2  is different in each case, the date that the summons was served

3  and failure to respond by 21 days, and then there's a form

4  order that you submit to the clerk's office for default, right?

11:50  5  That's what's involved.

6          **MR. DININ:**  But that's not how I do it.  In this case,

7  I have someone who brings me the file.  I might have printed it

8  out, I might want to read it again, I might want to look it to

9  make sure everything is correct and I get really worried.

11:50  10          Then what I'll do is then I'll print up, I'll be like,

11  yeah, I've done this before, I'll have all my files, I'll print

12  it up.  I might pull it up.  I might do two of them, I might

13  look at it and say, okay, I want to do this one, and then I'll

14  do it, then I have to start creating the heading and then I'll

11:50  15  start reading it and then I'll put it in.  And I don't go that

16  fast, but that's how I am assembling the documents.

17          So I'm using other documents to create a new document.

18  But my thing is reviewing the information, reading it and

19  trying to get the information brought to me, or I'll print it

11:51  20  out and have someone go get the document, bring it back and

21  look at it and be careful what I'm doing.

22          **THE COURT:**  All right.  Turning to the Caraf case, the

23  one that is before Judge Martínez that there's a pending motion

24  for default judgment.

11:51  25          **MR. DININ:**  Yes, Your Honor.

|      |    |                                                                              |
|------|----|------------------------------------------------------------------------------|
|      | 1  | **THE COURT:**  You filed a motion for clerk's default                        |
|      | 2  | judgment in that case, didn't you?                                            |
|      | 3  | **MR. DININ:**  I believe so, Your Honor.                                     |
|      | 4  | **THE COURT:**  Except for the name of the defendant and                      |
| 11:51 | 5 | the date of service and return of service, it's exactly the                  |
|      | 6  | same, isn't it?                                                               |
|      | 7  | **MR. DININ:**  I didn't do the same process.                                 |
|      | 8  | **THE COURT:**  It's exactly the same.                                        |
|      | 9  | **MR. DININ:**  It probably is.                                               |
| 11:51 | 10 | **THE COURT:**  Not probably.  It is exactly the same.                       |
|      | 11 | **MR. DININ:**  What is, the document?                                        |
|      | 12 | **THE COURT:**  Yes.  Except for name of the defendant and                    |
|      | 13 | the dates, it's exactly the same form order.                                  |
|      | 14 | **MR. DININ:**  At the end result, yes.  Not getting                          |
| 11:52 | 15 | there.                                                                       |
|      | 16 | **THE COURT:**  And do you know what you charged,                             |
|      | 17 | according to your summary of filing your hours and attorneys'                |
|      | 18 | fees before Judge Martinez in the Caraf case?                                 |
|      | 19 | **MR. DININ:**  I don't know, it's 11 to 15 hours.                            |
| 11:52 | 20 | **THE COURT:**  Excuse me?                                                   |
|      | 21 | **MR. DININ:**  Eleven to 15 hours.                                           |
|      | 22 | **THE COURT:**  No, I'm talking about for that motion for                     |
|      | 23 | default?                                                                      |
|      | 24 | **MR. DININ:**  Oh, I don't know, an hour?                                    |
| 11:52 | 25 | **THE COURT:**  1.3.                                                         |

1      **MR. DININ:**  Well, I have to look at the particulars of

2  that.  I mean, again --

3      **THE COURT:**  I've looked at it.  I have it in front of

4  me.  I want to make that a -- I think the record will reflect

11:52  5  it's exactly the same except for the name of defendant and the

6  dates.  And according to the submission that you gave to Judge

7  Martínez, you charged on your billing 1.3 hours.

8      **MR. DININ:**  It might have been some free work getting

9  to that, and then I put that in there.  I'm not sure.

11:53  10      **THE COURT:**  In reviewing that and comparing to what I

11  think is reasonable, I think that is not only not close to

12  being reasonable, I find it grossly unreasonable.

13      **MR. DININ:**  In that particular one, maybe it is, but I

14  have to look at those particular line items on what other work

11:53  15  I combined there.

16      **THE COURT:**  Now the next item, Exhibit Number 14,

17  which is Docket Entry Number 14.

18      (Thereupon, the exhibit was introduced into evidence.)

19      **THE COURT:**  Plaintiff's motion for extension of time

11:53  20  to file motion for final default judgment pursuant to the

21  Court's order.

22      Now I had sent an order out saying, let's move this

23  case along because you had a default for a long period of time

24  and nothing happened in that case and you charged point one to

11:53  25  read that order.

1            MR. DININ:  Yes, Your Honor.

2            THE COURT:  And then you respond to this order by

3   reading this document, right?

4            MR. DININ:  Yes, Your Honor.

11:53  5            THE COURT:  Okay.  Point six hours for this document,

6   right?

7            MR. DININ:  That could have combined a phone call to

8   counsel.  It could have been something else involved with that,

9   not just the actual typing and me cutting and pasting.

11:54  10           THE COURT:  It doesn't say anything about telephone

11  calls.

12           Wait.  The description says, "Draft and e-File motion

13  for extension of time."

14           MR. DININ:  You're absolutely correct.  What this

11:54  15  doesn't reflect --

16           THE COURT:  "Draft motion and order for extension of

17  time to file final judgment."

18           MR. DININ:  Yes, Your Honor, I think you're actually

19  correct, but what it does not reflect is contemporaneously what

11:54  20  I'm doing.  I'm not putting every line item, I'm just putting

21  in a catchall phrase in regard to that document.

22           THE COURT:  What else is there to do with this

23  document?  You basically say, "I just want some more time."

24           You repeat, default was entered on such-and-such a

11:54  25  date, that you require additional time to file a copy --

1        **MR. DININ:**  Yes.

2        **THE COURT:**  -- of the motion for default judgment.

3   And then you feel that providing additional time to respond, or

4   to the defendant to appear, which is a good thing.  That's your

11:55   5   excuse or your reasoning for asking for additional time, so

6   that you could give the defendant a chance to come into the

7   case, and then you do that because you don't want to expend

8   unnecessary time and expense, which ultimately would add to the

9   legal fees, which I think is a commendable goal.

11:55  10        So you say, in an abundance of caution, you want an

11   extension of time to file that and I granted that.  That's

12   basically what it says, right?

13        **MR. DININ:**  Yes, Your Honor.

14        **THE COURT:**  I don't find point six hours is something

11:55  15   that justifies -- I mean, is justified by this document and

16   certainly not at $500 an hour.  That's my ruling.  I think it's

17   just --

18        **MR. DININ:**  I understand, Your Honor.  I wish you

19   could come to my practice one day and see the challenges we

11:55  20   face.

21        **THE COURT:**  I'm not going to get involved in your

22   practice of law.  But if this is the result of the fruits of

23   your labors, then you may want to consider getting some help or

24   doing something differently because, in my view, this is

11:56  25   grossly out of line for what I would think would be reasonable

1    in a default case.

2          But I haven't been in private practice for 18 years,

3    19 years, maybe I'm missing something.  That's my ruling, I

4    just don't think it's reasonable.

11:56  5          MR. DININ:  Yes, Your Honor.

6          THE COURT:  And certainly, not reasonable at $500 an

7    hour.  This is, I don't want to say grunt work, so I'm not

8    going to use that word.  This is low hanging fruit.

9          MR. DININ:  You can't bill for the assistants and

11:56 10    stuff like that?

11          THE COURT:  I don't know, but you don't bill $500 an

12    hour.  This is not --

13          MR. DININ:  How do you bill that then?

14          THE COURT:  That's not my problem.  I'm just telling

11:56 15    you in my view this is way, way beyond what is reasonable.  I

16    note in a case before Judge Martínez, Docket Entry Number 10

17    for the same motion, of course in this case it had different

18    defendants, but it's the exact same language, you charged

19    one hour.

11:57 20          MR. DININ:  Again, Your Honor, I would say, again, I

21    could have been --

22          THE COURT:  I'm just making the observation, I'm

23    putting it on the record.  That's for Judge Martínez to decide.

24    That's stretches credibility.

11:57 25          MR. DININ:  I just want to put the notice again on the

1    Court that when I'm doing this I might be doing a lot of other

2    things with the file, I might be reviewing it, I might be doing

3    a lot of things that are not notated in that one little line

4    there.

11:57  5          **THE COURT:**  So anyway, you say in your motion of time

6    you want to give the defendant a chance to come in and respond.

7    Right?

8          **MR. DININ:**  Yes, Your Honor.

9          **THE COURT:**  And as you say, potentially appear in this

11:57 10   case in the interest of justice.  Did you have a conversation

11   with the defendant?

12         **MR. DININ:**  I don't think the defendant ever contacted

13   us.

14         **THE COURT:**  Well, you say that you wanted to give the

11:57 15   defendant additional time.

16         **MR. DININ:**  Well, obviously they knew they were being

17   sued.

18         **THE COURT:**  Look, I think in the interest of justice,

19   I'll tell you I'm about to ask for a default judgment; you

11:58 20   didn't do that?

21         **MR. DININ:**  I don't think we did in this case, we

22   called and we have some letters --

23         **THE COURT:**  In this case?

24         **MR. DININ:**  I don't know, Your Honor.  I don't think

11:58 25   we did in case.

1      **THE COURT**:  There's no time indicating you did.  And

2  if you had done that, you would have billed for that, right?

3      **MR. DININ**:  I don't know, but I don't bill for every

4  item I do in this case.

11:58  5      **THE COURT**:  It looks to me like you bill for every

6  item.

7      **MR. DININ**:  I don't.  I don't.  I don't, Your Honor.

8  There's plenty of items --

9      **THE COURT**:  But you have no recollection of actually

11:58  10  talking --

11      **MR. DININ**:  No, I don't.

12      **THE COURT**:  And then Mr. Irving (ph.) in Judge

13  Martínez' case, you didn't reach out to the defendant either?

14      **MR. DININ**:  I could have sent a letter in that case.

11:58  15  I'm not sure.

16      **THE COURT**:  Okay.  So let's see.  Item 30, I'm

17  somewhat confused by that.  Receive a notice of right to

18  amend -- what's that -- because I don't see anything in the

19  file that relates to that.  What is it?

11:59  20      **MR. DININ**:  I'm just trying to think if that relates

21  before I put the default judgment in maybe.  I might have

22  mis-noted it, but it may have had to do with the default

23  judgment or the final judgment.  Maybe that's what I mean.

24      **THE COURT**:  It doesn't relate to anything in the

11:59  25  docket that I can see.

1    **MR. DININ:**  Well, I think those wordings, I think

2    you're correct, there's no right to amend, I think it might be

3    my own notation to myself about what I want to do in the case.

4    **THE COURT:**  Well, I think I made it pretty clear that,

11:59    5    in my view, the billings represented by your exhibit attached

6    to your motion for default judgment are way out of line between

7    what's reasonable and necessary in this case.  It certainly

8    does not justify billing these ministerial -- many of these

9    things which are purely ministerial matters, administrative

12:00   10    matters at $500 an hour, and I think the time is grossly

11    overstated.  And, frankly, I have some real issues about the

12    credibility of some of the entries.  And I think I've already

13    indicated what some of those are.

14    And again, I'm going back.  I really have some serious

12:00   15    issues about the chronology of the verification versus the

16    alleged subsequent revisions.  And I just don't see anything

17    which would suggest that any revisions were made pursuant to

18    Mr. Johnson's suggested revisions.  And, of course, in Judge

19    Martínez's case, you also billed for the same kinds of things,

12:00   20    revisions that apparently Mr. Johnson had to the complaint, the

21    complaint that took 3.5 hours to drive out.

22    So that's my view of the fees.

23    Now, with regard to the costs, you've got filing fee

24    which obviously you're entitled to.  Suing, you're entitled to

12:01   25    bring this lawsuit.  I'm not sure what Mercury Express is, is

1  that the service?

2          MR. DININ:  Yes, Your Honor.

3          THE COURT:  The rest of the items seem to be making

4  copies and there's PACER search.  PACER search, I didn't notice

12:01 5  this before.  PACER search cost $0.50.  Am I reading that

6  right?  Is that what that means?

7          MR. DININ:  Yeah, it might be per page or something.

8          THE COURT:  Hold on just one second.  It suggests here

9  that the PACER search costs was incurred by Rebecca Johnson.

12:02 10  Who is Rebecca Johnson?

11          MR. DININ:  These are different people that I have

12  people working on PACER pulling up documents.

13          THE COURT:  Do you know what she was doing on this

14  occasion?

12:02 15          MR. DININ:  No.

16          THE COURT:  I'll tell what you she was doing based on

17  your document.  Look at entry number 5.

18          MR. DININ:  Uh-huh.  (Nodding).

19          THE COURT:  Same date, October the 23rd, 2018, quote,

12:02 20  research prior ADA.  I'm looking at the PACER same date,

21  October 23rd, Rebecca Johnson, PACER search cost.

22          MR. DININ:  Yeah.

23          THE COURT:  That does not beg the question that maybe

24  Ms. Johnson was doing the PACER search?

12:03 25          MR. DININ:  No, because we both could be doing.  She

1  could have pulled it up, told her to print it out.  She's a
2  very fluid situation.

3  **THE COURT:**  That could be the case.  So the only other
4  person that says PACER search that could be a later date and
12:03 5  that is Stephanie Serrano.

6  **MR. DININ:**  In my office.

7  **THE COURT:**  It says search, prior ADA, and it's 11-29,
8  $0.70.  The total PACER search, total, that means, I assume,
9  everybody, is 1.20, which consists of the $0.50 for Ms. Johnson
12:03 10  and the $0.70 for Ms. Serrano.  That begs the question who was
11  actually doing that ADA PACER search?

12  **MR. DININ:**  It could have been me.  It could have been
13  both of us.

14  **THE COURT:**  Based on this document, what's it look
12:03 15  like to you?

16  **MR. DININ:**  Well, I know.

17  **THE COURT:**  Let me ask you, what do you think an
18  outside person would conclude from this?

19  **MR. DININ:**  That someone was assisting me.

12:03 20  **THE COURT:**  Oh, I conclude that someone else was doing
21  it.

22  **MR. DININ:**  I don't believe that's the case at all
23  because I do the research on these cases.  Because you have to
24  read, you have to pull it up, you have to interpret what's
12:04 25  going on.  Just to pull up, someone might have done that and

then said, "Mr. Dinin, did I do this right," and then I'll come

in and I will start looking at it and I might be training

somebody at that time, then they leave, they quit.  I have a

new person.

12:04 5        I have many situations going on that all the work is

done by me.

        **THE COURT:**  You have a lot of problems with your

office, don't you?

        **MR. DININ:**  Well, it's very hard --

12:04 10      **THE COURT:**  It seems to be --

        **MR. DININ:**  Yes.

        **THE COURT:**  -- something that doesn't -- every time

somebody raises a red flag for me, and maybe I'm being overly

critical --

12:04 15      **MR. DININ:**  Yes.

        **THE COURT:**  -- raise a red flag, that seems to be a

legitimate concerning about the reporting of this time --

        **MR. DININ:**  Well --

        **THE COURT:**  -- it's always a problem with your office.

12:04 20      **MR. DININ:**  Your Honor --

        **THE COURT:**  And yet, you're charging $500 an hour for

all this.  It just doesn't seem right.

        **MR. DININ:**  There's two bases to my office, Your

Honor.  There's me, Scott Dinin, the lawyer, the lawyer has

12:05 25 been a member of the bar for 23 years, a member who brought the

1   Winn- Dixie/Gil case who is on appeal, first case (inaud.)

2   Title 3, replies to websites.  Judge Dimitrouleas awarded me

3   $450 an hour two-and-a-half years ago in a service animal case

4   against Winn-Dixie in summary judgment.

12:05   5        Judge Scola --

6        **THE COURT:**  Listen, you could go through all you want,

7   but I know how those cases go.  You file something, nobody

8   objects to it, and it gets done.  I'm not doing that.  As they

9   say, I can't -- what is it --

12:05   10        **MR. DININ:**  I'm sorry, Your Honor.

11        **THE COURT:**  Welch, the count for the United States

12   Army and the McCarthy hearings, was the name Welch?  Adams or

13   Welch?

14        As he said, famously, "I'm not a potted plant," and I

12:05   15   am not a potted plant.  When I see something come across my

16   desk where it's a cookie cutter default judgment, when I see

17   this kind of request for fees, it raises a red flag and it

18   caused me to spend a substantial time amount of time on this

19   case because it raised substantial questions about the

12:06   20   credibility of these bills.  And I'm being straightforward.

21   I'm not -- this is about as polite a way as I can put it.

22        **MR. DININ:**  Yes, Your Honor.

23        **THE COURT:**  And that's -- I think I've covered

24   everything except the cost, I'm going to allow the costs

12:06   25   assuming I allow anything in this case of the filing fee as

1  well as the service, because I think those are appropriate

2  costs.

3         **MR. DININ:**  Yes, Your Honor.

4         **THE COURT:**  Not all these copies and things like that.

12:06  5         I will say this, though, I'm going to set this case

6  down on a rule to show cause why sanctions shouldn't be entered

7  against you and your client for things that I've discussed here

8  today.

9         One) continually filing Counts 2, that is under the

12:06  10  Florida Civil Rights Act when you know that you have been

11  dismissed either by the Court or voluntarily dismissing those

12  because there's been no exhaustion of administrative remedies.

13  Statute 760, in my view, is quite clear and I invite you, you

14  say you're going to take an appeal at the right time, maybe

12:07  15  this is going to be the right time, but I find that there's no

16  basis and you filed frivolous lawsuits, frivolous claims,

17  specifically Count 2, when you knew, based on your prior

18  experience going back to 2014, that those were being dismissed

19  for failure to comply with the administrative remedies and

12:07  20  exhaustion of those remedies.

21         And second) show cause why I shouldn't sanction you

22  for what I consider to be grossly overbilling for this case.

23  So we're going to set a hearing on that date.  I may want

24  additional documents and if I do, I'll send out an order.  I

12:07  25  may send out documents on your billing for other cases.  I did

1    look at Judge Moreno's -- Judge Martínez because his was one

2    that had a default judgment request and I had an obvious choice

3    to look at, and I'll let you know -- I may want to have other

4    witnesses come in, including your office staff --

12:08   5              MR. DININ:  Okay.  Yes, Your Honor.

6              THE COURT:  -- to answer some of these questions that

7    raise flags with me and you say are part of the disorganization

8    in your office, or however you want to describe it.

9              MR. DININ:  Yes, Your Honor.

12:08   10             THE COURT:  Okay.  It's also my finding that

11   Mr. Johnson has not suffered any damages.  Even if he had a

12   viable Count 2 claim, that the access to the audio is so de

13   minimis and, in my view, of no value.  The only person that has

14   any value to it is the community store who might -- or maybe

12:08   15   the advertiser, who might get a customer to buy a Slurpee or

16   whatever it might be, or to buy insurance, I think one of these

17   things was to buy insurance.

18             So I wouldn't award any damage in this case and,

19   particularly, in view of the fact that there are so many

12:09   20   options to gas up his automobile, and because there are some

21   things that just raise additional red flags about his so-called

22   damages and one of the items, of course, I spent some time

23   discussing is going to three gas stations to gas up on the same

24   day.  And then as I say just in the little bit of time I've

12:09   25   looked at it, three days, four days between other gas-ups, it's

<table>
<tr><td></td><td>1</td><td>obvious to me that he's not really looking to look at these</td></tr>
</table>

obvious to me that he's not really looking to look at these

videos and here, but he's looking to find lawsuits which he may

be entitled to do as a tester, but I don't think he's got any

damages.

12:09    So we're going to enter the rule to show cause not

only to counsel, but to Mr. Johnson himself.  So I'll get that

order out sometime, maybe not in the next couple of days,

because I'm going to be out of town most of the rest of this

week and next week.

12:10    I think I've covered everything, but a couple of

things I wanted to ask.

In the complaint, if I'm not mistaken, Mr. Johnson

alleges that when he goes to the gas station, he sees that he

doesn't have the closed caption, he needs audio, and he goes to

12:10    the attendant.  And the attendant says, "You know, I don't know

how to work it," or, "We don't have it," or, "That's as loud as

it gets," something like that.

How does that communication take place?

**MR. DININ:**  I'm sorry?

12:10    **THE COURT:**  How does that communication take place?

**MR. DININ:**  He can speak, he can speak, he has hearing

aids, he can hear most people --

**THE COURT:**  So he can hear the attendant?

**MR. DININ:**  No.

12:10    **THE COURT:**  Wait, wait, wait, he can hear the

1  attendant to have a normal conversation?

2         **MR. DININ:**  No, I don't think that's how it is.

3         **THE COURT:**  How does he do it?  Can he read lips?

4         **THE PLAINTIFF:**  I read lips.

12:11  5         **THE COURT:**  Is that what you're doing, you're reading

6  lips?

7         **THE PLAINTIFF:**  I read lips when I'm in front of

8  people, yes.

9         **THE COURT:**  That helps explain it.

12:11  10        **THE PLAINTIFF:**  Plus sometimes I pull up to the gas

11  station, there's no video playing until you start pumping the

12  gas.

13        **THE COURT:**  Okay.  Just bear with me one second

14  because I've got so many papers up here.  I think I need to

12:11  15  make some additional exhibits.  These are documents that were

16  exhibits in a different case, Judge Bloom's case 18-CV-62991,

17  the case I referred to earlier, and they are three photographs

18  or copies of photographs of Speedway Gas Station gas pump which

19  I think represents the video, so any objection to making these

12:12  20  exhibits in this case?  I think it's fairly representative.

21        **MR. DININ:**  I have no objection, Your Honor.

22        **THE COURT:**  All right, I'm going to make this

23  Composite Exhibit Number 3.

24        (Thereupon, the exhibit was introduced into evidence.)

12:12  25        **THE COURT:**  I do note that in the second photograph it

1  has -- appears to be closed captioning.  It's got some

2  instructions about swiping your Speedway Rewards card and it

3  also has statements about enroll today and some kind of credit.

4        **MR. DININ:**  But I think that's an illustrative example

12:13  5  of how they could be closed captions on there and they don't

6  put them on there.

7        **THE COURT:**  It's also an example that it's

8  advertisement and it's available to anybody who can read it.

9        **MR. DININ:**  But the follow-on videos may not have it

12:13  10  and that's what that was showing, that they could have it and

11  they just don't do it.

12        **THE COURT:**  It's Composite Exhibit Number 3.  All

13  right.  I think I might also file, once I get in better shape,

14  a list of all the lawsuits that have been filed and the

12:13  15  addresses, I'm going to do that as a composite exhibit, but I

16  don't have that other than handwritten notes, so I'm going to

17  do that in a form that's typed up and looks good and eventually

18  I'll make that Composite Exhibit 4.  When I say I, I'm going to

19  delegate that someone who is more competent than me and charges

12:14  20  less than I do, my law clerk.  That's Composite Number 4, and

21  then also Composite Exhibit 4 is going to be the information

22  regarding the gas stations that were listed as being visited in

23  the month of August 2018.  So that the record on appeal, of

24  course, will see what I was talking about.

12:14  25        Okay.  Anything else?  Any questions?

1          **MR. DININ:**  No, Your Honor.

2          **THE COURT:**  Anything you want to say?

3          **MR. DININ:**  No.  I just want to say that we -- how I

4    run my practice is that I have a lot of people helping me.  I'm

12:15  5    doing all the work.  I don't have any licensed paralegals.  And

6    I have many people assisting me and I keep the records as close

7    as I can contemporaneously.  A lot of times on this default, I

8    have to go back and take different notes and to the best of my

9    ability try to put down to comply with the Court's order.

12:15  10          I want the Court to know that I'm highly dyslexic, not

11   to read the documents, that's the easy part for me, it's to

12   make sure that they're accurate and to ensure that what I'm

13   doing is accurate.  That's what seems to take the longest part

14   with me, and that's how I work it.

12:15  15          I wish I had a system where could I have several

16   paralegals and several people where I could just delegate every

17   single thing to and I guess you're calling a lower billing rate

18   and how it's set up in my office, Your Honor, is that since I

19   don't have these licensed people and it's hard to find people,

12:15  20   I'm having people constantly assist me, but I cannot ensure

21   their work nor what they're doing, so sometimes I'm doing the

22   work again, I'm looking over or asking them to assist me when

23   I'm doing these line items, and no one is doing those line

24   items for me, and then I'm billing.  I am doing all the items.

12:16  25          I have a lot of people helping and assisting me

because of the way my brain concentrates and my dyslexia.  But

the documents and the stuff you're seeing in front of you

except for the typos and scrivener errors is my work and that's

what I stand behind and that's what I do in this environment of

12:16    5    trying to work with plaintiffs who are not paying me money up

front and I'm trying to bring these cases in the civil rights

area.

I want to just go back and address about the paying

customers, Your Honor.

12:16   10        THE COURT:  Let me respond to that first and then

we'll --

MR. DININ:  Yes, Your Honor.

THE COURT:  -- spend more time than necessary.

With regard to -- you don't have paralegals?

12:16   15        MR. DININ:  That's correct, Your Honor.

THE COURT:  You don't have a young associate?

MR. DININ:  No, Your Honor.

THE COURT:  You don't have an old associate?

MR. DININ:  I've been trying to hire, yes, Your Honor.

12:17   20        THE COURT:  So you've been doing all the labor

yourself?

MR. DININ:  Not exclusively.

THE COURT:  At least the ones that are listed in the

billing?

12:17   25        MR. DININ:  I'm sorry?

1        **THE COURT**:  At least the ones that are listed in your

2  billings?  The ones that are listed in the billings, the

3  summary of your billings, those are the ones you do?

4        **MR. DININ**:  With assistance, yes.  Everyone is

12:17  5  assisting me in everything I'm doing.

6        **THE COURT**:  Would you agree that many, if not the most

7  of those items, could be done by a competent paralegal or a

8  young associate?

9        **MR. DININ**:  Yes.

12:17  10        **THE COURT**:  So what you're saying is because you

11  choose not to have a paralegal, you choose not to have a young

12  associate, that you do it and you feel you're entitled to

13  charge $500 an hour as if it were complex litigation rather

14  than being charged what your reasonable rate would be for doing

12:17  15  that task?  That's what you're telling me?

16        **MR. DININ**:  No, it's not.

17        **THE COURT**:  It sounds like it.

18        **MR. DININ**:  I'm terribly inarticulate at times and I

19  apologize.  I'm trying to hire an associate as we speak and a

12:18  20  licensed paralegal, I want to increase, as you call it, the

21  efficiency of the effectiveness of what I'm doing, so I'm not

22  doing everything.  And if there are tasks that I shouldn't be

23  doing or that I shouldn't be billing my $500 rate, maybe that's

24  my $200 rate, I'm more than happy to revise that, Your Honor,

12:18  25  with a full explanation because it's not my intent to deceive

the Court or put any wrong information on here.  I have too

much at stake with the people I'm representing and the issues

I'm presenting.

What, again, I -- it's -- I would be more than happy

to address hiring these people and making sure all the future

billings are exactly as you say.  And the current way I do it,

very few things go to default, maybe five or six over my whole

practice, and usually the Court asks me at that point, "Listen,

if you want a default judgment to do the injunctive relief to

get your attorney's fees, you have to put everything in the

appropriate format."

So what I've done is I have made some mistakes in my

earlier defaults, I didn't quite understand how it worked

because I didn't come up through a law firm, I was all

self-taught.  It's no excuse, but I learned and I fixed my

default motions and now what I do is I go back up for this one

and I try to pull all my records and all my pads and I try to

go back into my time management system and I try to accurately

reflect that everything is done to make sure I'm coming into

court, that my name is on it, and if there's a few errors or

some scrivener errors, I'm not -- not enough to admit that or

change it or update this or reflect that, but the way I run my

practice is I'm doing the work, I'm interacting with all the

clients, and I'm touching everything because no one else can,

and I have a lot of people, but I'm asking people to assist me

1  on all sorts of pieces of every single one of these.

2       I might write something and give it to someone and

3  say, "Can you just reread it that?"  That's how I work, it's

4  not like your normal practice.

12:19  5       **THE COURT:**  You're repeating yourself.

6       You wanted to go into something else.  But --

7       **MR. DININ:**  I was going to tell you how I bill --

8       **THE COURT:**  Here is my view.  So I thought it was

9  clear, but maybe it's not.  I'm not saying that these are

12:20  10  scrivener errors.  I don't think they're scrivener errors.  I

11  think there's a lack of credibility.  I don't know how I can

12  say it any clearer.  I'm trying to be a polite as I can.

13      **MR. DININ:**  Yes, Your Honor.

14      **THE COURT:**  I find that there's a lack of credibility

12:20  15  with regard to the billing practices, and the fact that you say

16  you have dyslexia and you're not able to do things as quickly

17  as somebody else begs the question, well, then why are you

18  charging $500 an hour if you're not efficient?  You can't have

19  it both ways.  You can't -- excuse me, I didn't interrupt you.

12:20  20      **MR. DININ:**  I'm sorry, Your Honor.

21      **THE COURT:**  You can't say I'm the best lawyer, well

22  qualified, doing it for 20 years, I'm entitled to $500 an hour,

23  which is a nice, healthy rate, I think.  And then come in to

24  say, I've got all these other problems that make me less

12:20  25  efficient and make me less able to represent my clients.  You

1    can't have it both ways.  But that's not my concern.

2         My concern is what you submitted to me for bills and

3    your lawsuits, particularly Count 2, but also the underlying

4    lawsuit Count 1, I don't find -- I think there's a credibility

12:21 5   issue there, let me put it as politely as I can.

6         **MR. DININ:**  I understand, Your Honor.

7         **THE COURT:**  That's it.  There's one other issue, I did

8    interrupt you.

9         What's the other issue you wanted to talk about?

12:21 10   **MR. DININ:**  I was explaining to you about what my

11   office does.  I also do first property insurance claims that

12   are all on attorney's fees, where the same type of practice we

13   are engaged and represent people who were, they believe,

14   underpaid by their insurance companies and those are the same

12:21 15   things we're doing, the same rate, same, I'm doing all the

16   work, everybody is assisting me and that's how we do it.

17        I have some clients that I have taken where I have

18   been paid over $500 an hour for consulting work, but my

19   practice has been trying to concentrate on ADA.

12:22 20        I get what you're saying about becoming more

21   efficient, I'm effective.  In my own mind, my billing is not

22   for efficiency, it's for what I know and if I have to address

23   that, I will.  But --

24        **THE COURT:**  You say -- but you say for efficiency,

12:22 25   you're talking about efficiency and results, that's what I

1  should be looking at?

2      MR. DININ:  Well, no, I was just saying what I bill,

3  my billing on, first of all, what I was last awarded by a

4  federal judge, Judge Dimitrouleas.  It's been two years.

12:22  5      THE COURT:  I understand that.  And I know how that

6  works.

7      MR. DININ:  And I just --

8      THE COURT:  Was anybody challenging that?

9      MR. DININ:  No, not that I'm aware of.

12:22  10      THE COURT:  Was there anybody to go through your

11  billing records, as I've done and go back and look at the

12  docket entries and compare the charged time versus the document

13  that was --

14      MR. DININ:  Whatever defaults --

12:22  15      THE COURT:  Did they do that in that case?

16      MR. DININ:  Whatever defaults we have done we have

17  been approved.

18      THE COURT:  I'm pretty sure no one did that.  I did it

19  because of the red flags.

12:22  20      MR. DININ:  Yes, sir.  My case was -- I think Winn-

21  Dixie filed an appropriate objection to my case in the service

22  animal case with Judge Dimitrouleas, and my fees were all

23  approved, they went over everything, it was $55,000 or

24  something.  It was all these depositions.

12:23  25      THE COURT:  Great, then you have enough money to go

1    out and hire a good associate.

2              MR. DININ:  That's what I'm going to do.

3              THE COURT:  Make your life easier.  It might make my

4    life easier.

12:23  5        MR. DININ:  Your Honor, I'm dedicated.

6              THE COURT:  I don't want to go over this again.  If

7    you have something different you want to say --

8              MR. DININ:  No, I'm going to take everything you said

9    here and we're going to make the appropriate changes.

12:23  10      THE COURT:  I'm going to set this for a hearing on a

11   rule to show cause sometime maybe two or three weeks down the

12   road and I will get an order on that.

13             MR. DININ:  Could you possibly give me a little more

14   time so could I get appropriate counsel and make sure I have

12:23  15  everything in order, like maybe July?  I'd like enough time to

16   make sure --

17             THE COURT:  No.  The reason -- let's see, today is

18   the --

19             MR. DININ:  Or June, maybe, middle of June, late June.

12:24  20  I have a lot of cases coming up and I have a lot of

21   motions and I have to do everything myself.

22             THE COURT:  What is the first Monday in June?

23             THE COURTROOM DEPUTY:  June 3rd.

24             THE COURT:  June 10th.  That's a Monday.

12:24  25        MR. DININ:  Yes, Your Honor.

1    **THE COURT:**  If you need additional time, you know how

2  to file a motion for extension of time.

3    **MR. DININ:**  Yes, Your Honor.

4    **THE COURT:**  Just don't bill me for it.

12:24  5    Anything else?  I've indicated the time to submit the

6  documents for settlement.

7    **MR. POLK:**  Yes.  Thank you, Your Honor.

8    **THE COURT:**  Sorry, Mr. Polk, holding you up for all

9  these hours, you didn't have much to do and you could have left

12:24  10  any time you wanted to, but I did learn about that global

11  settlement which explains why it wasn't something that was just

12  easily done.  Okay.

13    **MR. POLK:**  We have a number of cases together so it's

14  helpful in our other case negotiations as well.

12:24  15    **THE COURT:**  Have a good day.

16    **MR. DININ:**  Thank you, Your Honor.

17

18    (Thereupon, the above hearing was concluded.)

19

20    *        *        *

21

22

23

24

25

1                          **C E R T I F I C A T E**

2

3           I hereby certify that the foregoing is an accurate

4    transcription of the proceedings in the above-entitled matter.

5

7       05/17/2019            _____

8    DATE COMPLETED              GIZELLA BAAN-PROULX, RPR, FCRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## #

**#1400** [1] - 1:17

## $

**$0.50** [2] - 90:5, 91:9
**$0.70** [1] - 91:8, 91:10
**$1,500** [1] - 54:2
**$200** [1] - 101:24
**$4,000** [3] - 8:24, 9:12, 9:17
**$450** [1] - 93:3
**$500** [28] - 49:8, 53:25, 55:6, 56:23, 57:2, 58:16, 58:21, 67:21, 68:4, 68:14, 68:16, 69:4, 69:6, 69:7, 70:14, 72:8, 73:14, 77:22, 85:16, 86:6, 86:11, 89:10, 92:21, 101:13, 101:23, 103:18, 103:22, 104:18
**$55,000** [1] - 105:23
**$7,350** [1] - 9:24

## 0

**05/17/2019** [1] - 108:7

## 1

**1** [7] - 36:24, 44:7, 44:9, 48:23, 63:19, 80:8, 104:4
**1,750** [1] - 56:24
**1.20** [1] - 91:9
**1.3** [2] - 82:25, 83:7
**1.500(a** [1] - 80:12
**10** [6] - 12:7, 74:14, 74:18, 74:19, 77:25, 86:16
**10-31** [1] - 63:25
**100** [1] - 53:18
**10th** [1] - 106:24
**11** [6] - 19:1, 62:24, 79:13, 79:19, 82:19
**11-1-2018** [1] - 63:19
**11-29** [1] - 91:7
**11th** [2] - 29:22, 60:15
**12** [1] - 16:12
**13** [1] - 69:20
**1323** [1] - 30:7
**1337** [1] - 30:6
**14** [5] - 49:8, 70:18, 71:4, 83:16, 83:17
**15** [7] - 45:22, 49:8, 62:22, 68:2, 73:1, 82:19, 82:21
**15th** [1] - 9:24
**16** [1] - 73:1
**16th** [1] - 28:17
**1700** [1] - 23:8
**18** [1] - 86:2
**18-CV-24447** [1] - 42:13
**18-CV-24472** [1] - 56:8
**18-CV-24585** [1] - 29:15

**18-CV-24586-PCH** [1] - 1:2
**18-CV-62991** [2] - 13:5, 97:16
**19** [1] - 86:3
**1st** [6] - 61:17, 63:16, 63:20, 64:4, 64:7, 64:8

## 2

**2** [27] - 10:19, 11:3, 11:8, 13:10, 14:6, 14:12, 14:22, 14:24, 15:8, 15:23, 16:6, 16:17, 16:24, 17:7, 18:4, 30:2, 36:25, 38:1, 40:22, 45:6, 80:8, 94:9, 94:17, 95:12, 104:3
**20** [3] - 45:10, 45:22, 103:22
**2013** [1] - 29:23
**2014** [1] - 16:21, 94:18
**2016** [2] - 16:20, 16:21
**2018** [13] - 16:22, 26:16, 26:19, 27:12, 34:3, 34:7, 35:17, 44:19, 44:21, 63:24, 90:19, 98:23
**2019** [1] - 1:5
**21** [1] - 81:3
**2222** [1] - 27:6
**23** [1] - 97:2
**23rd** [4] - 28:18, 28:19, 90:19, 90:21
**24** [2] - 75:4, 75:5
**25** [11] - 24:8, 52:14, 75:4, 75:5, 75:6, 76:2, 76:17, 78:20, 79:17, 79:19
**2545** [2] - 24:8, 27:13
**26** [32] - 7:4, 7:6, 7:11, 10:17, 11:3, 14:11, 15:5, 16:5, 17:24, 20:12, 20:13, 23:13, 25:5, 25:11, 25:16, 26:1, 26:4, 32:25, 35:2, 36:11, 49:16, 50:19, 52:15, 54:20, 55:2, 56:25, 75:5, 75:7, 75:16, 76:2, 79:21
**2695** [2] - 24:23, 26:20
**26th** [1] - 28:19
**27** [6] - 75:4, 75:5, 76:6, 76:9, 76:16, 76:20
**27th** [1] - 56:9
**28** [1] - 79:23
**29th** [1] - 29:16
**2nd** [1] - 26:14

## 3

**3** [5] - 30:3, 80:8, 93:2, 97:23, 98:12
**3.5** [3] - 56:23, 66:14, 89:21
**30** [1] - 88:16
**300** [1] - 57:4
**305** [2] - 1:18, 1:22
**30th** [6] - 26:15, 26:19, 27:3,

27:7, 27:11, 28:20
**31st** [9] - 44:18, 44:20, 44:21, 61:17, 63:24, 64:2, 64:14, 64:24, 65:3
**33127** [1] - 1:14
**33128** [1] - 1:22
**33156** [1] - 1:17
**350-5338** [1] - 1:18
**365** [2] - 12:3, 12:8
**37th** [1] - 27:7
**3rd** [3] - 23:8, 28:14, 106:23

## 4

**4** [6] - 30:4, 72:25, 80:8, 98:18, 98:20, 98:21
**400** [1] - 1:21
**4200** [1] - 1:13
**42nd** [2] - 24:24, 27:13
**431-1333** [1] - 1:14

## 5

**5** [4] - 73:24, 74:1, 74:2, 90:17
**50/50** [2] - 21:12, 22:13
**523-5634** [1] - 1:22

## 6

**6** [5] - 56:20, 72:22, 72:24, 73:5
**62991** [1] - 16:12

## 7

**7** [2] - 53:21, 66:21
**733** [1] - 30:7
**76.11** [1] - 11:24
**760** [4] - 5:3, 37:2, 37:10, 94:13
**760.07** [1] - 11:14
**760.1** [1] - 12:6
**760.11** [1] - 12:13
**786** [1] - 1:14
**7th** [1] - 1:13

## 8

**8th** [2] - 1:21, 28:16

## 9

**9** [2] - 1:5, 60:13
**90** [3] - 49:20, 50:3, 57:4
**9150** [1] - 1:17
**95** [2] - 49:20, 50:3
**99** [1] - 53:4

## A

**abandoning** [1] - 33:21
**abilities** [1] - 57:16

**ability** [5] - 6:11, 65:25, 66:3, 71:17, 99:9
**able** [5] - 15:17, 23:6, 33:14, 103:16, 103:25
**above-entitled** [1] - 108:4
**absolutely** [13] - 2:16, 9:9, 15:7, 33:23, 35:23, 41:5, 51:21, 52:12, 53:3, 68:10, 78:8, 84:14
**absorb** [1] - 5:19
**abundance** [1] - 85:10
**accept** [3] - 28:5, 29:3, 62:14
**access** [5] - 18:5, 31:3, 41:16, 42:20, 95:12
**accessibility** [1] - 41:14
**accommodation** [3] - 19:10, 19:18, 50:8
**accomplish** [2] - 62:17, 67:13
**accordance** [1] - 9:23
**according** [5] - 53:21, 72:10, 73:10, 82:17, 83:6
**accuracy** [2] - 64:10, 64:14
**accurate** [12] - 45:1, 58:22, 60:17, 60:24, 63:5, 63:7, 68:6, 70:8, 99:12, 99:13, 108:3
**accurately** [1] - 102:18
**achievable** [1] - 35:18
**acknowledged** [1] - 54:25
**act** [1] - 67:19
**Act** [2] - 5:2, 9:7, 10:16, 11:3, 13:24, 94:10
**action** [2] - 5:15, 11:17
**activities** [2] - 27:22, 67:14
**activity** [7] - 43:2, 43:3, 46:8, 66:2, 68:5, 70:5, 70:11
**actual** [5] - 6:25, 32:24, 70:1, 74:10, 84:9
**ad** [3] - 22:10, 22:11
**ADA** [17] - 6:22, 19:11, 19:18, 19:21, 49:21, 50:8, 50:22, 51:7, 51:12, 52:17, 70:18, 71:4, 72:18, 90:20, 91:7, 91:11, 104:19
**adams** [1] - 93:12
**add** [3] - 16:1, 54:15, 85:8
**added** [3] - 14:18, 15:1, 55:16
**adding** [1] - 57:8
**additional** [10] - 50:18, 76:14, 84:25, 85:3, 85:5, 87:15, 94:24, 95:21, 97:15, 107:1
**address** [13] - 23:6, 30:13, 30:15, 31:6, 31:13, 32:5, 33:17, 37:9, 51:23, 68:10, 100:8, 102:5, 104:22
**addressed** [3] - 32:6, 39:10, 61:22

**addresses** [2] - 23:14, 98:15
**administrative** [19] - 10:24, 11:17, 11:20, 12:12, 12:21, 13:15, 13:23, 14:14, 15:11, 17:13, 17:19, 18:13, 37:21, 38:2, 70:5, 70:11, 89:9, 94:12, 94:19
**Administrative** [1] - 11:25
**admit** [1] - 102:21
**adopt** [2] - 36:8, 69:12
**advertisement** [3] - 21:5, 21:25, 98:8
**advertisements** [2] - 21:10, 31:5
**advertiser** [1] - 95:15
**advertising** [1] - 22:8
**advise** [1] - 15:23
**advising** [1] - 15:25
**affect** [1] - 34:21
**affidavit** [1] - 4:8
**afterwards** [3] - 65:12, 66:9, 79:11
**agency** [3] - 7:25, 12:9, 25:1
**aggrieved** [2] - 12:1, 12:6
**ago** [1] - 93:3
**agree** [5] - 9:4, 53:1, 72:2, 78:25, 101:6
**agreed** [2] - 39:12, 40:2
**agreement** [11] - 7:16, 7:19, 38:14, 38:15, 38:25, 39:9, 39:24, 40:2, 40:4, 40:6, 42:20
**ahead** [1] - 31:16
**aids** [1] - 96:22
**ALEXANDER** [4] - 1:4, 1:13, 1:25, 21:19
**Alexander** [4] - 2:10, 3:1, 13:5, 16:11
**allegation** [2] - 19:7, 50:13
**allegations** [26] - 15:14, 19:4, 19:5, 20:15, 27:23, 29:7, 44:16, 49:21, 50:4, 50:6, 50:9, 50:11, 50:14, 50:20, 51:7, 51:18, 51:19, 52:11, 52:17, 52:22, 55:3, 62:6, 64:10, 65:1, 67:5
**allege** [3] - 10:23, 12:20, 37:1
**alleged** [16] - 9:15, 12:3, 12:4, 12:8, 14:14, 14:22, 14:23, 14:24, 16:6, 16:16, 23:24, 24:4, 27:12, 27:24, 37:7, 89:16
**alleges** [3] - 15:8, 27:6, 96:13
**alleging** [1] - 11:3
**allow** [4] - 34:17, 34:24, 93:24, 93:25
**allowed** [1] - 33:18
**allows** [1] - 14:21

**almost** [4] - 34:2, 35:4, 49:8, 77:16
**alone** [1] - 19:17
**altogether** [1] - 77:17
**amend** [2] - 88:18, 89:2
**amount** [8] - 8:22, 9:11, 40:5, 43:3, 58:20, 67:13, 77:14, 93:18
**analysis** [1] - 51:17
**ancillary** [2] - 32:8, 47:13
**anguish** [1] - 9:14
**animal** [2] - 93:3, 105:22
**answer** [8] - 10:12, 21:8, 33:3, 34:11, 43:19, 53:9, 59:5, 95:6
**anyway** [6] - 37:25, 42:2, 56:7, 72:11, 73:21, 87:5
**apologize** [1] - 101:19
**apparatus** [1] - 50:1
**appeal** [8] - 17:13, 31:18, 33:7, 33:15, 41:25, 93:1, 94:14, 98:23
**appear** [3] - 67:10, 85:4, 87:9
**appearance** [1] - 78:11
**appearances** [2] - 2:8, 2:24
**applies** [6] - 17:19, 17:23, 18:10, 18:13, 18:19, 29:12
**apply** [1] - 49:21
**appreciate** [2] - 30:17, 45:15
**approach** [1] - 8:3
**appropriate** [6] - 5:16, 94:1, 102:11, 105:21, 106:9, 106:14
**approval** [7] - 66:19, 75:7, 75:9, 75:15, 75:22, 76:13, 77:4
**approve** [2] - 76:7, 77:5
**approved** [3] - 76:14, 105:17, 105:23
**area** [7] - 11:2, 24:12, 24:19, 25:14, 62:1, 62:2, 100:7
**areas** [2] - 31:13
**argument** [7] - 17:22, 31:14, 32:7, 32:12, 32:23, 33:21, 33:24
**Army** [1] - 93:12
**aside** [1] - 80:6
**assembling** [1] - 81:16
**assigning** [1] - 71:22
**assist** [7] - 77:2, 77:6, 77:7, 77:11, 99:20, 99:22, 102:25
**assistance** [2] - 23:14, 101:4
**assistants** [2] - 46:13, 86:9
**assisted** [1] - 48:11
**assisting** [6] - 46:12, 91:19, 99:6, 99:25, 101:5, 104:16
**associate** [7] - 69:8, 100:16, 100:18, 101:8, 101:12, 101:19, 106:1

**associated** [5] - 19:15, 21:1, 41:20, 43:3, 50:7
**associates** [1] - 47:14
**assume** [10] - 19:13, 39:13, 42:4, 44:25, 46:9, 59:8, 60:14, 60:17, 61:2, 91:8
**assumed** [1] - 46:7
**assuming** [3] - 24:20, 70:18, 93:25
**attached** [2] - 19:20, 89:5
**attachment** [1] - 63:23
**attendant** [4] - 96:15, 96:23, 97:1
**attention** [4] - 8:1, 17:15, 21:1, 36:20
**Attorney** [2] - 2:9, 2:25
**attorney's** [4] - 40:17, 40:19, 102:10, 104:12
**attorneys'** [5] - 5:4, 38:6, 39:12, 42:17, 82:17
**attorneys's** [1] - 105:4
**attributed** [1] - 53:22
**audio** [3] - 41:16, 95:12, 96:14
**August** [13] - 26:15, 26:19, 27:3, 27:11, 28:14, 28:16, 28:17, 28:18, 28:19, 28:20, 44:18, 98:23
**automobile** [1] - 95:20
**available** [7] - 4:3, 5:21, 7:3, 7:4, 25:16, 41:23, 98:8
**Avenue** [7] - 1:13, 1:21, 24:24, 25:1, 27:7, 27:13, 56:9
**award** [2] - 8:24, 95:18
**awarded** [2] - 93:2, 105:3
**awards** [1] - 38:11
**aware** [5] - 11:22, 12:23, 12:24, 29:14, 105:9

## B

**BAAN** [2] - 1:20, 108:8
**BAAN-PROULX** [2] - 1:20, 108:8
**back-feed** [1] - 32:3
**background** [1] - 66:14
**backwards** [1] - 51:14
**bar** [1] - 92:25
**based** [22] - 10:16, 11:10, 13:24, 14:6, 14:12, 14:20, 15:6, 15:13, 33:4, 36:10, 38:2, 50:23, 54:25, 63:1, 63:10, 64:8, 76:11, 90:16, 91:14, 94:17
**bases** [1] - 92:23
**basing** [1] - 68:15
**basis** [10] - 4:18, 15:14, 15:16, 25:5, 25:7, 25:8, 36:25, 53:2, 68:21, 94:16

**Beach** [2] - 24:13, 36:20
**bear** [3] - 20:2, 79:15, 97:13
**becoming** [1] - 104:20
**BEFORE** [1] - 1:9
**beg** [1] - 90:23
**begged** [1] - 19:13
**begs** [2] - 91:10, 103:17
**behalf** [5] - 5:11, 13:9, 39:6, 40:3, 51:6
**behind** [1] - 100:4
**belief** [4] - 44:17, 64:11
**benefit** [2] - 5:23, 34:24
**best** [10] - 5:15, 8:2, 44:17, 58:3, 64:11, 65:2, 65:25, 66:3, 99:8, 103:21
**better** [4] - 51:14, 52:3, 52:6, 98:13
**between** [7] - 54:23, 55:10, 55:13, 57:2, 57:11, 89:6, 95:25
**beyond** [2] - 78:23, 86:15
**big** [1] - 35:15
**biggest** [1] - 19:24
**bill** [12] - 48:2, 48:3, 53:19, 68:21, 86:9, 86:11, 86:13, 88:3, 88:5, 103:7, 105:2, 107:4
**billed** [5] - 48:14, 49:4, 49:8, 88:2, 89:19
**biller** [2] - 71:25, 72:1
**billing** [22] - 10:4, 43:4, 47:10, 47:11, 48:19, 48:25, 65:4, 65:20, 66:13, 77:12, 83:7, 89:8, 94:25, 99:17, 99:24, 100:24, 101:23, 103:15, 104:21, 105:3, 105:11
**billings** [5] - 89:5, 101:2, 101:3, 102:6
**bills** [2] - 93:20, 104:2
**bit** [2] - 38:7, 95:24
**blank** [3] - 8:17, 51:24, 51:25
**Bloom** [3] - 13:6, 16:12, 55:11
**Bloom's** [1] - 97:16
**Blvd** [1] - 1:17
**boilerplate** [15] - 20:14, 49:20, 50:1, 51:7, 51:17, 52:1, 52:4, 52:7, 52:16, 55:1, 55:24, 56:2, 57:10, 62:15, 67:10
**border** [1] - 36:21
**Boulevard** [2] - 23:18
**brain** [1] - 100:1
**breach** [1] - 39:22
**break** [1] - 71:6
**bring** [12] - 5:10, 6:22, 17:15, 20:2, 35:2, 42:6, 42:14, 42:15, 42:18, 81:20, 89:25, 100:6

**bringing** [1] - 60:9
**brings** [1] - 81:7
**brought** [10] - 5:13, 7:25, 8:21, 9:7, 23:13, 31:7, 32:10, 42:8, 81:19, 92:25
**Broward** [8] - 7:5, 10:18, 23:15, 23:17, 25:25, 41:15, 49:17, 49:18
**buildings** [2] - 35:10, 35:11
**built** [1] - 5:13
**bunch** [1] - 57:7
**business** [12] - 2:7, 2:23, 30:1, 30:3, 30:5, 31:20, 31:22, 32:8, 34:5, 35:19, 50:10, 62:6
**button** [1] - 35:16
**buy** [3] - 95:15, 95:16, 95:17
**BY** [1] - 1:20

# C

**calendar** [2] - 27:20, 28:8
**California** [3] - 8:24, 8:25, 9:6
**cannot** [1] - 99:20
**capability** [2] - 7:9, 8:7
**caption** [6] - 6:4, 6:10, 7:3, 33:1, 33:2, 96:14
**captioned** [1] - 32:9
**captioning** [2] - 7:9, 98:1
**captions** [8] - 5:16, 5:18, 6:14, 6:16, 7:19, 34:7, 34:17, 98:5
**capture** [1] - 58:22
**car** [6] - 6:6, 21:1, 21:2, 26:23, 26:24, 41:18
**Caraf** [9] - 56:9, 56:10, 56:20, 66:12, 66:13, 66:24, 69:18, 81:22, 82:18
**card** [1] - 98:2
**care** [1] - 39:10
**careful** [1] - 81:21
**CASE** [1] - 1:2
**case** [163] - 2:19, 2:24, 3:10, 3:16, 3:22, 4:20, 4:21, 4:22, 8:17, 8:20, 9:22, 10:16, 12:17, 12:19, 12:23, 12:24, 13:4, 13:7, 14:19, 15:3, 15:22, 16:20, 18:11, 19:24, 20:11, 22:16, 24:21, 25:20, 26:13, 26:14, 27:9, 29:13, 29:14, 29:17, 29:22, 30:6, 30:9, 30:20, 33:13, 33:15, 35:20, 36:10, 36:23, 37:3, 37:4, 37:12, 37:14, 37:15, 38:8, 38:10, 40:3, 40:18, 41:8, 41:13, 41:21, 42:3, 42:7, 42:9, 42:13, 42:14, 42:16, 42:24, 43:6, 43:9, 43:10, 43:14, 43:15,

43:24, 44:10, 45:20, 46:15, 46:22, 48:25, 49:1, 49:2, 49:9, 49:11, 49:15, 49:16, 49:25, 50:15, 51:19, 52:17, 55:9, 55:10, 55:11, 55:13, 56:2, 56:7, 56:8, 56:11, 56:19, 56:23, 56:24, 57:9, 57:11, 58:1, 59:23, 59:24, 59:25, 60:3, 60:8, 66:12, 66:13, 66:23, 66:24, 67:4, 68:3, 69:18, 70:24, 71:1, 74:23, 81:2, 81:6, 81:22, 82:2, 82:18, 83:23, 83:24, 85:7, 86:1, 86:16, 86:17, 87:10, 87:21, 87:23, 87:25, 88:4, 88:13, 88:14, 89:3, 89:7, 89:19, 91:3, 91:22, 93:1, 93:3, 93:19, 93:25, 94:5, 94:22, 95:18, 97:16, 97:17, 97:20, 105:15, 105:20, 105:21, 105:22, 107:14
**Case** [1] - 56:8
**cases** [46] - 5:11, 11:3, 13:2, 13:8, 13:16, 13:17, 14:11, 14:13, 14:17, 15:2, 15:5, 15:25, 16:3, 16:14, 16:19, 16:20, 17:24, 19:24, 20:12, 27:15, 30:11, 30:19, 34:15, 36:11, 38:13, 43:13, 43:17, 49:22, 49:25, 50:22, 54:20, 56:25, 60:9, 68:13, 91:23, 93:7, 94:25, 100:6, 106:20, 107:13
**catchall** [3] - 63:2, 63:7, 84:21
**caused** [1] - 93:18
**caution** [1] - 85:10
**certain** [2] - 3:12, 78:10
**certainly** [6] - 18:15, 28:1, 37:6, 85:16, 86:6, 89:7
**certify** [1] - 108:3
**cetera** [2] - 12:9
**chain** [2] - 22:1, 22:7
**challenge** [2] - 16:9, 19:3
**challenged** [9] - 13:10, 15:18, 16:4, 17:2, 17:5, 17:8, 57:20, 57:24
**challenges** [2] - 14:5, 85:19
**challenging** [8] - 13:17, 13:20, 14:9, 15:17, 15:19, 17:12, 53:10, 105:8
**chance** [4] - 33:7, 44:5, 85:6, 87:6
**change** [3] - 35:19, 60:1, 102:22
**changed** [3] - 55:16, 61:11, 62:4
**changes** [7] - 57:10, 61:16, 61:18, 66:16, 66:17, 106:9

**Chapter** [1] - 5:3
**charge** [10] - 54:19, 68:4, 68:11, 68:12, 68:16, 69:4, 69:7, 72:11, 74:4, 101:13
**charged** [15] - 42:6, 55:6, 56:23, 57:1, 59:1, 73:14, 75:1, 76:14, 77:22, 82:16, 83:7, 83:24, 86:18, 101:14, 105:12
**charges** [1] - 98:19
**charging** [9] - 67:13, 68:3, 69:6, 70:14, 72:7, 73:5, 77:12, 92:21, 103:18
**checked** [1] - 49:24
**checking** [2] - 48:18, 62:3
**Chevron** [3] - 2:23, 3:18, 45:14
**choice** [2] - 26:4, 95:2
**choose** [3] - 71:16, 101:11
**chronologically** [3] - 64:13, 64:17, 65:18
**chronology** [2] - 66:6, 89:15
**Circuit** [2] - 29:23, 33:19
**circumstances** [1] - 20:7
**cite** [2] - 16:19, 30:5
**cited** [4] - 13:1, 13:8, 16:20
**cites** [1] - 16:14
**citing** [1] - 12:19
**citizen** [1] - 68:13
**Civil** [10] - 5:2, 9:6, 9:7, 10:15, 11:3, 11:25, 13:24, 16:12, 80:12, 94:10
**civil** [1] - 100:6
**CKC** [8] - 2:23, 3:18, 4:21, 38:8, 42:7, 42:13, 42:16, 43:9
**claim** [13] - 5:2, 5:3, 7:8, 8:18, 10:16, 12:21, 14:21, 15:14, 18:4, 73:23, 74:2, 95:12
**claiming** [2] - 9:10, 9:12
**claims** [6] - 14:22, 16:16, 16:17, 68:14, 94:16, 104:11
**clause** [1] - 17:19
**clean** [1] - 45:5
**clear** [4] - 73:17, 89:4, 94:13, 103:9
**clearer** [1] - 103:12
**clerk** [5] - 23:14, 67:21, 79:23, 80:13, 98:20
**clerk's** [8] - 75:6, 75:24, 78:20, 79:6, 80:4, 80:25, 81:4, 82:1
**clerking** [1] - 67:22
**clerks** [1] - 47:20
**client** [26] - 5:8, 20:3, 30:19, 32:14, 37:8, 39:6, 39:19, 39:21, 40:25, 46:3, 56:21, 57:12, 59:1, 59:8, 59:16,

60:14, 60:20, 62:16, 64:5, 64:6, 64:9, 66:15, 68:3, 68:19, 68:20, 94:7
**client's** [9] - 36:10, 61:1, 62:24, 63:1, 63:4, 63:8, 63:10, 66:16, 66:19
**clients** [7] - 15:24, 15:25, 68:16, 68:23, 102:24, 103:25, 104:17
**close** [12] - 24:21, 24:23, 32:2, 36:17, 36:18, 41:9, 49:3, 69:16, 78:16, 78:23, 83:11, 99:6
**closed** [11] - 6:3, 6:10, 7:3, 7:9, 12:22, 16:17, 33:2, 34:17, 96:14, 98:1, 98:5
**closer** [1] - 26:2
**cold** [1] - 41:20
**Cole** [2] - 1:16, 3:4
**column** [4] - 46:5, 46:7, 46:10, 46:24
**combination** [1] - 43:14
**combined** [4] - 43:14, 71:3, 83:15, 84:7
**coming** [5] - 14:5, 33:9, 41:1, 102:19, 106:20
**commendable** [1] - 85:9
**comments** [2] - 62:16
**commercial** [1] - 22:5
**commercials** [3] - 21:11, 35:14, 35:15
**Commission** [4] - 12:2, 12:3, 12:7, 37:10
**communication** [2] - 96:18, 96:20
**community** [1] - 95:14
**companies** [1] - 104:14
**company** [1] - 6:20
**compare** [1] - 105:12
**compared** [2] - 41:17, 56:6
**comparing** [1] - 83:10
**compensate** [1] - 9:18
**competent** [4] - 71:24, 71:25, 98:19, 101:7
**complaining** [1] - 35:5
**complaint** [67] - 9:15, 12:2, 12:7, 12:20, 19:6, 23:24, 24:8, 28:12, 37:10, 39:11, 44:5, 44:6, 44:10, 44:11, 44:17, 44:25, 45:1, 48:20, 48:22, 49:13, 49:15, 50:18, 51:4, 51:5, 51:6, 52:14, 53:9, 53:20, 53:22, 54:4, 54:10, 54:17, 54:20, 54:24, 55:1, 55:20, 55:25, 56:1, 56:21, 57:1, 57:11, 58:24, 58:25, 59:1, 60:15, 61:2, 61:5, 61:7, 61:8, 61:11, 62:15, 63:1, 63:11, 63:16, 64:2, 64:14, 64:25, 66:16,

66:19, 66:22, 66:23, 80:9,
89:20, 89:21, 96:12
**complaints** [21] - 10:17,
10:23, 14:25, 16:16, 20:13,
28:13, 29:7, 35:2, 49:14,
49:16, 50:19, 50:21, 50:25,
51:6, 52:15, 54:12, 54:22,
55:7, 58:10, 67:11
**completed** [1] - 38:19
**COMPLETED** [1] - 108:8
**completely** [1] - 51:2
**complex** [1] - 101:13
**compliance** [1] - 18:25
**compliant** [1] - 66:17
**comply** [4] - 18:15, 30:24,
94:19, 99:9
**composite** [2] - 35:3, 98:15
**Composite** [5] - 97:23,
98:12, 98:18, 98:20, 98:21
**computer** [15] - 28:9, 51:25,
52:8, 52:10, 52:11, 56:5,
56:6, 65:23, 65:24, 71:8,
71:11, 72:13, 74:10, 80:19,
80:24
**concentrate** [1] - 104:19
**concentrates** [1] - 100:1
**concern** [5] - 31:7, 34:22,
35:24, 104:1, 104:2
**concerned** [4] - 18:23, 31:3,
35:11, 35:12
**concerning** [1] - 92:17
**concerns** [3] - 31:14, 33:16,
48:24
**conclude** [2] - 91:18, 91:20
**concluded** [1] - 107:18
**conclusion** [1] - 30:9
**concrete** [3] - 32:24, 33:3,
36:15
**confer** [1] - 37:7
**conference** [3] - 3:15, 46:3,
66:16
**confident** [1] - 57:15
**confidential** [6] - 39:9, 42:9,
42:12, 42:20, 42:22, 42:23
**confidentiality** [7] - 38:15,
38:25, 39:2, 39:16, 39:22,
40:2, 40:6
**confused** [1] - 88:17
**connection** [1] - 19:9
**consequence** [1] - 19:10
**consider** [5] - 23:20, 47:21,
52:16, 85:23, 94:22
**considered** [1] - 21:10
**considering** [1] - 30:8
**consists** [1] - 91:9
**constantly** [1] - 99:20
**constituted** [4] - 31:20,
31:21, 31:22, 32:8
**construct** [1] - 55:25
**Construction** [1] - 11:25

**consult** [1] - 39:19
**consulted** [1] - 39:21
**consulting** [1] - 104:18
**contact** [1] - 2:20
**contacted** [1] - 87:12
**contain** [1] - 10:19
**contemporaneous** [1] -
66:11
**contemporaneously** [7] -
64:19, 64:23, 65:8, 65:10,
65:21, 84:19, 99:7
**content** [1] - 21:22
**contention** [1] - 18:14
**contents** [2] - 11:4, 64:10
**continually** [1] - 94:9
**continue** [2] - 14:10, 17:7
**convenience** [5] - 19:9,
19:15, 19:20, 41:19, 50:7
**conversation** [2] - 87:10,
97:1
**Cooke** [1] - 12:18
**cookie** [1] - 93:16
**copies** [4] - 44:5, 90:4, 94:4,
97:18
**copy** [16] - 38:18, 38:19,
44:1, 44:4, 44:6, 45:4,
45:5, 45:8, 45:24, 74:15,
78:3, 79:15, 84:25
**corner** [2] - 25:1, 31:2
**correct** [56] - 2:15, 2:19, 6:5,
7:10, 10:6, 10:19, 10:22,
10:24, 10:25, 11:12, 12:14,
12:15, 14:15, 15:11, 15:12,
16:24, 17:9, 18:1, 18:2,
18:8, 18:21, 21:3, 21:6,
21:25, 22:3, 23:21, 23:23,
24:3, 24:5, 26:16, 44:17,
44:19, 44:22, 44:23, 51:22,
53:2, 53:13, 53:14, 53:15,
53:16, 57:19, 61:7, 64:11,
65:1, 69:2, 71:2, 71:14,
72:19, 73:1, 73:2, 74:20,
81:9, 84:14, 84:19, 89:2,
100:15
**corrective** [1] - 5:5
**correctly** [1] - 75:17
**cost** [6] - 5:21, 7:13, 58:22,
90:5, 90:21, 93:24
**costs** [5] - 5:4, 9:21, 39:12,
58:22, 89:23, 90:9, 93:24,
94:2
**counsel** [8] - 6:13, 15:23,
42:20, 57:21, 74:15, 84:8,
96:6, 106:14
**counsels** [1] - 6:19
**Count** [24] - 10:19, 11:3,
11:8, 13:10, 14:6, 14:12,
14:22, 14:24, 15:8, 15:23,
16:6, 16:17, 16:24, 17:7,
18:4, 36:24, 36:25, 38:1,

40:22, 94:17, 95:12, 104:3,
104:4
**count** [5] - 7:5, 14:1, 14:17,
36:24, 93:11
**counties** [1] - 25:12
**Counts** [1] - 94:9
**counts** [1] - 10:17
**County** [17] - 7:5, 10:18,
12:17, 23:16, 23:17, 23:21,
25:6, 25:25, 27:18, 36:20,
41:15, 49:17, 49:18
**county** [1] - 10:18
**couple** [6] - 15:22, 49:23,
49:24, 71:1, 96:7, 96:10
**course** [6] - 5:15, 33:22,
86:17, 89:18, 95:22, 98:24
**COURT** [419] - 1:1, 1:10, 2:3,
2:6, 2:11, 2:13, 2:18, 2:22,
3:5, 3:7, 3:21, 4:1, 4:6,
4:10, 4:18, 4:25, 5:19, 6:1,
6:15, 7:2, 7:8, 7:11, 7:17,
7:21, 8:2, 8:7, 8:9, 8:14,
8:16, 8:23, 8:25, 9:6, 9:10,
9:13, 9:17, 9:20, 10:6,
10:9, 10:12, 10:15, 10:21,
11:1, 11:7, 11:10, 11:13,
11:24, 12:16, 13:1, 13:4,
13:22, 14:2, 14:10, 14:19,
15:3, 15:5, 15:8, 15:10,
15:13, 15:19, 16:4, 16:10,
17:1, 17:4, 17:7, 17:11,
17:22, 18:3, 18:8, 18:15,
18:22, 18:25, 19:5, 19:13,
19:21, 20:6, 20:9, 20:11,
20:19, 21:9, 21:14, 21:22,
22:3, 22:14, 22:22, 22:24,
23:1, 23:4, 23:6, 23:9,
23:11, 23:24, 24:7, 24:16,
24:20, 25:4, 25:10, 25:19,
26:6, 26:13, 26:19, 26:24,
27:2, 27:11, 27:23, 28:3,
28:11, 29:15, 30:14, 30:16,
30:22, 31:16, 31:21, 31:23,
32:2, 32:11, 32:20, 32:23,
33:20, 34:11, 34:14, 35:7,
35:11, 35:20, 35:24, 36:1,
36:5, 36:7, 37:12, 37:14,
37:16, 37:18, 37:20, 37:25,
38:17, 38:24, 39:13, 39:20,
40:1, 40:9, 40:15, 40:21,
41:3, 41:6, 41:8, 42:2,
42:11, 42:22, 43:1, 43:7,
43:19, 43:21, 44:4, 44:9,
44:15, 44:21, 44:24, 45:3,
45:8, 45:19, 45:24, 46:2,
46:7, 46:15, 46:19, 46:24,
47:2, 47:4, 47:9, 47:14,
47:16, 47:21, 47:25, 48:2,
48:6, 48:8, 48:13, 48:16,
48:20, 48:22, 51:4, 51:10,

52:3, 52:6, 52:8, 52:10,
52:13, 52:22, 53:1, 53:5,
53:8, 53:11, 53:14, 53:17,
53:19, 53:25, 54:2, 54:4,
54:7, 54:10, 54:14, 54:19,
54:24, 55:10, 56:3, 56:13,
56:17, 57:5, 57:9, 58:4,
58:8, 58:10, 58:23, 59:5,
59:7, 59:12, 59:19, 59:23,
60:1, 60:5, 60:13, 60:21,
60:23, 61:1, 61:6, 61:11,
61:15, 61:20, 62:5, 62:11,
62:13, 62:19, 62:23, 63:4,
63:8, 63:14, 63:18, 63:22,
64:1, 64:24, 65:13, 65:16,
65:23, 66:1, 66:5, 66:12,
66:25, 67:3, 67:9, 67:16,
67:20, 67:25, 68:16, 68:19,
68:25, 69:4, 70:4, 70:10,
70:14, 70:17, 70:22, 71:3,
71:7, 71:13, 71:16, 71:20,
72:5, 72:7, 72:10, 72:21,
73:4, 73:8, 73:10, 73:14,
73:17, 74:1, 74:4, 74:6,
74:8, 74:11, 74:14, 74:18,
74:22, 74:25, 75:4, 75:11,
75:13, 75:18, 75:21, 76:4,
76:6, 76:10, 76:23, 76:25,
77:3, 77:9, 77:12, 77:18,
77:21, 77:24, 78:3, 78:7,
78:9, 78:15, 78:18, 78:22,
79:7, 79:12, 79:15, 80:1,
80:3, 80:6, 80:16, 80:22,
80:24, 81:22, 82:1, 82:4,
82:8, 82:10, 82:12, 82:16,
82:20, 82:22, 82:25, 83:3,
83:10, 83:16, 83:19, 84:2,
84:5, 84:10, 84:16, 84:22,
85:2, 85:14, 85:21, 86:6,
86:11, 86:14, 86:22, 87:5,
87:9, 87:14, 87:18, 87:23,
88:1, 88:5, 88:9, 88:12,
88:16, 88:24, 89:4, 90:3,
90:8, 90:13, 90:16, 90:19,
90:23, 91:3, 91:7, 91:14,
91:17, 91:20, 92:7, 92:10,
92:12, 92:16, 92:19, 92:21,
93:6, 93:11, 93:23, 94:4,
95:6, 95:10, 96:20, 96:23,
96:25, 97:3, 97:5, 97:9,
97:13, 97:22, 97:25, 98:7,
98:12, 99:2, 100:10,
100:13, 100:16, 100:18,
100:20, 100:23, 101:1,
101:6, 101:10, 101:17,
103:5, 103:8, 103:14,
103:21, 104:7, 104:24,
105:5, 105:8, 105:10,
105:15, 105:18, 105:25,
106:3, 106:6, 106:10,
106:17, 106:22, 106:24,

107:1, 107:4, 107:8,
107:15
**Court** [27] - 1:21, 13:9, 16:7,
17:12, 18:18, 23:8, 28:3,
28:5, 29:16, 30:13, 30:15,
31:6, 33:8, 33:17, 37:9,
38:18, 49:10, 58:21, 61:23,
71:10, 75:19, 87:1, 94:11,
99:10, 102:1, 102:8
**court** [6] - 2:2, 4:16, 9:2,
17:2, 21:20, 102:20
**Court's** [6] - 2:21, 17:15,
44:7, 45:6, 83:21, 99:9
**COURTROOM** [1] - 106:23
**courtroom** [2] - 2:10, 3:1
**Courts** [2] - 16:23, 29:25
**covered** [2] - 93:23, 96:10
**create** [3] - 56:1, 58:14,
81:17
**creates** [1] - 34:9
**creating** [1] - 81:14
**credibility** [6] - 86:24, 89:12,
93:20, 103:11, 103:14,
104:4
**credit** [1] - 98:3
**critical** [1] - 92:14
**crux** [3] - 31:18, 32:6, 35:20
**curious** [3] - 19:21, 19:22,
30:11
**current** [6] - 6:3, 6:22, 13:14,
15:13, 16:8, 102:6
**custom** [2] - 56:1, 58:2
**customer** [1] - 95:15
**customers** [1] - 100:9
**cut** [1] - 51:25
**cutter** [1] - 93:16
**cutting** [1] - 84:9

**D**

**d/b/a** [3] - 50:15, 50:16, 56:9
**Dade** [12] - 7:5, 12:17, 23:16,
23:17, 23:21, 25:6, 25:25,
27:18, 41:15, 49:17, 49:18
**Dadeland** [1] - 1:17
**damage** [1] - 95:18
**damages** [18] - 3:16, 3:25,
5:2, 8:18, 9:10, 11:18,
25:20, 25:21, 29:5, 29:19,
32:24, 33:17, 42:17, 95:11,
95:22, 96:4
**data** [1] - 54:17
**DATE** [1] - 108:8
**date** [19] - 3:12, 3:13, 11:6,
27:11, 43:1, 50:16, 64:22,
65:11, 78:10, 80:10, 80:11,
81:1, 81:2, 82:5, 84:25,
90:19, 90:20, 91:4, 94:23
**dated** [2] - 44:18, 44:20
**dates** [7] - 64:9, 65:17, 66:2,

80:17, 82:13, 83:6
**days** [11] - 12:3, 12:8, 28:16,
28:19, 28:20, 66:15, 80:11,
81:3, 95:25, 96:7
**de** [3] - 41:17, 41:22, 95:12
**deal** [1] - 60:12
**dealing** [1] - 80:4
**debating** [1] - 15:24
**decade** [1] - 68:1
**deceive** [1] - 101:25
**decide** [1] - 86:23
**decided** [6] - 3:8, 5:10, 5:15,
12:18, 15:25, 34:20
**decision** [10] - 29:11, 29:23,
31:9, 31:17, 31:18, 31:19,
32:1, 32:4, 33:10, 34:21
**declared** [1] - 44:16
**dedicated** [1] - 106:5
**default** [38] - 49:1, 49:4,
49:9, 49:11, 49:12, 56:15,
75:24, 76:20, 78:12, 78:21,
79:1, 79:6, 79:9, 79:20,
79:23, 80:4, 80:13, 80:25,
81:4, 81:24, 82:1, 82:23,
83:20, 83:23, 84:24, 85:2,
86:1, 87:19, 88:21, 88:22,
89:6, 93:16, 95:2, 99:7,
102:7, 102:9, 102:16
**defaults** [3] - 102:13, 105:14,
105:16
**defendant** [23] - 1:6, 2:19,
3:4, 13:11, 14:5, 19:8,
50:14, 50:15, 57:12, 68:4,
78:10, 79:20, 80:10, 82:4,
82:12, 83:5, 85:4, 85:6,
87:6, 87:11, 87:12, 87:15,
88:13
**DEFENDANT** [34] - 1:16,
21:7, 21:12, 21:17, 22:1,
22:6, 22:21, 22:23, 23:2,
23:5, 23:8, 23:10, 23:23,
24:5, 24:9, 24:18, 24:25,
25:7, 25:18, 26:3, 26:9,
26:17, 26:23, 27:1, 27:8,
27:20, 28:1, 28:6, 37:9,
37:13, 37:15, 37:17, 37:19,
37:24
**defendant's** [4] - 30:1, 30:3,
30:5, 72:13
**defendants** [4] - 5:10, 32:13,
40:3, 86:18
**defended** [1] - 13:14
**defense** [5] - 6:12, 6:19,
49:9, 57:20, 65:19
**defensive** [1] - 57:25
**defined** [1] - 19:11
**definitely** [1] - 76:17
**definition** [1] - 19:18
**definitiveness** [1] - 30:3
**delegate** [2] - 98:19, 99:16

**demands** [1] - 58:2
**deploy** [1] - 20:2
**depositions** [1] - 105:24
**deprive** [2] - 5:22, 40:25
**deprived** [2] - 29:5, 36:2
**DEPUTY** [1] - 106:23
**describe** [2] - 66:2, 95:8
**described** [2] - 12:5, 54:5
**description** [5] - 9:13, 43:2,
49:3, 55:5, 84:12
**designation** [2] - 47:20,
50:10
**desk** [1] - 93:16
**Destination** [1] - 6:21
**destinations** [5] - 24:3, 24:7,
25:10, 25:13, 26:2
**details** [2] - 3:11, 59:9
**determination** [2] - 29:19,
30:1
**determined** [1] - 49:15
**develops** [1] - 40:17
**devoted** [1] - 50:5
**difference** [1] - 55:13
**differences** [1] - 55:2
**different** [34] - 27:18, 28:4,
28:15, 31:13, 32:23, 36:1,
41:13, 43:15, 45:20, 46:20,
50:19, 50:24, 51:3, 51:5,
51:7, 52:13, 52:14, 52:16,
52:24, 55:9, 55:10, 57:21,
59:22, 67:18, 70:6, 70:17,
81:2, 86:17, 90:11, 97:16,
99:8, 106:7
**differentiate** [1] - 50:22
**differently** [1] - 85:24
**difficult** [3] - 9:2, 29:2, 72:15
**dignity** [1] - 9:14
**Dimitrouleas** [3] - 93:2,
105:4, 105:22
**DININ** [361] - 1:12, 2:5, 2:9,
2:12, 2:16, 2:20, 2:25,
3:23, 4:3, 4:8, 4:12, 4:15,
4:24, 5:7, 5:25, 6:12, 6:17,
7:7, 7:10, 7:14, 7:18, 7:23,
8:6, 8:8, 8:12, 8:15, 8:20,
8:24, 9:5, 9:9, 9:12, 9:16,
9:19, 10:3, 10:8, 10:10,
10:14, 10:20, 10:25, 11:6,
11:9, 11:12, 11:23, 12:15,
12:24, 13:3, 13:13, 14:1,
14:8, 14:16, 14:23, 15:4,
15:7, 15:9, 15:12, 15:15,
15:21, 16:8, 16:25, 17:3,
17:6, 17:10, 17:17, 18:2,
18:7, 18:9, 18:21, 18:24,
19:2, 19:12, 19:19, 19:23,
20:8, 20:10, 20:18, 29:14,
30:13, 30:15, 30:17, 31:6,
31:17, 31:22, 31:25, 32:4,
32:19, 32:22, 33:8, 33:23,

34:13, 34:18, 35:8, 35:17,
35:23, 35:25, 36:4, 36:6,
38:22, 39:8, 39:19, 39:21,
40:7, 40:23, 41:5, 41:7,
42:1, 42:8, 42:19, 42:25,
43:5, 43:13, 43:20, 44:3,
46:1, 46:6, 46:12, 46:17,
46:20, 47:1, 47:3, 47:8,
47:10, 47:15, 47:18, 47:23,
48:1, 48:3, 48:7, 48:11,
48:15, 48:17, 48:21, 51:2,
51:8, 51:21, 52:5, 52:7,
52:9, 52:12, 52:20, 52:24,
53:3, 53:7, 53:10, 53:13,
53:16, 53:18, 53:24, 54:1,
54:3, 54:6, 54:9, 54:13,
54:17, 54:22, 55:8, 55:15,
56:12, 56:16, 57:3, 57:6,
57:15, 58:6, 58:9, 58:18,
59:4, 59:6, 59:11, 59:17,
59:20, 59:25, 60:4, 60:7,
60:19, 60:22, 60:25, 61:4,
61:8, 61:13, 61:19, 61:22,
62:9, 62:12, 62:18, 62:20,
63:2, 63:7, 63:11, 63:17,
63:21, 63:25, 64:19, 65:7,
65:15, 65:19, 65:25, 66:3,
66:7, 66:24, 67:1, 67:6,
67:15, 67:17, 67:24, 68:10,
68:18, 68:24, 69:2, 69:23,
70:6, 70:13, 70:16, 70:21,
70:23, 71:5, 71:12, 71:15,
71:17, 72:3, 72:6, 72:9,
72:20, 73:2, 73:7, 73:9,
73:13, 73:16, 74:3, 74:5,
74:7, 74:10, 74:12, 74:21,
74:24, 75:3, 75:10, 75:12,
75:16, 75:20, 75:23, 76:5,
76:9, 76:16, 76:24, 77:2,
77:6, 77:11, 77:16, 77:20,
77:23, 78:2, 78:6, 78:8,
78:14, 78:17, 78:19, 78:25,
79:10, 79:25, 80:2, 80:5,
80:15, 80:20, 80:23, 81:6,
81:25, 82:3, 82:7, 82:9,
82:11, 82:14, 82:19, 82:21,
82:24, 83:1, 83:8, 83:13,
84:1, 84:4, 84:7, 84:14,
84:18, 85:1, 85:13, 85:18,
86:5, 86:9, 86:13, 86:20,
86:25, 87:8, 87:12, 87:16,
87:21, 87:24, 88:3, 88:7,
88:11, 88:14, 88:20, 89:1,
90:2, 90:7, 90:11, 90:15,
90:18, 90:22, 90:25, 91:6,
91:12, 91:16, 91:19, 91:22,
92:9, 92:11, 92:15, 92:18,
92:20, 92:23, 93:10, 93:22,
94:3, 95:5, 95:9, 96:19,
96:21, 96:24, 97:2, 97:21,
98:4, 98:9, 99:1, 99:3,

100:12, 100:15, 100:17, 100:19, 100:22, 100:25, 101:4, 101:9, 101:16, 101:18, 103:7, 103:13, 103:20, 104:6, 104:10, 105:2, 105:7, 105:9, 105:14, 105:16, 105:20, 106:2, 106:5, 106:8, 106:13, 106:19, 106:25, 107:3, 107:16

**Dinin** [12] - 1:13, 2:9, 2:11, 2:12, 2:25, 38:1, 38:12, 46:4, 46:10, 53:22, 92:1, 92:24

**directed** [1] - 50:13

**disability** [3] - 11:11, 13:25, 14:21

**disclose** [2] - 39:3, 39:24

**disclosed** [1] - 39:2

**disclosing** [4] - 38:17, 39:7, 39:18, 40:4

**discriminate** [1] - 11:10

**Discrimination** [1] - 11:15

**discrimination** [2] - 11:17, 13:24

**discuss** [4] - 38:1, 38:7, 39:25, 40:7

**Discuss** [1] - 64:6

**discussed** [7] - 17:17, 39:23, 60:14, 60:16, 67:11, 94:7

**discussing** [4] - 39:14, 39:23, 66:10, 95:23

**discussion** [4] - 59:8, 59:15, 60:2, 60:6

**discussions** [3] - 60:7, 60:8, 65:5

**disenfranchise** [1] - 7:24

**dismiss** [7] - 14:3, 16:10, 16:13, 36:24, 36:25, 38:1, 42:3

**dismissal** [2] - 14:5, 17:9

**dismissed** [11] - 12:22, 13:9, 13:10, 14:3, 14:4, 16:7, 16:18, 29:13, 29:17, 94:11, 94:18

**dismissing** [2] - 16:24, 94:11

**disorganization** [1] - 95:7

**display** [1] - 2:13

**District** [1] - 12:11

**DISTRICT** [3] - 1:1, 1:1, 1:10

**district** [1] - 12:18

**Dixie** [2] - 93:4, 105:21

**Dixie/Gil** [1] - 93:1

**Docket** [8] - 44:9, 63:18, 72:24, 74:14, 74:18, 79:13, 83:17, 86:16

**docket** [4] - 44:10, 72:23, 74:1, 88:25, 105:12

**doctors** [1] - 24:13

**document** [23] - 26:18, 39:4,

43:10, 45:18, 72:22, 73:5, 73:18, 76:11, 78:23, 79:12, 80:23, 81:17, 81:20, 82:11, 84:3, 84:5, 84:21, 84:23, 85:15, 90:17, 91:14, 105:12

**documents** [20] - 3:12, 42:14, 42:15, 42:17, 43:23, 56:18, 65:10, 72:23, 77:6, 77:7, 80:20, 81:16, 81:17, 90:12, 94:24, 94:25, 97:15, 99:11, 100:2, 107:6

**dollars** [2] - 8:19, 68:22

**done** [30] - 3:17, 6:14, 8:3, 13:16, 14:3, 14:8, 28:8, 34:10, 37:3, 46:15, 48:9, 64:9, 68:1, 69:17, 69:18, 71:10, 72:17, 80:21, 81:11, 88:2, 91:25, 92:6, 93:8, 101:7, 102:12, 102:19, 105:11, 105:16, 107:12

**double** [2] - 17:23, 62:3

**double-checking** [1] - 62:3

**down** [13] - 4:4, 23:14, 24:16, 34:12, 34:15, 36:18, 38:3, 55:18, 57:22, 62:1, 94:6, 99:9, 106:11

**downtown** [6] - 23:2, 23:3, 23:4, 23:9, 23:20, 24:22

**dozen** [1] - 35:4

**Draft** [2] - 75:21, 84:12

**draft** [9] - 53:21, 54:4, 56:20, 62:15, 72:17, 75:7, 79:21, 79:23, 84:16

**drafted** [3] - 58:25, 61:16, 64:2

**drafting** [3] - 57:1, 66:14, 76:12

**drink** [1] - 41:20

**drive** [3] - 26:10, 28:2, 89:21

**driven** [1] - 6:25

**drives** [1] - 32:15

**drove** [1] - 28:4

**duly** [2] - 4:16, 21:20

**during** [3] - 17:1, 47:16, 47:25

**dyslexia** [4] - 58:13, 79:3, 100:1, 103:16

**dyslexic** [5] - 55:17, 57:17, 58:1, 66:4, 99:10

## E

**e-File** [6] - 75:7, 75:21, 76:7, 79:21, 79:23, 84:12

**e-Filing** [1] - 76:13

**e-mail** [1] - 66:17

**e-mails** [2] - 64:21, 65:9

**easier** [3] - 56:5, 106:3, 106:4

**easily** [2] - 35:18, 107:12

**east** [3] - 23:2, 23:3, 23:4

**East** [3] - 50:16, 51:20, 54:15

**easy** [2] - 56:6, 99:11

**edge** [1] - 17:23

**EDWARD** [1] - 1:16

**Edward** [1] - 3:3

**edward.polk@csklegal. com** [1] - 1:18

**effect** [1] - 16:14

**effective** [1] - 104:21

**effectiveness** [1] - 101:21

**efficiency** [5] - 68:12, 101:21, 104:22, 104:24, 104:25

**efficient** [5] - 57:23, 67:20, 103:18, 103:25, 104:21

**eight** [12] - 6:7, 31:4, 35:12, 77:22, 78:4, 78:23, 79:5, 79:25, 80:1

**either** [10] - 13:8, 14:3, 16:6, 16:18, 19:3, 26:21, 28:25, 38:17, 88:13, 94:11

**eleven** [1] - 82:21

**Eleventh** [1] - 33:19

**employer** [1] - 12:8

**employment** [7] - 12:9, 17:19, 17:24, 17:25, 18:3, 18:13, 18:19

**empty** [3] - 26:5, 26:7, 26:12

**encountered** [1] - 63:12

**end** [2] - 50:3, 82:14

**engaged** [1] - 104:13

**enjoy** [1] - 68:9

**enjoyment** [2] - 35:21, 41:1

**enroll** [1] - 98:3

**ensure** [2] - 99:12, 99:20

**enter** [3] - 78:10, 80:13, 96:5

**entered** [5] - 29:16, 39:9, 42:12, 84:24, 94:6

**entertained** [1] - 32:18

**entertainment** [7] - 5:23, 8:5, 21:5, 21:24, 22:4, 22:11, 36:2

**entire** [1] - 33:24

**entitled** [11] - 11:14, 11:25, 42:4, 58:19, 89:24, 96:3, 101:12, 103:22, 108:4

**entries** [3] - 72:23, 89:12, 105:12

**Entry** [8] - 44:9, 72:24, 74:1, 74:14, 74:18, 79:13, 83:17, 86:16

**entry** [11] - 9:21, 10:1, 10:6, 46:2, 49:4, 75:6, 78:20, 79:8, 79:20, 80:25, 90:17

**environment** [2] - 57:20, 100:4

**equal** [1] - 40:25

**equate** [1] - 58:17

**equipment** [1] - 6:20

**equitable** [1] - 11:18

**error** [5] - 78:22, 79:2, 79:8, 79:18

**errors** [5] - 100:3, 102:20, 102:21, 103:10

**ESQ** [3] - 1:12, 1:16, 4:15

**essentially** [2] - 29:18, 67:4

**established** [1] - 36:23

**establishment** [1] - 36:13

**estoppel** [1] - 33:11

**et** [1] - 12:9

**evaluate** [1] - 31:9

**events** [1] - 64:1

**eventually** [1] - 98:17

**evidence** [4] - 73:3, 78:1, 83:18, 97:24

**exact** [2] - 24:1, 86:18

**exactly** [9] - 27:9, 38:23, 43:20, 82:5, 82:8, 82:10, 82:13, 83:5, 102:6

**example** [2] - 98:4, 98:7

**except** [7] - 58:11, 80:17, 82:4, 82:12, 83:5, 93:24, 100:3

**exceptions** [1] - 67:11

**exclusive** [1] - 56:1

**exclusively** [1] - 100:22

**excuse** [14] - 9:1, 11:19, 15:15, 30:14, 34:13, 48:21, 53:9, 61:20, 67:23, 70:14, 82:20, 85:5, 102:15, 103:19

**exhaust** [5] - 12:12, 13:22, 14:6, 16:1, 37:22

**exhausted** [8] - 10:23, 11:20, 13:15, 13:21, 14:13, 14:14, 37:1, 37:6

**exhausting** [3] - 16:14, 17:13, 37:21

**exhaustion** [7] - 12:21, 15:11, 17:18, 18:12, 38:3, 94:12, 94:20

**Exhibit** [18] - 44:7, 45:6, 48:22, 56:21, 72:21, 72:24, 73:5, 73:24, 74:2, 74:19, 77:25, 79:13, 83:16, 97:23, 98:12, 98:18, 98:21

**exhibit** [11] - 44:8, 45:7, 73:3, 73:25, 74:17, 78:1, 79:14, 83:18, 89:5, 97:24, 98:15

**exhibits** [3] - 97:15, 97:16, 97:20

**exist** [1] - 41:17

**expect** [1] - 34:6

**expend** [1] - 85:7

**expense** [1] - 85:8

**experience** [7] - 11:2, 22:14, 31:5, 35:3, 35:14, 68:25,

94:18
**experienced** [1] - 51:12
**explain** [5] - 27:19, 33:8, 33:9, 55:21, 97:9
**explaining** [1] - 104:10
**explains** [1] - 107:11
**explanation** [1] - 101:25
**Express** [2] - 27:5, 89:25
**extended** [2] - 10:3, 10:7
**extension** [8] - 3:9, 3:14, 45:13, 83:19, 84:13, 84:16, 85:11, 107:2
**extent** [3] - 19:8, 41:16, 65:6
**extra** [2] - 44:5, 45:4
**EXTRACTED** [1] - 40:13
**extreme** [1] - 41:8

**F**

**F.3d** [1] - 30:7
**face** [1] - 85:20
**facilities** [4] - 6:4, 7:3, 24:1, 41:21
**facility** [7] - 6:11, 18:20, 27:6, 27:10, 50:16, 50:17, 61:25
**fact** [15] - 22:16, 23:16, 25:21, 34:2, 34:3, 35:21, 37:3, 38:2, 46:4, 49:24, 55:25, 63:9, 65:8, 95:19, 103:15
**factors** [10] - 29:18, 29:21, 29:25, 30:8, 30:20, 30:25, 32:5, 33:5, 33:12, 50:18
**facts** [3] - 28:7, 57:19, 69:12
**failed** [3] - 37:1, 78:10, 80:11
**fails** [1] - 12:20
**failure** [3] - 14:6, 81:3, 94:19
**fair** [1] - 56:25
**fairly** [3] - 3:9, 6:8, 97:20
**fall** [1] - 25:12
**familiar** [7] - 6:5, 11:2, 11:4, 23:17, 29:11, 56:15, 69:4
**famously** [1] - 93:14
**fan** [1] - 35:15
**far** [7] - 23:4, 23:9, 23:20, 24:13, 31:17, 33:10, 54:17
**fashioned** [1] - 19:14
**fast** [5] - 35:16, 67:8, 67:23, 70:7, 81:16
**favorable** [1] - 17:16
**FCRA** [3] - 8:18, 12:21, 16:16
**FCRR** [2] - 1:20, 108:8
**federal** [2] - 51:8, 105:4
**Federal** [1] - 23:19
**fee** [5] - 38:13, 40:17, 66:20, 89:23, 93:25
**feed** [1] - 32:3
**feedback** [1] - 6:12
**fees** [24] - 3:16, 4:2, 4:7, 5:4,

9:21, 38:6, 38:10, 39:12, 40:5, 40:19, 42:3, 42:4, 42:5, 42:6, 42:17, 43:24, 82:18, 85:9, 89:22, 93:17, 102:10, 104:12, 105:22
**feet** [1] - 39:1
**few** [6] - 50:5, 50:11, 57:10, 67:11, 102:7, 102:20
**figure** [3] - 23:7, 24:20, 25:20
**file** [22] - 12:2, 12:7, 13:23, 14:10, 17:7, 37:22, 38:3, 38:18, 38:19, 66:19, 70:25, 78:11, 81:7, 83:20, 84:17, 84:25, 85:11, 87:2, 88:19, 93:7, 98:13, 107:2
**File** [6] - 75:7, 75:21, 76:7, 79:21, 79:23, 84:12
**filed** [31] - 7:4, 9:20, 10:18, 11:3, 14:12, 15:6, 16:10, 31:11, 37:10, 39:5, 44:10, 49:2, 49:14, 49:17, 49:22, 50:22, 51:6, 52:18, 54:10, 54:12, 60:11, 63:16, 63:19, 64:20, 80:9, 81:1, 82:1, 94:16, 98:14, 105:21
**files** [1] - 81:11
**Filing** [1] - 76:13
**filing** [6] - 66:20, 82:17, 89:23, 93:25, 94:9
**fill** [5] - 26:6, 26:9, 26:11, 27:17
**filling** [1] - 28:24
**final** [9] - 8:16, 9:25, 10:2, 44:25, 45:17, 78:12, 83:20, 84:17, 88:23
**Finalize** [1] - 63:4
**finalize** [2] - 63:8, 69:19
**finalized** [3] - 8:21, 62:24, 64:8
**finalizing** [1] - 39:9
**findings** [1] - 69:12
**fine** [1] - 3:20
**finish** [1] - 67:23
**firm** [4] - 46:5, 65:19, 71:21, 102:14
**first** [16] - 10:16, 26:15, 33:11, 33:18, 46:2, 48:23, 61:12, 68:11, 69:2, 71:24, 75:5, 93:1, 100:10, 104:11, 105:3, 106:22
**fit** [1] - 19:4
**five** [9] - 16:23, 17:4, 18:17, 28:16, 32:16, 54:23, 57:3, 77:14, 102:7
**fixed** [1] - 102:15
**FL** [3] - 1:14, 1:17, 1:22
**flag** [4] - 49:7, 92:13, 92:16, 93:17
**Flagler** [7] - 24:23, 25:1, 26:21, 50:16, 51:20, 54:16

**flags** [3] - 95:7, 95:21, 105:19
**flat** [1] - 20:4
**Floor** [1] - 1:21
**Florida** [19] - 5:2, 9:7, 10:15, 11:4, 13:24, 16:1, 17:18, 22:21, 22:22, 24:10, 24:11, 34:2, 35:1, 35:6, 37:10, 50:23, 51:13, 52:18, 94:10
**FLORIDA** [1] - 1:1
**fluid** [4] - 60:7, 60:9, 60:12, 91:2
**focus** [1] - 58:24
**focused** [1] - 20:15
**follow** [6] - 2:14, 40:1, 51:8, 51:10, 63:15, 98:9
**follow-on** [1] - 98:9
**followed** [1] - 2:21
**following** [1] - 2:2
**follows** [4] - 4:17, 21:21, 79:17, 80:8
**Food** [2] - 2:23, 42:13
**FOR** [2] - 1:12, 1:16
**foregoing** [1] - 108:3
**form** [5] - 80:18, 80:22, 81:3, 82:13, 98:17
**format** [1] - 102:11
**Fort** [9] - 22:21, 22:22, 23:20, 24:17, 24:21, 24:22, 25:6, 28:14, 30:23
**forth** [5] - 24:10, 29:21, 48:9, 64:21, 65:9
**forward** [3] - 15:18, 15:23, 35:16
**forwards** [1] - 51:14
**four** [14] - 16:23, 17:4, 18:17, 28:20, 29:18, 29:20, 29:25, 30:8, 30:20, 30:24, 32:5, 33:5, 33:12, 95:25
**frame** [2] - 47:23, 66:7
**frankly** [4] - 30:11, 41:8, 49:13, 89:11
**free** [1] - 83:8
**frequency** [1] - 30:4
**frivolous** [2] - 94:16
**front** [13] - 13:18, 20:11, 21:2, 28:7, 33:24, 44:1, 45:24, 48:24, 77:24, 83:3, 97:7, 100:2, 100:6
**fruit** [2] - 70:11, 86:8
**fruits** [1] - 85:22
**frustrates** [1] - 9:2
**full** [4] - 26:10, 26:21, 28:25, 101:25
**furnish** [1] - 5:25
**future** [2] - 32:24, 102:5

**G**

**Gainesville** [1] - 24:9

**gas** [108] - 6:6, 6:8, 14:12, 14:22, 15:2, 15:6, 17:25, 18:4, 18:5, 19:18, 19:14, 19:17, 20:6, 20:22, 20:25, 22:1, 23:13, 23:15, 24:2, 24:19, 25:9, 25:14, 25:16, 25:25, 26:4, 26:5, 26:6, 26:7, 26:10, 26:20, 26:21, 26:23, 26:24, 27:3, 27:13, 27:14, 27:16, 27:17, 27:25, 28:4, 28:13, 28:15, 28:17, 28:21, 28:22, 28:24, 28:25, 29:6, 29:7, 30:23, 31:1, 31:2, 32:14, 32:15, 32:16, 32:25, 33:22, 33:25, 34:1, 34:2, 34:3, 34:25, 35:9, 35:12, 36:13, 36:15, 36:17, 37:14, 37:16, 37:17, 41:14, 41:17, 41:19, 41:20, 41:22, 49:18, 49:25, 50:5, 50:6, 50:21, 51:6, 51:18, 52:14, 54:12, 54:16, 55:2, 55:4, 56:8, 56:20, 59:9, 59:13, 59:21, 71:9, 95:20, 95:23, 95:25, 96:13, 97:10, 97:12, 97:18, 98:22
**Gas** [6] - 2:7, 6:20, 50:16, 51:20, 54:15, 97:18
**gas-ups** [1] - 95:25
**gassed** [1] - 20:21
**gassing** [2] - 21:2, 41:18
**general** [7] - 9:13, 16:13, 21:3, 50:11, 50:20, 71:21, 72:1
**generally** [5] - 21:1, 23:20, 24:12, 29:25, 39:25
**given** [1] - 38:11
**GIZELLA** [2] - 1:20, 108:8
**gizella_baan** [1] - 1:23
**gizella_baan-proulx@flsd. uscourts.gov** [1] - 1:23
**glad** [1] - 4:12
**global** [4] - 43:8, 45:14, 45:21, 107:10
**goal** [1] - 85:9
**government** [1] - 66:20
**grammar** [1] - 48:18
**grant** [1] - 45:13
**granted** [2] - 49:11, 85:11
**great** [1] - 105:25
**greater** [1] - 55:1
**grew** [1] - 56:4
**grossly** [4] - 83:12, 85:25, 89:10, 94:22
**Group** [1] - 2:7
**GROUP** [2] - 1:6, 1:17
**Group's** [1] - 26:20
**groups** [2] - 5:14, 5:18
**grunt** [1] - 86:7
**guess** [5] - 38:7, 52:1, 53:16,

59:13, 99:17
**guided** [1] - 29:25

## H

**half** [29] - 26:12, 26:21, 27:17, 28:25, 54:23, 56:24, 57:2, 57:3, 57:5, 57:6, 57:7, 59:8, 59:12, 59:15, 60:6, 62:24, 62:25, 63:5, 63:9, 64:17, 65:6, 73:5, 73:15, 73:21, 74:4, 74:8, 75:8, 79:4, 93:3
**half-hour** [15] - 56:24, 57:3, 57:5, 57:6, 59:8, 59:12, 59:15, 60:6, 62:24, 73:5, 73:15, 74:4, 74:8, 75:8, 79:4
**hand** [2] - 37:5, 37:7
**handwritten** [1] - 98:16
**hanging** [2] - 70:11, 86:8
**happy** [3] - 10:10, 101:24, 102:4
**hard** [5] - 6:25, 62:14, 72:6, 92:9, 99:19
**heading** [1] - 81:14
**healthy** [1] - 103:23
**hear** [4] - 32:1, 96:22, 96:23, 96:25
**HEARING** [1] - 1:8
**hearing** [10] - 10:9, 34:23, 42:7, 42:15, 45:17, 69:12, 94:23, 96:21, 106:10, 107:18
**hearings** [1] - 93:12
**held** [1] - 2:2
**help** [5] - 45:19, 46:13, 46:18, 48:1, 85:23
**helped** [3] - 48:11, 76:1, 76:17
**helpful** [1] - 43:21, 107:14
**helping** [3] - 46:13, 99:4, 99:25
**helps** [2] - 30:18, 97:9
**hereby** [1] - 108:3
**high** [2] - 50:3, 67:13
**highest** [2] - 71:24, 72:8
**highly** [1] - 99:10
**Highway** [1] - 23:19
**himself** [2] - 4:3, 96:6
**hire** [4] - 71:17, 100:19, 101:19, 106:1
**hired** [1] - 15:22
**hiring** [1] - 102:5
**hold** [2] - 72:16, 90:8
**holding** [1] - 107:8
**honestly** [2] - 18:11, 79:2
**Honor** [135] - 2:5, 2:12, 3:3, 3:20, 3:23, 3:25, 4:13, 4:24, 5:7, 5:25, 7:7, 7:10,

8:15, 9:5, 9:16, 9:19, 10:11, 10:20, 14:1, 15:9, 15:12, 17:3, 18:7, 18:24, 19:2, 19:12, 19:23, 20:8, 29:14, 30:13, 31:15, 32:22, 34:13, 38:22, 39:8, 40:23, 41:5, 41:7, 42:1, 45:16, 46:1, 46:6, 47:3, 47:15, 51:21, 52:9, 52:20, 53:16, 53:24, 54:1, 54:3, 54:6, 54:9, 54:13, 54:23, 55:21, 56:12, 57:16, 58:6, 58:7, 58:19, 61:22, 62:12, 63:21, 63:25, 64:19, 65:15, 67:15, 67:24, 68:18, 69:2, 69:3, 70:6, 70:16, 70:21, 72:20, 74:3, 74:5, 74:7, 74:21, 74:24, 75:3, 75:20, 76:5, 76:16, 76:24, 77:11, 77:23, 78:2, 78:6, 78:14, 78:19, 78:25, 79:5, 79:25, 80:2, 80:5, 80:15, 81:25, 82:3, 84:1, 84:4, 84:18, 85:13, 85:18, 86:5, 86:20, 87:8, 87:24, 88:7, 90:2, 92:20, 92:24, 93:10, 93:22, 94:3, 95:5, 95:9, 97:21, 99:1, 99:18, 100:9, 100:12, 100:15, 100:17, 100:19, 101:24, 103:13, 103:20, 104:6, 106:5, 106:25, 107:3, 107:7, 107:16
**HONORABLE** [1] - 1:9
**horribly** [1] - 55:17
**hotel** [1] - 49:25
**hour** [53] - 53:25, 55:6, 56:23, 56:24, 57:2, 57:3, 57:5, 57:6, 58:16, 59:8, 59:12, 59:15, 60:6, 61:6, 62:7, 62:17, 62:24, 62:25, 63:9, 64:17, 65:6, 66:20, 68:4, 68:15, 68:17, 68:22, 69:5, 69:6, 69:7, 70:15, 70:22, 72:15, 73:5, 73:15, 73:21, 74:4, 74:8, 75:8, 77:22, 79:4, 82:24, 85:16, 86:7, 86:12, 86:19, 89:10, 92:21, 93:3, 101:13, 103:18, 103:22, 104:18
**hour's** [1] - 77:16
**hour-and-a-half** [5] - 62:25, 63:9, 64:17, 65:6, 73:21
**hourly** [1] - 39:23, 39:24, 40:7, 40:9
**hours** [39] - 49:8, 53:22, 54:21, 54:23, 55:6, 55:20, 56:23, 57:2, 57:3, 62:22, 63:6, 66:14, 67:3, 69:14, 69:22, 70:4, 70:23, 71:2, 75:1, 76:8, 77:14, 77:15,

77:22, 78:4, 78:23, 79:20, 80:3, 80:4, 82:17, 82:19, 82:21, 83:7, 84:5, 85:14, 89:21, 107:9
**Houston** [2] - 29:22, 30:6
**HUCK** [1] - 1:9
**Human** [1] - 37:10
**hundred** [1] - 53:4
**hundreds** [1] - 36:17

## I

**idea** [1] - 41:24
**ideas** [1] - 57:21
**identical** [1] - 49:16
**identification** [6] - 44:8, 45:7, 57:12, 73:25, 74:17, 79:14
**identify** [1] - 56:14
**illustrative** [1] - 98:4
**impaired** [1] - 34:24
**important** [1] - 3:15
**impossible** [3] - 35:19, 64:13, 64:18
**impression** [7] - 20:24, 21:3, 21:6, 21:9, 21:23, 21:25
**inability** [1] - 58:15
**inaccessibility** [1] - 24:11
**inaccurate** [1] - 65:14
**inarticulate** [1] - 101:18
**inaud** [1] - 93:1
**Inc** [4] - 2:7, 27:6, 27:12, 56:9
**INC** [2] - 1:6, 1:17
**include** [4] - 9:25, 10:12, 10:14, 49:6
**including** [6] - 11:11, 14:11, 40:4, 42:16, 56:18, 95:4
**inconsistent** [1] - 65:18
**increase** [1] - 101:20
**incur** [1] - 7:23
**incurred** [1] - 90:9
**indicate** [1] - 64:1
**indicated** [9] - 20:12, 32:14, 38:11, 43:8, 46:5, 51:11, 72:18, 89:13, 107:5
**indicates** [2] - 46:14, 63:22
**indicating** [1] - 88:1
**indication** [1] - 36:12
**individual** [1] - 55:4
**information** [6] - 33:14, 73:20, 81:18, 81:19, 98:21, 102:1
**informing** [1] - 61:24
**initiated** [1] - 11:19
**injunctive** [7] - 5:1, 5:5, 8:11, 39:11, 40:8, 40:22, 102:9
**injuries** [1] - 9:15
**injury** [1] - 34:9
**inordinately** [1] - 67:13

**input** [1] - 65:24
**inquiring** [1] - 61:25
**inside** [1] - 22:9
**instance** [1] - 17:8
**instituted** [1] - 11:19
**instructions** [1] - 98:2
**insult** [2] - 34:9, 35:17
**insulted** [1] - 35:22
**insurance** [4] - 95:16, 95:17, 104:11, 104:14
**intend** [1] - 23:25
**intends** [1] - 78:11
**intent** [1] - 101:25
**intention** [2] - 23:25, 33:3
**interacting** [1] - 102:23
**interest** [2] - 87:10, 87:18
**interesting** [7] - 6:1, 8:9, 17:22, 40:15, 45:11, 63:14
**interpret** [2] - 76:10, 91:24
**interpretation** [1] - 77:9
**interrupt** [4] - 9:1, 30:22, 103:19, 104:8
**introduced** [4] - 73:3, 78:1, 83:18, 97:24
**introductory** [1] - 80:7
**investment** [1] - 34:19
**Investments** [1] - 27:12
**invite** [1] - 94:13
**invoke** [2] - 39:16, 40:6
**invoking** [1] - 40:7
**involuntarily** [1] - 16:19
**involve** [1] - 17:25
**involved** [5] - 18:3, 78:4, 81:5, 84:8, 85:21
**involving** [4] - 14:20, 17:25, 45:14, 60:9
**Irving** [1] - 88:12
**issue** [7] - 19:24, 37:21, 40:17, 41:4, 104:5, 104:7, 104:9
**issues** [3] - 89:11, 89:15, 102:2
**Item** [10] - 53:21, 56:19, 66:21, 69:20, 71:4, 72:25, 76:6, 78:20, 79:17, 79:19
**item** [16] - 60:13, 61:1, 62:23, 69:23, 70:6, 70:18, 72:25, 73:23, 74:14, 75:5, 79:21, 83:16, 84:20, 88:4, 88:6, 88:16
**items** [13] - 4:19, 11:11, 75:4, 75:5, 79:17, 83:14, 88:8, 90:3, 95:22, 99:23, 99:24, 101:7

## J

**job** [3] - 67:16, 68:5, 68:9
**John** [1] - 29:21
**JOHNSON** [4] - 1:4, 1:13,

1:25, 21:19
**Johnson** [41] - 2:6, 2:10, 2:14, 2:22, 3:1, 4:6, 4:20, 8:21, 9:18, 10:23, 13:5, 13:9, 14:20, 15:3, 16:20, 18:4, 18:11, 21:3, 21:6, 27:5, 27:12, 33:25, 34:3, 35:2, 44:11, 44:12, 56:9, 60:3, 60:4, 60:9, 61:24, 89:20, 90:9, 90:10, 90:21, 90:24, 91:9, 95:11, 96:6, 96:12
**Johnson's** [4] - 8:2, 14:25, 33:16, 89:18
**judge** [4] - 12:10, 55:12, 93:2, 105:4
**JUDGE** [1] - 1:10
**Judge** [28] - 12:18, 13:6, 16:12, 29:11, 29:24, 31:17, 31:25, 32:4, 33:10, 36:8, 55:11, 55:12, 55:13, 56:8, 57:11, 81:23, 82:18, 83:6, 86:16, 86:23, 88:12, 89:18, 93:5, 95:1, 97:16, 105:4, 105:22
**Judges** [1] - 14:2
**judges'** [1] - 70:24
**judgment** [21] - 8:17, 10:1, 10:2, 49:4, 49:10, 49:12, 78:12, 81:24, 82:2, 83:20, 84:17, 85:2, 87:19, 88:21, 88:23, 89:6, 93:4, 93:16, 95:2, 102:9
**Judgment** [1] - 56:14
**judicial** [1] - 36:12
**judiciary** [1] - 58:2
**July** [1] - 106:15
**June** [6] - 106:19, 106:22, 106:23, 106:24
**justice** [2] - 87:10, 87:18
**justification** [1] - 74:9
**justified** [1] - 85:15
**justifies** [1] - 85:15
**justify** [2] - 58:16, 89:8

## K

**keep** [4] - 11:6, 67:7, 70:8, 99:6
**keeping** [3] - 30:25, 43:16, 55:5
**kind** [10] - 6:1, 6:4, 19:7, 20:16, 30:11, 41:10, 54:20, 71:3, 93:17, 98:3
**kinds** [1] - 89:19
**Kissane** [2] - 1:16, 3:4
**knowledge** [6] - 30:25, 39:17, 44:18, 64:12, 65:2, 68:12

## L

**labor** [1] - 100:20
**labors** [1] - 85:23
**lack** [4] - 29:17, 36:9, 103:11, 103:14
**Lakes** [1] - 28:14
**language** [4] - 13:19, 24:1, 50:1, 86:18
**last** [8] - 3:5, 15:6, 15:22, 18:17, 35:5, 44:12, 49:22, 105:3
**late** [1] - 106:19
**lately** [1] - 24:9
**Lauderdale** [10] - 22:21, 22:22, 23:20, 24:17, 24:21, 24:22, 25:6, 28:14, 30:23
**law** [9] - 15:13, 17:5, 23:14, 51:14, 67:21, 71:21, 85:22, 98:20, 102:14
**laws** [1] - 6:22
**lawsuit** [9] - 6:23, 20:16, 27:5, 37:22, 51:23, 72:13, 89:25, 104:4
**lawsuits** [14] - 7:4, 16:2, 16:5, 27:24, 60:11, 70:20, 71:9, 71:10, 72:19, 94:16, 96:2, 98:14, 104:3
**lawyer** [2] - 51:12, 72:12, 92:24, 103:21
**lawyers** [2] - 69:4, 69:7
**learn** [2] - 67:23, 107:10
**learned** [1] - 102:15
**least** [16] - 5:20, 9:22, 12:10, 14:13, 16:23, 27:17, 31:2, 31:8, 31:9, 34:11, 34:22, 48:1, 50:25, 53:1, 100:23, 101:1
**leave** [1] - 92:3
**left** [2] - 8:17, 107:9
**legal** [3] - 37:25, 47:7, 85:9
**legitimate** [1] - 35:24, 92:17
**less** [3] - 98:20, 103:24, 103:25
**letter** [1] - 88:14
**letters** [1] - 87:22
**liability** [1] - 7:24
**licensed** [6] - 47:19, 48:4, 99:5, 99:19, 101:20
**life** [3] - 68:13, 106:3, 106:4
**likely** [1] - 32:25
**limited** [5] - 26:1, 26:3, 51:17, 55:3, 58:12
**line** [8] - 24:13, 83:14, 84:20, 85:25, 87:3, 89:6, 99:23
**lips** [4] - 97:3, 97:4, 97:6, 97:7
**list** [1] - 98:14
**listed** [5] - 79:18, 98:22, 100:23, 101:1, 101:2

**Listen** [1] - 102:8
**listen** [1] - 93:6
**litigation** [1] - 101:13
**live** [2] - 10:4, 22:21
**lives** [2] - 30:23, 36:18
**living** [1] - 68:1
**LLC** [1] - 13:5
**local** [1] - 80:13
**located** [4] - 23:1, 27:13, 27:17, 59:13
**location** [4] - 28:15, 50:17, 70:20, 71:8
**locations** [3] - 25:5, 27:18
**longest** [1] - 99:13
**look** [27] - 5:9, 27:20, 28:10, 42:5, 43:25, 51:23, 53:8, 53:19, 57:16, 57:19, 59:14, 69:25, 73:20, 80:25, 81:8, 81:13, 81:21, 83:1, 83:14, 87:18, 90:17, 91:14, 95:1, 95:3, 96:1, 105:11
**looked** [9] - 13:17, 20:12, 28:11, 30:18, 56:17, 58:10, 58:20, 83:3, 95:25
**looking** [21] - 2:16, 12:16, 14:24, 16:10, 51:3, 51:24, 57:21, 61:10, 62:10, 63:15, 65:17, 74:12, 76:22, 79:1, 79:10, 90:20, 92:2, 96:1, 96:2, 99:22, 105:1
**looks** [8] - 2:17, 58:4, 73:2, 76:2, 76:12, 76:25, 88:5, 98:17
**loss** [2] - 9:14, 35:21
**losses** [1] - 9:18
**Lou** [1] - 29:21
**loud** [1] - 96:16
**low** [2] - 58:18, 70:11, 86:8
**lower** [2] - 72:1, 99:17
**lump** [1] - 40:19

## M

**machine** [2] - 56:4, 56:6
**machines** [1] - 55:22
**mail** [1] - 66:17
**mailed** [1] - 2:21
**mails** [2] - 64:21, 65:9
**main** [2] - 6:19, 32:6
**majority** [2] - 6:18, 34:22
**MANAGEMENT** [2] - 1:6, 1:16
**management** [2] - 46:22, 102:18
**Management** [4] - 2:7, 26:20, 42:9, 63:3
**March** [1] - 9:24
**mark** [4] - 72:21, 73:24, 74:18, 79:13
**marked** [6] - 44:7, 44:8, 45:7,

73:25, 74:17, 79:14
**market** [2] - 6:10, 69:1
**Marod** [2] - 29:22, 30:6
**Martínez** [9] - 55:12, 55:14, 56:9, 81:23, 82:18, 83:7, 86:16, 86:23, 95:1
**Martínez'** [1] - 88:13
**Martínez's** [2] - 57:11, 89:19
**master** [1] - 69:3
**matter** [8] - 2:22, 22:15, 23:16, 37:25, 46:4, 49:24, 78:12, 108:4
**matters** [2] - 89:9, 89:10
**McCarthy** [1] - 93:12
**mean** [14] - 7:17, 17:14, 18:16, 26:5, 30:10, 58:17, 63:13, 67:6, 69:22, 73:19, 75:8, 83:2, 85:15, 88:23
**means** [5] - 7:18, 46:22, 72:18, 90:6, 91:8
**measures** [1] - 5:6
**mechanism** [1] - 17:11
**medical** [2] - 36:20, 61:24
**medicines** [1] - 24:25
**meet** [2] - 19:17, 30:20
**meets** [1] - 41:12
**member** [3] - 24:14, 92:25
**memo** [1] - 70:25
**memorandum** [1] - 13:1
**memory** [1] - 61:19
**mental** [1] - 9:14
**mentioned** [1] - 55:2
**mentioning** [1] - 75:16
**Mercury** [1] - 89:25
**merging** [1] - 57:18
**met** [1] - 45:16
**MIAMI** [1] - 1:2
**Miami** [7] - 1:14, 1:17, 1:21, 1:22, 12:17, 25:6, 67:22
**Miami-Dade** [2] - 12:17, 25:6
**microphone** [1] - 31:24
**middle** [2] - 11:15, 106:19
**midway** [1] - 54:11
**might** [35] - 34:1, 35:2, 47:23, 48:1, 51:21, 58:11, 58:12, 61:13, 62:3, 62:4, 65:7, 79:18, 81:7, 81:8, 81:12, 83:8, 87:1, 87:2, 88:21, 89:2, 90:7, 91:25, 92:2, 95:14, 95:15, 95:16, 98:13, 103:2, 106:3
**mile** [2] - 23:3, 25:2
**miles** [1] - 32:16
**mimeograph** [1] - 55:22, 55:23, 56:4, 56:5
**mimeographing** [1] - 56:4
**mind** [6] - 30:25, 32:7, 55:5, 56:2, 71:6, 104:21
**minimal** [1] - 50:14

**minimis** [3] - 41:17, 41:22, 95:13
**minimum** [2] - 57:7, 79:4
**ministerial** [2] - 89:8, 89:9
**minus** [1] - 68:2
**minute** [4] - 30:22, 31:12, 69:6, 69:9
**minutes** [5] - 45:10, 45:22, 57:4, 62:22
**mis** [1] - 88:22
**mis-noted** [1] - 88:22
**missed** [1] - 52:19
**missing** [2] - 52:20, 86:3
**mistake** [2] - 66:5, 76:21
**mistaken** [1] - 96:12
**mistakes** [2] - 67:8, 102:12
**moment** [2] - 31:8, 58:24
**Monday** [2] - 106:22, 106:24
**money** [3] - 58:19, 100:5, 105:25
**month** [4] - 25:3, 36:19, 65:20, 98:23
**monthly** [1] - 68:21
**months** [1] - 15:22
**moot** [1] - 41:4
**Moreno** [1] - 55:12
**Moreno's** [1] - 95:1
**morning** [3] - 2:10, 3:3, 43:25
**most** [14] - 13:15, 15:25, 20:14, 21:10, 26:9, 31:4, 38:25, 49:19, 51:13, 57:23, 96:8, 96:22, 101:6
**mostly** [2] - 60:8, 62:15
**motion** [31] - 3:9, 9:22, 9:25, 10:2, 10:7, 14:3, 16:10, 16:12, 45:13, 49:2, 49:3, 49:5, 56:18, 78:11, 79:8, 79:19, 79:23, 80:4, 80:25, 81:23, 82:1, 82:22, 83:19, 83:20, 84:12, 84:16, 85:2, 86:17, 87:5, 89:6, 107:2
**Motion** [1] - 56:14
**motions** [3] - 16:8, 102:16, 106:21
**MOTIONS** [1] - 1:8
**move** [4] - 43:18, 61:20, 80:7, 83:22
**movie** [1] - 35:9
**moving** [4] - 49:11, 49:12, 51:11, 74:23
**MR** [370] - 2:4, 2:5, 2:9, 2:12, 2:16, 2:20, 2:25, 3:3, 3:6, 3:20, 3:23, 4:3, 4:8, 4:12, 4:24, 5:7, 5:25, 6:12, 6:17, 7:7, 7:10, 7:14, 7:18, 7:23, 8:6, 8:8, 8:12, 8:15, 8:20, 8:24, 9:5, 9:9, 9:12, 9:16, 9:19, 10:3, 10:8, 10:10, 10:14, 10:20, 10:25, 11:6,

11:9, 11:12, 11:23, 12:15, 12:24, 13:3, 13:13, 14:1, 14:8, 14:16, 14:23, 15:4, 15:7, 15:9, 15:12, 15:15, 15:21, 16:8, 16:25, 17:3, 17:6, 17:10, 17:17, 18:2, 18:7, 18:9, 18:21, 18:24, 19:2, 19:12, 19:19, 19:23, 20:8, 20:10, 20:18, 29:14, 30:13, 30:15, 30:17, 31:6, 31:17, 31:22, 31:25, 32:4, 32:19, 32:22, 33:8, 33:23, 34:13, 34:18, 35:8, 35:17, 35:23, 35:25, 36:4, 36:6, 38:16, 38:21, 38:22, 39:8, 39:19, 39:21, 40:7, 40:19, 40:23, 41:5, 41:7, 42:1, 42:8, 42:19, 42:25, 43:5, 43:13, 43:20, 44:3, 45:15, 45:23, 46:1, 46:6, 46:12, 46:17, 46:20, 47:1, 47:3, 47:8, 47:10, 47:15, 47:18, 47:23, 48:1, 48:3, 48:7, 48:11, 48:15, 48:17, 48:21, 51:2, 51:8, 51:21, 52:5, 52:7, 52:9, 52:12, 52:20, 52:24, 53:3, 53:7, 53:10, 53:13, 53:16, 53:18, 53:24, 54:1, 54:3, 54:6, 54:9, 54:13, 54:17, 54:22, 55:8, 55:15, 56:12, 56:16, 57:3, 57:6, 57:15, 58:6, 58:9, 58:18, 59:4, 59:6, 59:11, 59:17, 59:20, 59:25, 60:4, 60:7, 60:19, 60:22, 60:25, 61:4, 61:8, 61:13, 61:19, 61:22, 62:9, 62:12, 62:18, 62:20, 63:2, 63:7, 63:11, 63:17, 63:21, 63:25, 64:19, 65:7, 65:15, 65:19, 65:25, 66:3, 66:7, 66:24, 67:1, 67:6, 67:15, 67:17, 67:24, 68:10, 68:18, 68:24, 69:2, 69:23, 70:6, 70:13, 70:16, 70:21, 70:23, 71:5, 71:12, 71:15, 71:17, 72:3, 72:6, 72:9, 72:20, 73:2, 73:7, 73:9, 73:13, 73:16, 74:3, 74:5, 74:7, 74:10, 74:12, 74:21, 74:24, 75:3, 75:10, 75:12, 75:16, 75:20, 75:23, 76:5, 76:9, 76:16, 76:24, 77:2, 77:6, 77:11, 77:16, 77:20, 77:23, 78:2, 78:6, 78:8, 78:14, 78:17, 78:19, 78:25, 79:10, 79:25, 80:2, 80:5, 80:15, 80:20, 80:23, 81:6, 81:25, 82:3, 82:7, 82:9, 82:11, 82:14, 82:19, 82:21, 82:24, 83:1, 83:8, 83:13, 84:1, 84:4, 84:7,

84:14, 84:18, 85:1, 85:13, 85:18, 86:5, 86:9, 86:13, 86:20, 86:25, 87:8, 87:12, 87:16, 87:21, 87:24, 88:3, 88:7, 88:11, 88:14, 88:20, 89:1, 90:2, 90:7, 90:11, 90:15, 90:18, 90:22, 90:25, 91:6, 91:12, 91:16, 91:19, 91:22, 92:9, 92:11, 92:15, 92:18, 92:20, 92:23, 93:10, 93:22, 94:3, 95:5, 95:9, 96:19, 96:21, 96:24, 97:2, 97:21, 98:4, 98:9, 99:1, 99:3, 100:12, 100:15, 100:17, 100:19, 100:22, 100:25, 101:4, 101:9, 101:16, 101:18, 103:7, 103:13, 103:20, 104:6, 104:10, 105:2, 105:7, 105:9, 105:14, 105:16, 105:20, 106:2, 106:5, 106:8, 106:13, 106:19, 106:25, 107:3, 107:7, 107:13, 107:16
**mushrooms** [1] - 58:12
**must** [1] - 48:4

## N

**name** [8] - 3:5, 50:15, 76:8, 82:4, 82:12, 83:5, 93:12, 102:20
**namely** [1] - 12:8
**naming** [1] - 12:4
**nature** [2] - 5:21, 50:5
**near** [2] - 24:14, 30:5
**necessary** [2] - 89:7, 100:13
**need** [7] - 21:7, 25:8, 25:9, 38:7, 43:23, 97:14, 107:1
**needed** [1] - 34:19
**needs** [1] - 96:14
**negotiated** [2] - 5:9, 43:16
**negotiating** [1] - 5:13
**negotiations** [2] - 43:18, 107:14
**neighborhood** [1] - 22:23
**never** [6] - 17:2, 20:22, 20:25, 22:14, 47:4, 77:7
**new** [3] - 62:2, 81:17, 92:4
**news** [7] - 5:23, 8:4, 21:4, 21:23, 22:4, 22:10, 36:2
**next** [15] - 34:12, 34:15, 38:6, 60:13, 61:1, 62:23, 64:3, 64:15, 65:4, 73:23, 74:14, 76:6, 83:16, 96:7, 96:9
**nice** [1] - 103:23
**NO** [1] - 1:2
**nobody** [2] - 47:9, 93:7
**Nodding** [3] - 27:1, 63:17, 90:18

**noncompliant** [1] - 28:24
**none** [4] - 10:22, 14:13, 17:24
**normal** [3] - 24:12, 97:1, 103:4
**North** [2] - 1:21, 23:18
**north** [1] - 23:19
**Northeast** [1] - 23:8
**Northwest** [3] - 24:24, 27:7, 27:13
**notably** [1] - 16:15
**Notably** [1] - 16:15
**notated** [1] - 87:3
**notation** [2] - 45:4, 89:3
**note** [8] - 8:16, 9:21, 20:21, 40:15, 47:9, 48:25, 86:16, 97:25
**noted** [1] - 88:22
**notes** [5] - 62:10, 62:11, 65:21, 98:16, 99:8
**nothing** [4] - 42:11, 42:22, 62:5, 83:24
**notice** [10] - 17:18, 18:12, 18:23, 19:2, 36:12, 56:17, 72:18, 86:25, 88:17, 90:4
**November** [8] - 16:20, 60:15, 61:17, 63:16, 63:20, 64:4, 64:7, 64:8
**Number** [36] - 44:7, 44:9, 45:6, 48:23, 53:21, 56:8, 56:20, 60:13, 62:24, 63:19, 66:21, 69:20, 72:22, 72:24, 73:5, 73:24, 74:1, 74:2, 74:14, 74:18, 74:19, 75:6, 76:17, 77:25, 78:20, 79:13, 79:17, 79:19, 83:16, 83:17, 86:16, 97:23, 98:12, 98:20
**number** [15] - 6:6, 11:11, 13:8, 14:2, 16:14, 16:19, 31:1, 41:14, 47:16, 49:8, 50:4, 68:21, 79:23, 90:17, 107:13
**Numbers** [1] - 72:25
**NW** [1] - 1:13

## O

**Oakland** [1] - 23:18
**oath** [2] - 61:15, 64:25
**objection** [4] - 38:21, 97:19, 97:21, 105:21
**objects** [1] - 93:8
**obligation** [1] - 71:21
**observation** [2] - 78:15, 86:22
**obvious** [4] - 18:8, 33:2, 95:2, 96:1
**obviously** [7] - 6:21, 34:10, 37:1, 51:25, 53:13, 87:16, 89:24

**OCARIS** [2] - 1:6, 1:16
**Ocaris** [10] - 2:6, 3:16, 3:22, 4:20, 4:22, 26:14, 26:20, 42:9, 43:24, 49:15
**occasion** [1] - 90:14
**occasions** [1] - 14:2
**Ocean** [1] - 23:18
**October** [12] - 26:14, 27:7, 44:20, 44:21, 61:16, 63:24, 64:2, 64:14, 64:24, 65:3, 90:19, 90:21
**odd** [1] - 28:22
**OF** [2] - 1:1, 40:13
**office** [15] - 46:17, 48:10, 59:14, 62:2, 69:24, 75:6, 81:4, 91:6, 92:8, 92:19, 92:23, 95:4, 95:8, 99:18, 104:11
**offices** [1] - 35:4
**often** [2] - 21:10, 24:15
**Oil** [1] - 56:10
**old** [4] - 6:24, 19:14, 55:22, 100:18
**old-fashioned** [1] - 19:14
**once** [6] - 7:25, 26:14, 36:19, 41:11, 49:11, 98:13
**one** [86] - 3:7, 7:6, 12:10, 12:16, 13:2, 14:11, 15:8, 16:11, 16:20, 16:21, 16:22, 20:23, 20:25, 21:2, 22:13, 22:14, 22:16, 24:14, 27:4, 27:15, 27:16, 27:24, 28:5, 29:12, 30:1, 30:24, 31:13, 32:13, 32:17, 34:25, 40:19, 46:11, 47:24, 48:1, 49:2, 49:22, 51:12, 53:3, 54:23, 55:22, 56:14, 56:20, 57:7, 58:11, 59:2, 59:22, 60:5, 61:6, 63:5, 64:24, 66:20, 70:22, 71:2, 72:16, 74:15, 74:16, 75:1, 77:3, 77:14, 79:20, 79:22, 80:3, 80:11, 81:13, 81:23, 83:13, 83:24, 85:19, 86:19, 87:3, 90:8, 94:9, 95:1, 95:16, 95:22, 97:13, 99:23, 102:16, 102:24, 103:1, 104:7, 105:18
**one-and-a-half** [3] - 54:23, 57:7, 63:5
**ones** [7] - 14:23, 22:7, 22:9, 100:23, 101:1, 101:2, 101:3
**open** [2] - 2:2, 69:1
**opposed** [3] - 21:11, 22:9, 47:5
**options** [3] - 29:6, 36:22, 95:20
**order** [26] - 4:4, 17:14, 29:15, 29:24, 42:13, 69:13, 70:19, 71:6, 73:8, 74:20, 74:25, 79:24, 80:16, 81:4, 82:13, 83:21, 83:22, 83:25, 84:2, 84:16, 94:24, 96:7, 99:9, 106:12, 106:15
**orders** [2] - 2:21, 70:24
**otherwise** [1] - 4:22
**outline** [1] - 80:8
**outside** [2] - 79:3, 91:18
**overbilling** [1] - 94:22
**overly** [2] - 25:23, 92:13
**overstated** [1] - 89:11
**own** [6] - 29:17, 48:19, 56:2, 61:9, 89:3, 104:21
**owned** [1] - 6:21
**Owner** [1] - 46:5
**owner** [8] - 46:9, 46:10, 46:14, 46:22, 46:25, 47:5, 47:6, 59:14
**ownership** [2] - 5:14, 67:5
**owns** [1] - 19:8

**P**

**P-O-L-K** [1] - 3:6
**PA** [2] - 1:13, 1:16
**PACER** [14] - 73:11, 73:19, 73:20, 90:4, 90:5, 90:9, 90:12, 90:20, 90:21, 90:24, 91:4, 91:8, 91:11
**pads** [1] - 102:17
**page** [7] - 16:12, 30:6, 44:12, 51:24, 51:25, 61:10, 90:7
**paid** [1] - 104:18
**Palm** [1] - 36:20
**paper** [1] - 80:15
**papers** [3] - 38:12, 51:11, 97:14
**paragraph** [5] - 11:16, 13:19, 24:8, 73:8, 80:7
**paragraphs** [1] - 80:8
**paralegal** [10] - 47:20, 47:22, 48:5, 48:10, 71:13, 72:11, 101:7, 101:11, 101:20
**paralegal's** [1] - 48:2
**paralegals** [9] - 47:12, 47:16, 47:18, 59:3, 69:8, 71:18, 99:5, 99:16, 100:14
**paraphrasing** [1] - 19:7
**paren** [2] - 16:17, 16:18
**Park** [3] - 22:23, 22:25, 23:18
**part** [23] - 24:18, 26:9, 31:4, 31:20, 31:22, 32:8, 33:11, 33:12, 34:4, 39:24, 41:21, 46:12, 49:19, 60:19, 69:12, 71:7, 73:18, 75:24, 79:6, 95:7, 99:11, 99:13
**particular** [13] - 9:22, 12:17, 14:16, 20:16, 36:13, 36:23, 40:24, 41:10, 54:15, 59:9,
**particularly** [2] - 95:19, 104:3
**particulars** [1] - 83:1
**parties** [1] - 40:2
**partner** [3] - 24:25, 30:21, 62:6
**partner's** [2] - 34:5, 61:24
**parts** [1] - 33:11
**passed** [1] - 80:11
**past** [2] - 24:10, 30:2
**paste** [1] - 51:25
**pasting** [1] - 84:9
**patently** [1] - 38:5
**patiently** [1] - 38:8
**patronage** [1] - 30:2
**PAUL** [1] - 1:9
**pay** [1] - 66:19
**paying** [4] - 40:20, 68:16, 100:5, 100:8
**penalty** [2] - 44:16, 65:2
**pending** [5] - 37:13, 37:18, 37:19, 56:14, 81:23
**people** [44] - 5:14, 7:14, 7:24, 34:20, 34:22, 34:23, 35:4, 41:1, 41:18, 46:17, 46:20, 47:11, 47:19, 47:20, 48:11, 51:13, 58:16, 60:12, 71:18, 71:19, 72:4, 72:6, 76:17, 77:2, 77:6, 77:7, 77:11, 90:11, 90:12, 96:22, 97:8, 99:4, 99:6, 99:16, 99:19, 99:20, 99:25, 102:2, 102:5, 102:25, 104:13
**people's** [1] - 67:18
**pepperoni** [1] - 58:11
**per** [8] - 4:3, 7:15, 7:18, 53:25, 55:20, 68:22, 77:22, 90:7
**percent** [5] - 49:20, 50:3, 53:4, 53:18
**percentage** [1] - 50:2
**perfectly** [1] - 2:17
**performed** [3] - 43:2, 46:8
**period** [5] - 17:1, 47:17, 47:25, 54:11, 83:23
**perjury** [2] - 44:16, 65:2
**person** [14] - 12:1, 12:4, 12:6, 46:8, 46:9, 47:6, 47:21, 66:1, 80:24, 91:4, 91:18, 92:4, 95:13
**personal** [1] - 35:3
**personally** [2] - 20:21, 74:6
**perspective** [1] - 31:8
**petroleum** [1] - 5:14
**ph** [2] - 29:21, 88:12
**phone** [4] - 27:21, 42:19, 61:23, 84:7
**photograph** [1] - 97:25
**photographs** [3] - 22:16,
**69:17, 83:13, 83:14
**phrase** [2] - 63:7, 84:21
**phrased** [1] - 51:22
**physical** [1] - 70:1
**pick** [1] - 25:3
**piece** [2] - 62:3, 70:1
**pieces** [1] - 103:1
**pizzas** [1] - 57:22, 58:5
**place** [5] - 19:10, 46:21, 67:5, 96:18, 96:20
**places** [1] - 23:19
**plaintiff** [10] - 1:4, 3:1, 3:22, 3:24, 5:11, 11:20, 12:20, 14:16, 78:11
**PLAINTIFF** [9] - 1:12, 22:25, 44:14, 44:20, 44:23, 45:2, 97:4, 97:7, 97:10
**plaintiff's** [7] - 30:2, 30:4, 30:5, 42:17, 79:19, 83:19
**plaintiffs** [4] - 14:25, 51:12, 80:11, 100:5
**plaintiffs'** [1] - 16:16
**plan** [2] - 30:4, 36:15
**plant** [3] - 68:5, 93:14, 93:15
**play** [2] - 6:9, 21:9
**played** [1] - 21:23
**playing** [1] - 97:11
**pleasant** [2] - 68:8
**plenty** [1] - 88:8
**plural** [1] - 25:14
**plus** [4] - 25:13, 41:15, 68:2, 97:10
**point** [36] - 16:4, 17:4, 19:6, 36:6, 36:9, 38:4, 43:16, 46:24, 51:16, 59:2, 60:14, 62:9, 66:18, 67:3, 67:14, 69:21, 70:4, 75:1, 76:8, 76:14, 77:14, 77:15, 77:22, 78:4, 78:23, 79:4, 79:20, 79:24, 80:1, 80:3, 83:24, 84:5, 85:14, 102:8
**points** [1] - 31:7
**polite** [2] - 93:21, 103:12
**politely** [1] - 104:5
**POLK** [12] - 1:16, 2:4, 3:3, 3:6, 3:20, 38:16, 38:21, 40:19, 45:15, 45:23, 107:7, 107:13
**Polk** [12] - 3:3, 3:7, 3:8, 38:8, 39:6, 39:16, 40:3, 45:8, 74:15, 78:3, 107:8
**Pompano** [1] - 24:12
**portion** [3] - 40:11, 41:16, 55:1
**PORTION** [1] - 40:13
**possible** [1] - 28:1
**possibly** [2] - 53:3, 106:13
**potentially** [1] - 87:9
**potted** [3] - 68:5, 93:14, 93:15

**practice** [9] - 85:19, 85:22, 86:2, 99:4, 102:8, 102:23, 103:4, 104:12, 104:19

**practices** [1] - 103:15

**premature** [3] - 38:4, 38:5

**preparation** [1] - 10:2

**prepare** [2] - 67:1, 79:24

**prepared** [2] - 75:1, 80:16

**preparing** [2] - 10:7, 69:24

**present** [2] - 1:24, 58:3

**presenting** [1] - 102:3

**presidents** [1] - 3:7

**pressure** [1] - 58:14

**pretty** [5] - 18:8, 18:22, 33:2, 89:4, 105:18

**previously** [2] - 3:11, 36:16

**primarily** [1] - 17:19

**principle** [3] - 71:21, 72:1, 72:2

**print** [4] - 81:10, 81:11, 81:19, 91:1

**printed** [1] - 81:7

**printout** [2] - 27:9, 56:19

**private** [2] - 68:13, 86:2

**problem** [14] - 29:10, 31:23, 35:8, 38:17, 39:7, 39:14, 39:18, 40:4, 58:13, 58:14, 70:15, 71:20, 86:14, 92:19

**problems** [3] - 55:19, 92:7, 103:24

**Procedure** [1] - 80:12

**procedures** [3] - 13:15, 60:19, 61:14

**proceed** [1] - 2:3

**proceeding** [1] - 39:17

**proceedings** [3] - 2:2, 2:14, 108:4

**process** [5] - 3:11, 57:23, 69:22, 70:12, 82:7

**produce** [1] - 42:7

**product** [2] - 22:17, 22:19

**products** [3] - 21:24, 22:5, 22:15

**programmed** [1] - 7:1

**prohibiting** [2] - 11:14, 11:16

**prohibitive** [2] - 5:21, 7:12

**project** [1] - 73:21

**projects** [1] - 71:22

**proliferation** [2] - 5:12, 19:25

**promoting** [5] - 21:24, 22:5, 22:15, 22:17, 22:19

**prompted** [1] - 49:10

**pronounce** [1] - 2:11

**proper** [1] - 8:12

**properly** [1] - 9:18

**property** [2] - 72:14, 100:11

**proposed** [2] - 8:16, 63:10

**PROULX** [2] - 1:20, 108:8

**proulx@flsd.uscourts.gov**

**[1] -** 1:23

**provide** [6] - 4:4, 5:23, 7:20, 19:3, 43:10, 66:17

**provided** [7] - 5:18, 11:18, 33:13, 34:9, 35:18, 42:24, 44:20

**provider** [1] - 6:20

**provides** [3] - 11:7, 11:17, 12:1

**providing** [1] - 85:3

**provision** [2] - 18:12, 18:13

**provisions** [1] - 39:1

**proximity** [3] - 24:2, 30:1, 50:10

**public** [7] - 19:10, 19:17, 25:1, 34:21, 38:20, 42:24, 50:8

**pull** [10] - 10:22, 34:21, 43:23, 56:7, 56:13, 81:12, 91:24, 91:25, 97:10, 102:17

**pulled** [1] - 91:1

**pulling** [1] - 90:12

**pump** [2] - 6:8, 97:18

**pumping** [1] - 97:11

**pumps** [1] - 5:17

**purchase** [1] - 41:20

**purely** [1] - 89:9

**purpose** [1] - 41:18

**purposes** [1] - 50:8

**pursuant** [8] - 8:18, 12:13, 14:3, 37:2, 74:19, 80:12, 83:20, 89:17

**pursue** [1] - 78:12

**push** [1] - 70:7

**put** [26] - 5:16, 10:4, 18:23, 20:25, 26:12, 29:3, 33:23, 48:9, 49:19, 50:2, 55:17, 58:20, 66:1, 69:11, 76:18, 81:15, 83:9, 86:25, 88:21, 93:21, 98:6, 99:9, 102:1, 102:10, 104:5

**putting** [9] - 34:18, 61:9, 65:11, 71:5, 71:8, 74:11, 84:20, 86:23

## Q

**qualified** [4] - 47:22, 51:13, 72:3, 103:22

**qualifies** [1] - 50:8

**quarter** [1] - 25:2

**questions** [5] - 4:11, 4:12, 93:19, 95:6, 98:25

**quickly** [3] - 58:15, 60:11, 103:16

**quit** [2] - 71:19, 92:3

**quite** [4] - 39:8, 67:6, 94:13, 102:13

**quote** [5] - 12:1, 12:20, 12:22, 69:21, 90:19

**quoting** [2] - 11:14, 16:15

## R

**raise** [4] - 31:14, 92:16, 95:7, 95:21

**raised** [4] - 37:5, 37:7, 49:7, 93:19

**raises** [2] - 92:13, 93:17

**range** [1] - 23:15

**rate** [15] - 39:23, 39:24, 40:8, 40:10, 43:4, 58:18, 72:8, 72:10, 77:12, 99:17, 101:14, 101:23, 101:24, 103:23, 104:15

**rather** [8] - 3:14, 10:17, 21:4, 21:24, 22:4, 59:2, 71:24, 101:13

**reach** [1] - 88:13

**read** [18] - 12:10, 12:11, 20:12, 20:13, 20:15, 32:1, 44:25, 49:13, 55:17, 76:4, 81:8, 83:25, 91:24, 97:3, 97:4, 97:7, 98:8, 99:11

**readily** [3] - 7:3, 35:18

**reading** [8] - 49:15, 58:14, 76:21, 81:15, 81:18, 84:3, 90:5, 97:5

**ready** [1] - 2:3

**real** [5] - 2:13, 25:20, 29:19, 36:14, 89:11

**real-time** [1] - 2:13

**realistic** [1] - 36:12

**really** [11] - 22:4, 22:6, 25:12, 25:21, 29:5, 31:7, 72:3, 79:8, 81:9, 89:14, 96:1

**reason** [6] - 23:11, 36:15, 48:25, 49:6, 56:13, 106:17

**reasonable** [21] - 38:13, 54:8, 58:20, 68:6, 69:15, 69:16, 70:10, 71:22, 73:19, 78:16, 78:24, 83:11, 83:12, 85:25, 86:4, 86:6, 86:15, 89:7, 101:14

**reasoning** [1] - 85:5

**reasons** [2] - 14:18, 60:5

**Rebecca** [3] - 90:9, 90:10, 90:21

**receive** [3] - 61:3, 62:8, 88:17

**received** [4] - 61:1, 61:3, 64:7, 66:18

**receiving** [2] - 62:25, 63:9

**recent** [1] - 29:11

**recently** [3] - 15:5, 16:21, 16:22

**recognizing** [1] - 34:23

**recollection** [4] - 44:18, 64:12, 66:22, 88:9

**reconfigure** [1] - 7:1

**record** [12] - 6:5, 33:9, 38:20, 39:5, 40:11, 42:24, 69:11, 73:17, 73:18, 83:4, 86:23, 98:23

**records** [4] - 43:17, 99:6, 102:17, 105:11

**red** [6] - 49:7, 92:13, 92:16, 93:17, 95:21, 105:19

**refer** [3] - 4:20, 4:21

**referred** [2] - 16:11, 97:17

**referring** [4] - 4:22, 11:24, 24:8, 42:16

**reflect** [5] - 83:4, 84:15, 84:19, 102:19, 102:22

**regard** [22] - 3:17, 4:1, 4:6, 4:7, 5:5, 6:3, 8:11, 29:10, 38:10, 39:2, 39:17, 49:17, 50:6, 53:19, 55:2, 55:3, 58:25, 66:17, 84:21, 89:23, 100:14, 103:15

**regarding** [2] - 46:3, 98:22

**regardless** [2] - 77:18, 77:21

**regular** [9] - 24:2, 24:7, 25:5, 25:7, 25:8, 25:10, 25:13, 26:2, 33:22

**relate** [2] - 50:14, 88:24

**related** [4] - 42:15, 42:17, 51:18, 79:8

**relates** [8] - 5:8, 76:2, 76:9, 76:17, 78:20, 79:1, 88:19, 88:20

**Relations** [1] - 37:11

**relevance** [2] - 3:17, 38:12

**relevant** [1] - 40:18

**relief** [15] - 4:19, 5:1, 5:5, 8:11, 11:7, 11:18, 12:12, 18:18, 34:14, 39:11, 40:5, 40:8, 40:22, 102:9

**remediate** [1] - 60:10

**remedies** [18] - 10:24, 11:21, 12:12, 12:21, 13:23, 14:6, 14:15, 15:11, 16:14, 17:13, 17:19, 37:2, 37:6, 37:22, 37:23, 94:12, 94:19, 94:20

**Remedies** [2] - 11:15, 11:25

**remedy** [4] - 5:22, 11:17, 16:1, 38:2

**remember** [2] - 56:11, 61:23

**repeat** [3] - 66:14, 67:12, 84:24

**repeatedly** [1] - 16:18

**repeating** [1] - 103:5

**rephrase** [1] - 18:9

**replies** [1] - 93:2

**report** [14] - 73:11, 74:20, 75:2, 75:7, 75:22, 75:25, 76:3, 76:7, 76:20, 77:13, 77:24, 78:4, 78:21, 79:21

**REPORTED** [1] - 1:20

**Reporter** [1] - 1:21
**reporter** [3] - 4:16, 9:2, 21:20
**reporting** [1] - 92:17
**represent** [2] - 103:25, 104:13
**representation** [1] - 9:17
**representations** [1] - 28:7
**representative** [2] - 2:18, 97:20
**represented** [2] - 48:14, 89:5
**representing** [6] - 28:3, 32:13, 51:12, 65:4, 67:9, 102:2
**represents** [4] - 35:3, 46:25, 47:6, 97:19
**request** [3] - 42:14, 93:17, 95:2
**requested** [2] - 4:9, 5:1
**require** [2] - 62:17, 84:25
**required** [1] - 37:2
**requirement** [2] - 12:11, 16:13
**requirements** [4] - 59:18, 59:21, 60:1, 60:3
**requires** [1] - 17:13
**requiring** [1] - 7:15
**reread** [5] - 55:15, 57:9, 57:17, 61:4, 103:3
**rereading** [3] - 48:18, 57:7, 61:9
**research** [9] - 6:12, 70:18, 70:25, 71:4, 71:7, 72:17, 73:4, 90:20, 91:23
**residence** [2] - 22:20, 30:2
**resolution** [1] - 40:16
**resolved** [2] - 37:21, 41:25
**respond** [6] - 80:12, 81:3, 84:2, 85:3, 87:6, 100:10
**response** [1] - 74:25
**responsible** [1] - 12:4
**rest** [2] - 90:3, 96:8
**restaurant** [2] - 41:10, 41:11
**restroom** [1] - 41:21
**result** [2] - 82:14, 85:22
**results** [1] - 104:25
**return** [4] - 30:4, 36:15, 79:12, 82:5
**returned** [2] - 78:9, 80:10
**revealing** [1] - 22:4
**Review** [1] - 76:6
**review** [15] - 10:16, 36:10, 56:21, 59:1, 60:20, 62:8, 63:11, 64:5, 66:18, 69:25, 71:1, 74:12, 75:1, 76:13
**reviewed** [4] - 10:17, 61:3, 64:25, 76:14
**reviewing** [7] - 48:17, 64:21, 65:10, 70:2, 81:18, 83:10, 87:2
**revise** [3] - 66:15, 67:4,

101:24
**revising** [6] - 61:6, 62:25, 63:10, 65:5, 66:21, 66:22
**revision** [2] - 63:8, 64:7
**revisions** [20] - 61:2, 61:12, 61:21, 62:7, 62:16, 62:21, 62:24, 63:1, 63:5, 63:10, 64:16, 64:17, 67:10, 69:20, 89:16, 89:17, 89:18, 89:20
**Rewards** [1] - 98:2
**Richard** [2] - 2:9, 2:25
**rights** [2] - 14:20, 100:6
**Rights** [7] - 5:2, 9:7, 10:15, 11:3, 13:24, 94:10
**ringing** [1] - 13:3
**rise** [1] - 29:20
**risen** [1] - 18:10
**road** [2] - 38:3, 106:12
**Rocket** [1] - 63:3
**route** [3] - 24:18, 28:23, 34:4
**routinely** [1] - 30:21
**RPR** [2] - 1:20, 108:8
**RSJ** [1] - 27:12
**Rule** [1] - 18:25
**rule** [5] - 17:12, 18:16, 94:6, 96:5, 106:11
**rules** [4] - 51:9, 51:11, 80:13
**Rules** [1] - 80:12
**ruling** [8] - 15:21, 17:5, 17:16, 33:7, 41:24, 78:18, 85:16, 86:3
**run** [2] - 99:4, 102:22

## S

**sampling** [1] - 50:23
**sanction** [1] - 94:21
**sanctions** [1] - 94:6
**satisfaction** [2] - 61:9, 63:12
**Scola** [1] - 93:5
**SCOTT** [2] - 1:12, 4:15
**Scott** [14] - 1:13, 1:16, 2:9, 2:25, 3:4, 46:10, 53:22, 75:7, 75:8, 75:9, 75:11, 75:12, 75:22, 92:24
**Scott's** [1] - 79:22
**scratch** [1] - 55:25
**screen** [3] - 6:8, 7:19, 20:4
**screens** [5] - 19:25, 20:1, 20:17, 35:13
**scrivener** [4] - 100:3, 102:21, 103:10
**scrivener's** [1] - 79:2
**seal** [1] - 40:11
**SEALED** [1] - 40:13
**search** [10] - 90:4, 90:5, 90:9, 90:21, 90:24, 91:4, 91:7, 91:8, 91:11
**second** [11] - 13:19, 15:15, 26:15, 27:4, 33:12, 36:9,

72:16, 90:8, 94:21, 97:13, 97:25
**secretary** [1] - 73:19
**Section** [3] - 11:14, 11:24, 12:6
**section** [2] - 11:18, 23:21
**see** [33] - 25:19, 29:9, 29:13, 30:10, 35:8, 36:2, 45:20, 46:8, 56:19, 59:14, 60:17, 61:5, 63:18, 63:19, 66:8, 68:2, 70:15, 71:10, 73:20, 73:23, 74:19, 75:25, 76:21, 85:19, 88:16, 88:18, 88:25, 89:16, 93:15, 93:16, 98:24, 106:17
**seeing** [4] - 66:7, 71:9, 76:19, 100:2
**seek** [1] - 18:18
**seeking** [4] - 5:6, 11:8, 12:12, 68:4
**seem** [3] - 38:25, 90:3, 92:22
**sees** [1] - 96:13
**self** [1] - 102:15
**self-taught** [1] - 102:15
**send** [4] - 62:15, 76:1, 94:24, 94:25
**sending** [4] - 64:21, 65:9, 65:20, 70:11
**sense** [1] - 29:8
**sent** [15] - 56:21, 59:1, 60:15, 60:16, 61:17, 64:5, 64:15, 66:14, 69:20, 69:22, 70:1, 75:14, 83:22, 88:14
**sentences** [2] - 78:5, 78:7
**separate** [2] - 27:24, 43:17
**serious** [3] - 29:10, 48:24, 89:14
**Serrano** [2] - 91:5, 91:10
**served** [2] - 80:9, 81:2
**server** [2] - 69:22, 70:12
**service** [14] - 7:25, 22:19, 69:21, 69:24, 70:2, 78:10, 80:17, 82:5, 90:1, 93:3, 94:1, 105:21
**services** [1] - 41:1
**set** [6] - 6:25, 29:21, 94:5, 94:23, 99:18, 106:10
**settled** [2] - 3:10, 7:14
**settlement** [18] - 3:12, 7:15, 38:9, 38:10, 38:11, 38:24, 39:4, 42:10, 42:12, 42:16, 43:8, 43:9, 45:12, 45:14, 45:20, 45:21, 107:6, 107:11
**seven** [2] - 66:18, 67:3
**several** [5] - 5:12, 14:8, 15:24, 99:15, 99:16
**shape** [1] - 98:13
**sheets** [5] - 4:9, 42:8, 42:21, 42:23, 43:6

**shelf** [1] - 34:20
**shortly** [2] - 45:16, 45:18
**show** [5] - 51:4, 94:6, 94:21, 96:5, 106:11
**showed** [1] - 34:3
**showing** [1] - 98:10
**shows** [2] - 22:17, 22:18
**shut** [5] - 7:21, 8:4, 34:12, 34:15, 40:24
**sic** [2] - 18:10, 29:16
**side** [1] - 38:17
**sign** [1] - 60:21
**signature** [3] - 44:13, 44:19, 64:4
**signed** [7] - 44:11, 44:24, 63:24, 64:20, 65:2, 66:8, 66:9
**signing** [1] - 60:23
**similar** [1] - 16:16
**similarly** [2] - 5:10, 20:4
**simple** [1] - 71:19
**simply** [1] - 51:16
**single** [6] - 10:3, 14:11, 30:24, 49:1, 99:17, 103:1
**sitting** [3] - 38:8, 55:23, 70:7
**situated** [2] - 5:10, 20:4
**situation** [6] - 18:19, 62:14, 62:19, 67:18, 91:2
**situations** [6] - 13:21, 14:9, 15:10, 60:8, 60:12, 92:5
**six** [11] - 31:3, 31:4, 35:13, 43:13, 79:24, 80:1, 80:4, 84:5, 85:14, 102:7
**slid** [1] - 49:5
**slips** [1] - 65:13
**Slurpee** [1] - 95:15
**small** [2] - 6:8, 79:3
**smaller** [1] - 54:22
**snapshot** [1] - 22:18
**so-called** [2] - 5:22, 95:21
**society** [2] - 20:1, 20:8
**solution** [1] - 58:2
**someone** [23] - 18:19, 34:23, 41:11, 48:10, 48:17, 68:1, 69:23, 70:1, 70:13, 71:23, 71:25, 75:14, 76:1, 76:12, 77:1, 77:9, 81:7, 81:20, 91:19, 91:20, 91:25, 98:19, 103:2
**someplace** [1] - 43:25
**sometime** [2] - 96:7, 106:11
**sometimes** [4] - 41:9, 57:17, 62:20, 62:21, 62:22, 97:10, 99:21
**somewhat** [2] - 28:22, 88:17
**somewhere** [2] - 34:15, 57:1
**sorry** [12] - 21:14, 22:24, 31:25, 38:22, 44:21, 58:13, 79:22, 93:10, 96:19, 100:25, 103:20, 107:8

**sorts** [1] - 103:1
**sound** [1] - 56:15
**sounds** [1] - 101:17
**source** [2] - 21:4, 21:5
**south** [1] - 24:13
**South** [2] - 34:2, 34:25
**Southern** [1] - 12:11
**SOUTHERN** [1] - 1:1
**southwest** [2] - 23:21, 24:14
**specific** [5] - 50:13, 50:14, 51:19, 55:3, 56:20
**specifically** [5] - 4:22, 5:8, 51:22, 62:7, 94:17
**specifics** [1] - 54:15
**Speedway** [5] - 13:5, 16:11, 22:8, 97:18, 98:2
**spell** [1] - 3:5
**spend** [2] - 93:18, 100:13
**spending** [3] - 64:16, 72:15, 73:21
**spent** [5] - 30:10, 53:20, 53:21, 63:9, 95:22
**sphere** [1] - 36:14
**sponte** [2] - 14:4, 29:12
**sporadically** [1] - 6:17
**spread** [2] - 25:5, 25:11
**srd@dininlaw.com** [1] - 1:15
**staff** [2] - 46:12, 95:4
**stage** [1] - 13:14
**stake** [1] - 102:2
**stakeholders** [1] - 20:2
**stamp** [1] - 63:18
**stance** [1] - 20:2
**stand** [3] - 10:8, 10:10, 100:4
**standard** [1] - 41:12
**standards** [1] - 71:23
**standing** [23] - 19:17, 25:22, 29:10, 29:17, 29:20, 30:9, 30:19, 31:14, 32:5, 33:4, 33:12, 33:16, 36:9, 41:4, 41:6, 41:9, 41:13, 41:23, 59:17, 59:19, 59:20, 60:1, 60:3
**start** [9] - 2:6, 4:19, 51:23, 51:24, 57:18, 81:14, 81:15, 92:2, 97:11
**state** [2] - 6:7, 29:2
**State** [4] - 35:6, 50:23, 51:13, 52:18
**statement** [2] - 73:23, 74:2
**statements** [1] - 98:3
**States** [2] - 1:21, 93:11
**STATES** [2] - 1:1, 1:10
**Station** [2] - 6:20, 97:18
**station** [44] - 14:12, 14:22, 15:2, 15:6, 17:25, 18:5, 19:8, 19:9, 19:14, 19:17, 22:1, 26:20, 27:13, 27:25, 28:14, 28:15, 28:17, 29:7,

31:3, 34:3, 34:4, 34:25, 36:15, 37:17, 40:24, 41:2, 41:17, 41:20, 49:25, 50:5, 50:6, 50:21, 51:6, 52:14, 54:16, 55:4, 56:8, 56:20, 59:9, 59:13, 59:21, 71:9, 96:13, 97:11
**stations** [45] - 19:15, 20:6, 20:22, 23:13, 23:15, 24:2, 25:11, 25:14, 25:16, 25:25, 26:1, 26:4, 26:7, 27:3, 27:17, 28:21, 28:23, 28:24, 28:25, 29:6, 30:23, 31:1, 32:16, 33:1, 33:22, 33:25, 34:1, 34:25, 35:9, 35:12, 36:13, 36:17, 37:14, 37:16, 41:14, 41:19, 41:23, 45:14, 45:15, 49:18, 51:18, 54:12, 55:2, 95:23, 98:22
**status** [14] - 6:3, 74:20, 75:1, 75:7, 75:21, 75:25, 76:3, 76:7, 76:20, 77:13, 77:24, 78:4, 78:21, 79:21
**statute** [12] - 11:5, 11:7, 11:13, 11:16, 12:10, 12:19, 13:18, 17:18, 18:10, 18:16, 19:3, 94:13
**stay** [5] - 3:18, 45:9, 45:11, 45:21
**step** [1] - 39:1
**Stephanie** [1] - 91:5
**steps** [1] - 60:10
**still** [3] - 17:20, 66:10, 72:7
**stop** [2] - 33:20, 68:13
**stopped** [4] - 26:20, 27:3, 43:16, 49:5
**stops** [1] - 32:16
**stopwatch** [1] - 67:7
**store** [6] - 19:9, 19:20, 22:9, 41:19, 50:7, 95:14
**Stores** [2] - 2:23, 42:14
**stores** [1] - 19:15
**straightforward** [2] - 3:9, 93:20
**Street** [2] - 24:23, 26:21
**strength** [1] - 33:24
**stretch** [1] - 32:21
**stretches** [1] - 86:24
**strike** [3] - 25:11, 25:22, 32:20
**strikes** [4] - 25:24, 28:22, 29:2, 29:12
**string** [1] - 34:21
**stuff** [5] - 2:21, 57:17, 69:24, 86:10, 100:2
**styled** [1] - 16:17
**sua** [2] - 14:4, 29:12
**subject** [2] - 38:14, 72:25
**submission** [2] - 9:23, 83:6
**submit** [3] - 77:4, 81:4, 107:5

**submitted** [11] - 3:12, 4:8, 8:17, 10:11, 22:16, 58:21, 75:18, 75:19, 76:11, 76:13, 104:2
**subsequent** [1] - 89:16
**substantial** [2] - 93:18, 93:19
**substantive** [1] - 49:2
**such-and-such** [3] - 80:10, 84:24
**sued** [5] - 6:21, 28:17, 72:14, 87:17
**suffered** [1] - 95:11
**suggest** [1] - 89:17
**suggested** [1] - 89:18
**suggesting** [1] - 64:16
**suggests** [2] - 75:3, 90:8
**suing** [2] - 30:23, 89:24
**suit** [1] - 13:23
**suits** [3] - 5:13, 23:13, 73:11
**sum** [1] - 40:19
**summary** [9] - 9:21, 9:23, 43:11, 44:2, 45:3, 45:5, 45:25, 48:9, 64:1, 64:2, 66:13, 69:14, 73:1, 82:17, 93:4, 101:3
**summer** [1] - 67:22
**summons** [1] - 81:2
**Sunshine** [1] - 45:15
**Supermarkets** [2] - 29:22, 30:6
**support** [1] - 56:18
**supposed** [1] - 67:20
**surprised** [1] - 31:1
**suspect** [1] - 32:17
**swear** [1] - 21:16
**swiping** [1] - 98:2
**sworn** [4] - 4:16, 21:7, 21:14, 21:20
**system** [7] - 46:22, 52:8, 52:10, 65:23, 65:24, 99:15, 102:18

## T

**table** [1] - 34:23
**talks** [5] - 13:19, 16:13, 43:1, 50:9, 50:10
**tangible** [1] - 9:15
**tank** [11] - 26:5, 26:7, 26:10, 26:11, 26:12, 26:21, 27:17, 28:25, 29:1
**task** [7] - 10:7, 46:23, 59:3, 68:8, 71:25, 101:15
**tasks** [3] - 58:23, 69:15, 101:22
**taught** [1] - 102:15
**TDY** [1] - 50:1
**technical** [1] - 25:23
**technicalities** [1] - 7:2
**technology** [5] - 6:24, 7:12,

34:16, 34:18, 34:19
**telephone** [4] - 3:14, 46:3, 66:16, 84:10
**template** [2] - 54:14, 81:1
**ten** [1] - 46:17
**terms** [10] - 8:19, 38:9, 38:10, 38:14, 38:24, 39:15, 40:4, 40:9, 55:5, 58:12
**terribly** [1] - 101:18
**test** [1] - 18:18
**tested** [1] - 41:12
**tester** [1] - 96:3
**testers** [1] - 33:18
**testified** [2] - 4:16, 21:20
**testify** [1] - 3:25
**testifying** [1] - 4:1
**testimony** [4] - 4:5, 31:9, 36:10, 48:8
**testing** [1] - 69:1
**THE** [464] - 1:1, 1:9, 1:12, 1:16, 2:3, 2:6, 2:11, 2:13, 2:18, 2:22, 3:5, 3:7, 3:21, 4:1, 4:6, 4:10, 4:18, 4:25, 5:19, 6:1, 6:15, 7:2, 7:8, 7:11, 7:17, 7:21, 8:2, 8:7, 8:9, 8:14, 8:16, 8:23, 8:25, 9:6, 9:10, 9:13, 9:17, 9:20, 10:6, 10:9, 10:12, 10:15, 10:21, 11:1, 11:7, 11:10, 11:13, 11:24, 12:16, 13:1, 13:4, 13:22, 14:2, 14:10, 14:19, 15:3, 15:5, 15:8, 15:10, 15:13, 15:19, 16:4, 16:10, 17:1, 17:4, 17:7, 17:11, 17:22, 18:3, 18:8, 18:15, 18:22, 18:25, 19:5, 19:13, 19:21, 20:6, 20:9, 20:11, 20:19, 21:7, 21:9, 21:12, 21:14, 21:17, 21:22, 22:1, 22:3, 22:6, 22:14, 22:21, 22:22, 22:23, 22:24, 22:25, 23:1, 23:2, 23:4, 23:5, 23:6, 23:8, 23:9, 23:10, 23:11, 23:23, 23:24, 24:5, 24:7, 24:9, 24:16, 24:18, 24:20, 24:25, 25:4, 25:7, 25:10, 25:18, 25:19, 26:3, 26:6, 26:9, 26:13, 26:17, 26:19, 26:23, 26:24, 27:1, 27:2, 27:8, 27:11, 27:20, 27:23, 28:1, 28:3, 28:6, 28:11, 29:15, 30:14, 30:16, 30:22, 31:16, 31:21, 31:23, 32:2, 32:11, 32:20, 32:23, 33:20, 34:11, 34:14, 35:7, 35:11, 35:20, 35:24, 36:1, 36:5, 36:7, 37:9, 37:12, 37:13, 37:14, 37:15, 37:16, 37:17, 37:18, 37:19, 37:20, 37:24, 37:25, 38:17,

38:24, 39:13, 39:20, 40:1,
40:9, 40:13, 40:15, 40:21,
41:3, 41:6, 41:8, 42:2,
42:11, 42:22, 43:1, 43:7,
43:19, 43:21, 44:4, 44:9,
44:14, 44:15, 44:20, 44:21,
44:23, 44:24, 45:2, 45:3,
45:8, 45:19, 45:24, 46:2,
46:7, 46:15, 46:19, 46:24,
47:2, 47:4, 47:9, 47:14,
47:16, 47:21, 47:25, 48:2,
48:6, 48:8, 48:13, 48:16,
48:20, 48:22, 51:4, 51:10,
52:3, 52:6, 52:8, 52:10,
52:13, 52:22, 53:1, 53:5,
53:8, 53:11, 53:14, 53:17,
53:19, 53:25, 54:2, 54:4,
54:7, 54:10, 54:14, 54:19,
54:24, 55:10, 56:3, 56:13,
56:17, 57:5, 57:9, 58:4,
58:8, 58:10, 58:23, 59:5,
59:7, 59:12, 59:19, 59:23,
60:1, 60:5, 60:13, 60:21,
60:23, 61:1, 61:6, 61:11,
61:15, 61:20, 62:5, 62:11,
62:13, 62:19, 62:23, 63:4,
63:8, 63:14, 63:18, 63:22,
64:1, 64:24, 65:13, 65:16,
65:23, 66:1, 66:5, 66:12,
66:25, 67:3, 67:9, 67:16,
67:20, 67:25, 68:16, 68:19,
68:25, 69:4, 70:4, 70:10,
70:14, 70:17, 70:22, 71:3,
71:7, 71:13, 71:16, 71:20,
72:5, 72:7, 72:10, 72:21,
73:4, 73:8, 73:10, 73:14,
73:17, 74:1, 74:4, 74:6,
74:8, 74:11, 74:14, 74:18,
74:22, 74:25, 75:4, 75:11,
75:13, 75:18, 75:21, 76:4,
76:6, 76:10, 76:23, 76:25,
77:3, 77:9, 77:12, 77:18,
77:21, 77:24, 78:3, 78:7,
78:9, 78:15, 78:18, 78:22,
79:7, 79:12, 79:15, 80:1,
80:3, 80:6, 80:16, 80:22,
80:24, 81:22, 82:1, 82:4,
82:8, 82:10, 82:12, 82:16,
82:20, 82:22, 82:25, 83:3,
83:10, 83:16, 83:19, 84:2,
84:5, 84:10, 84:16, 84:22,
85:2, 85:14, 85:21, 86:6,
86:11, 86:14, 86:22, 87:5,
87:9, 87:14, 87:18, 87:23,
88:1, 88:5, 88:9, 88:12,
88:16, 88:24, 89:4, 90:3,
90:8, 90:13, 90:16, 90:19,
90:23, 91:3, 91:7, 91:14,
91:17, 91:20, 92:7, 92:10,
92:12, 92:16, 92:19, 92:21,
93:6, 93:11, 93:23, 94:4,

95:6, 95:10, 96:20, 96:23,
96:25, 97:3, 97:4, 97:5,
97:7, 97:9, 97:10, 97:13,
97:22, 97:25, 98:7, 98:12,
99:2, 100:10, 100:13,
100:16, 100:18, 100:20,
100:23, 101:1, 101:6,
101:10, 101:17, 103:5,
103:8, 103:14, 103:21,
104:7, 104:24, 105:5,
105:8, 105:10, 105:15,
105:18, 105:25, 106:3,
106:6, 106:10, 106:17,
106:22, 106:23, 106:24,
107:1, 107:4, 107:8,
107:15
**theaters** [1] - 35:9
**theory** [1] - 18:18
**therefore** [1] - 50:7
**THEREUPON** [1] - 40:13
**Thereupon** [12] - 4:14, 21:18,
44:8, 45:7, 73:3, 73:25,
74:17, 78:1, 79:14, 83:18,
97:24, 107:18
**thinking** [7] - 14:9, 15:17,
15:19, 17:20, 49:14, 57:8,
74:12
**thousand** [4] - 25:14, 25:24,
26:4, 31:2
**thousands** [1] - 25:15
**three** [28] - 4:19, 4:25, 27:17,
27:24, 28:4, 28:13, 28:19,
28:21, 30:23, 31:7, 32:16,
32:17, 33:25, 35:5, 53:22,
54:21, 55:6, 57:2, 62:22,
71:2, 71:5, 78:4, 78:7,
95:23, 95:25, 97:17,
106:11
**three-and-a-half** [1] - 57:2
**throughout** [7] - 5:12, 20:1,
23:15, 34:2, 34:25, 35:5,
41:15
**timekeeper** [1] - 47:5
**Title** [1] - 93:2
**title** [2] - 38:6, 77:5
**today** [10] - 3:2, 4:3, 10:9,
13:21, 31:11, 36:10, 69:12,
94:8, 98:3, 106:17
**together** [8] - 5:13, 13:8,
43:17, 49:5, 71:5, 74:11,
76:19, 107:13
**took** [7] - 55:16, 57:5, 59:12,
59:15, 62:7, 65:6, 89:21
**top** [1] - 63:18
**total** [4] - 9:23, 77:15, 91:8
**totals** [1] - 77:18
**touching** [1] - 102:24
**tough** [1] - 72:12
**towards** [1] - 7:15
**town** [1] - 96:8

**training** [1] - 92:2
**TRANSCRIPT** [1] - 40:13
**transcription** [1] - 108:4
**travel** [9] - 24:3, 24:7, 25:10,
25:13, 26:2, 28:23, 30:5,
33:22, 36:14
**travels** [1] - 34:5
**treadmill** [1] - 70:7
**true** [9] - 13:12, 13:13, 14:7,
14:8, 32:11, 44:17, 64:11,
65:1, 72:7
**truth** [1] - 64:10
**try** [7] - 11:6, 59:25, 67:7,
99:9, 102:17, 102:18
**trying** [20] - 5:19, 18:5, 22:7,
24:20, 25:19, 30:18, 33:23,
55:21, 58:20, 70:7, 70:8,
74:22, 81:19, 88:20, 100:5,
100:6, 100:19, 101:19,
103:12, 104:19
**turn** [9] - 5:15, 7:20, 20:25,
40:16, 42:2, 44:12, 45:3,
63:22, 66:12
**turned** [1] - 5:17
**turning** [1] - 81:22
**Turnpike** [1] - 24:11
**turnpike** [2] - 24:16, 24:19
**TV** [4] - 6:20, 6:21, 6:25,
19:25
**TVs** [5] - 5:12, 5:15, 5:17,
20:4, 40:24
**twenty** [4] - 75:5, 79:25,
80:1, 80:11
**twenty-eight** [2] - 79:25,
80:1
**twenty-one** [1] - 80:11
**twice** [3] - 24:10, 26:14,
41:11
**two** [23] - 7:18, 7:21, 21:1,
21:2, 25:11, 27:3, 33:11,
47:24, 60:14, 66:15, 69:22,
70:4, 70:23, 73:8, 76:8,
76:15, 77:3, 77:15, 81:12,
92:23, 93:3, 105:4, 106:11
**two-and-a-half** [1] - 93:3
**type** [3] - 22:19, 69:7, 104:12
**typed** [1] - 98:17
**types** [2] - 4:25, 81:1
**typical** [2] - 17:14, 62:20
**typically** [3] - 16:17, 54:19,
71:22
**typing** [3] - 65:9, 74:10, 84:9
**typo** [6] - 65:7, 75:25, 76:16,
76:21, 78:20, 78:21
**typographical** [3] - 78:22,
79:7, 79:18
**typos** [1] - 100:3

# U

**U-Gas** [1] - 2:7
**ultimately** [1] - 85:8
**under** [17] - 5:2, 6:22, 8:25,
9:6, 9:7, 12:21, 13:23,
44:16, 46:5, 46:10, 47:6,
61:15, 64:25, 65:2, 76:8,
77:5, 94:9
**underlying** [1] - 104:3
**underpaid** [1] - 104:14
**unfortunately** [1] - 52:2
**Ungaro** [2] - 29:11, 36:8
**Ungaro's** [5] - 29:24, 31:17,
31:25, 32:4, 33:10
**unique** [3] - 51:19, 62:14,
67:4
**United** [2] - 1:21, 93:11
**UNITED** [2] - 1:1, 1:10
**units** [1] - 48:14
**universe** [1] - 29:7
**University** [1] - 67:22
**Unlawful** [1] - 11:15
**unlawful** [1] - 11:16
**unless** [1] - 48:4
**unnecessary** [1] - 85:8
**unreasonable** [1] - 83:12
**unusual** [2] - 47:4, 62:19
**up** [60] - 5:13, 6:6, 10:4,
10:22, 11:6, 18:5, 20:21,
23:16, 23:18, 24:9, 24:12,
25:3, 26:6, 26:9, 26:11,
26:21, 26:25, 27:14, 27:16,
27:25, 28:4, 28:10, 28:21,
28:24, 30:23, 31:7, 32:10,
32:14, 32:15, 34:3, 34:16,
34:21, 36:19, 36:20, 41:18,
43:23, 48:24, 56:4, 56:7,
56:13, 59:14, 73:20, 81:10,
81:12, 90:12, 91:1, 91:24,
91:25, 95:20, 95:23, 97:10,
97:14, 98:17, 99:18, 100:5,
102:14, 102:16, 106:20,
107:8
**up-to-date** [1] - 11:6
**update** [1] - 102:22
**ups** [1] - 95:25
**uses** [1] - 18:19
**usual** [3] - 28:23, 36:14,
50:10
**utilize** [1] - 23:25

# V

**vaguely** [1] - 67:1
**Valero** [1] - 27:5
**valid** [1] - 32:12
**value** [3] - 69:1, 95:13, 95:14
**variance** [1] - 55:19
**various** [1] - 37:16

**vast** [2] - 6:18, 34:22
**vehicle** [1] - 17:12
**verbatim** [1] - 52:17
**verification** [11] - 44:11, 44:13, 44:24, 56:22, 60:21, 60:24, 63:15, 63:23, 64:4, 89:15
**verified** [1] - 64:9
**verify** [1] - 62:11
**verifying** [3] - 61:8, 64:14, 64:25
**versa** [1] - 19:16
**version** [2] - 44:25, 45:18
**versus** [12] - 2:6, 2:22, 12:17, 13:5, 16:11, 27:5, 27:12, 29:22, 30:6, 56:9, 89:15, 105:12
**viable** [2] - 18:4, 95:12
**vice** [1] - 19:16
**vice-versa** [1] - 19:16
**Victoria** [2] - 22:23, 22:25
**video** [8] - 17:25, 18:6, 20:16, 22:18, 33:1, 41:16, 97:11, 97:19
**videos** [15] - 5:23, 6:6, 7:9, 14:12, 15:6, 21:9, 21:22, 24:11, 31:19, 32:7, 34:6, 35:7, 50:11, 96:2, 98:9
**view** [13] - 8:2, 36:7, 50:25, 70:17, 74:8, 85:24, 86:15, 89:5, 89:22, 94:13, 95:13, 95:19, 103:8
**violation** [7] - 12:2, 12:3, 12:4, 12:5, 12:8, 14:20
**violations** [1] - 46:3
**virtually** [1] - 49:16
**visit** [1] - 28:17
**visited** [11] - 26:14, 27:6, 27:14, 27:17, 27:25, 28:13, 28:15, 28:20, 50:17, 57:13, 98:22
**voluntarily** [4] - 13:10, 16:6, 16:18, 94:11
**voluntary** [2] - 14:4, 17:9
**vs** [1] - 1:5

**W**

**wait** [6] - 7:2, 30:22, 84:12, 96:25
**waited** [1] - 37:20
**waiting** [1] - 18:21
**WAS** [1] - 40:13
**wash** [2] - 26:23, 26:24
**washing** [1] - 21:2
**watch** [1] - 35:15
**watched** [2] - 20:23, 20:25
**ways** [2] - 103:19, 104:1
**weather** [1] - 22:12
**websites** [1] - 93:2

**week** [4] - 24:10, 65:20, 96:9
**weeks** [1] - 106:11
**Welch** [3] - 93:11, 93:12, 93:13
**welcome** [3] - 45:9, 45:21
**West** [3] - 24:23, 26:21
**whole** [6] - 24:10, 26:10, 50:24, 70:23, 74:12, 102:7
**windshield** [2] - 6:9, 21:2
**Winn** [3] - 93:1, 93:4, 105:20
**Winn-Dixie** [1] - 93:4
**wipe** [1] - 6:8
**wish** [2] - 85:18, 99:15
**withdrawn** [1] - 16:6
**withstand** [1] - 33:14
**witness** [3] - 4:6, 4:7, 4:11
**witnesses** [2] - 3:21, 95:4
**Wittbold** [1] - 12:17
**word** [6] - 20:14, 52:3, 52:6, 52:7, 86:8
**wording** [5] - 18:16, 49:20, 52:23, 52:25, 53:2
**wordings** [1] - 89:1
**words** [4] - 57:18, 58:4, 80:15
**works** [2] - 57:24, 105:6
**worried** [2] - 20:3, 81:9
**worth** [2] - 68:14, 77:16
**write** [3] - 55:17, 70:25, 103:2
**written** [1] - 18:12
**wrote** [1] - 23:14

**X**

**Xeroxing** [1] - 47:12

**Y**

**year** [7] - 7:18, 7:21, 9:24, 15:6, 29:16, 34:12, 34:16
**years** [13] - 5:12, 16:23, 17:4, 18:17, 35:5, 49:23, 68:2, 86:2, 86:3, 92:25, 93:3, 103:22, 105:4
**young** [4] - 56:3, 100:16, 101:8, 101:11
**yourself** [2] - 100:21, 103:5

**Z**

**zero** [1] - 47:24
**zoo** [5] - 24:14, 24:15, 24:16, 24:22, 36:18