## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  18-CV-24586-PCH

ALEXANDER JOHNSON,

     Plaintiff,

v.

OCARIS MANAGEMENT GROUP INC
d/b/a U-GAS EAST FLAGER,

     Defendant.

_____/

### ORDER DENYING PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT

**THIS MATTER** is before the Court on Plaintiff, Alexander Johnson's, Motion for Entry of Final Default Judgment Against Defendant Ocaris Management Group Inc. d/b/a U-Gas East Flagler [ECF No. 16], filed on April 1, 2019 ("Motion"). On May 9, 2019, the Court held a hearing on the Motion at which the Plaintiff, Alexander Johnson, and his attorney, Scott Dinin, appeared and testified under oath. For the reasons set forth below and more extensively discussed at the hearing, the Court vacates its Order Granting Plaintiff's Motion for Final Default Judgment [ECF No. 17], filed April 4, 2019, and denies the Motion.

Plaintiff, Johnson, who is "hearing impaired" and a resident of Broward County, Florida, brought the two-count complaint against Defendant, Ocaris Management Group Inc., doing business as U-Gas East Flager ("U-Gas"). *See* Complaint [ECF No. 1]. This suit is one of 26 identical suits[1] brought by Johnson in this Court against gas station owners located throughout

---

[1] *Johnson v. Hialeah Gas Station Corp.*, 18-cv-24430-PCH; *Johnson v. RSJ Investments, Inc.*, 18-cv-24431-CMA; *Johnson v. CKC Food Stores, Inc.*, 18-cv-24447-PCH; *Johnson v. Lago Express, Inc.*, 18-cv-24439-MGC; *Johnson v. Simonelli USA Corp.*, 18-cv-24482-DPG; *Johnson v. 27th Avenue Caraf, Inc.*, 18-cv-24472-JEM; *Johnson v. Urbieta Group Investments, LLLP*, 18-cv-24474-UU; *Johnson v. Sunshine Gasoline Distributors*, 18-cv-24567-FAM;

Miami-Dade and Broward counties for their failure to provide closed captions or a similar capability which would, as he alleges, entitle him "to comprehend the television media features embedded within the gasoline pumps" (the "gas pump suits").[2] *Id.* at 5. Because of this failure, Johnson alleges that he ". . . is unable to understand the entertainment and news content programming" as presented at the Defendant's gas pumps. *Id.* at 6. Johnson also alleges ". . . because [the U-Gas] gas station is within proximity to Plaintiff's regular travel destinations," he has "patronized Defendant's U-Gas service station in the past and continues to desire to return to purchase gas therein." *Id.* Johnson makes these same allegations in the other 25 gas pump complaints, each of which the Court has reviewed. These allegations form the basis for both Count I, for violation of Title III of the Americans with Disabilities Act ("ADA"), which demands injunctive relief plus reasonable attorney's fees and costs, and Count II, for violation of Florida Statute section 768, the Florida Civil Rights Act ("FCRA"), which demands injunctive relief, compensatory and punitive damages, plus reasonable attorney's fees and costs. *See id.* at 6–12. Johnson has verified the Complaint, declaring under penalty of perjury that the allegations of the "complaint are true and correct to the best of my belief, recollection, and knowledge." *Id.* at 13.

As more fully discussed at the hearing, the Court has substantial concerns about the viability of Johnson's claims and the reasonableness of his and his attorney's request for relief, including attorney's fees and costs. Rather than repeat here all of the reasons for the Court's very

---

*Johnson v. Sunshine Gasoline Distributors, Inc.*, 18-cv-62623-WPD; *Johnson v. Spector Corp.*, 18-cv-62626-BB; *Johnson v. Ocaris Mgmt. Group Inc.*, 18-cv-24586-PCH; *Johnson v. Sunshine Gasoline Distributors, Inc.*, 18-cv-24585-UU; *Johnson v. Sathya Inc.*, 18-cv-24749-MGC; *Johnson v. Fonseca Associates & Partners*, 18-cv-24747-KMW; *Johnson v. Speedway LLC*, 18-cv-62991-BB; *Johnson v. Speedway LLC*, 18-cv-62972-UU; *Johnson v. Speedway LLC*, 18-cv-62998-BB; *Johnson v. Bermans Service Station, Inc.*, 18-cv-63081-DPG; *Johnson v. Hialeah Valero Inc.*, 19-cv-20116-CMA; *Johnson v. Circle K Stores Inc.*, 19-cv-60077-KMW; *Johnson v. Fuel Life 1, LLC*, 19-cv-60231-WPD; *Johnson v. Alex Orion, Inc.*, 19-cv-20372-CMA; *Johnson v. Talanhan LLC*, 19-cv-60755-CMA; *Johnson v. Lejeune Westar Petroleum, LLC*, 19-cv-21106-RNS; *Johnson v. Montebana Fuels LLC*, 19-cv-21105-FAM.

[2] Attached as Exhibit A are photos of a gas station pump video screen.

substantial concerns regarding Johnson's claims as discussed and analyzed at length at the hearing, the Court will provide only a brief summary of them in this order. In addition, the Court adopts and makes part of this order the findings and conclusions announced at the hearing. A transcript of the May 9, 2019 has been docketed as ECF No. 35.

The Court begins with Count II, Johnson's FCRA claim. While the FCRA provides a personal cause of action resulting from discrimination based on "handicap," (*see* Fla. Stat. §§ 760.01–.11), the FCRA unambiguously provides in pertinent part: "If the statute prohibiting unlawful discrimination provides an administrative remedy, the action for equitable relief and damages provided for in this section may be initiated only after the plaintiff has exhausted his or her administrative remedy." Fla. Stat. § 760.07. Section 760.11, titled "Administrative and Civil Remedies; Construction," in turn, unequivocally provides an administrative remedy: "Any person aggrieved by a violation of ss.760.01–760.10 may file a complaint with the [Florida Commission on Human Relations] within 365 days of the alleged violation . . . . Any person aggrieved by a violation of s.509.092 may file a complaint with the commission within 365 days of the alleged violation naming the person responsible for the violation and describing the violation." Fla. Stat. § 760.11.

Thus, the FCRA, in no uncertain terms, requires that Johnson exhaust his administrative remedies before he is legally entitled to bring his FCRA claim for discrimination based on his handicap. "Prior to bringing a civil action, a plaintiff alleging a violation of the FCRA must file a complaint with the Florida Commission on Human Relations ["FCHR"] and follow the administrative pre-suit requirements." *Wittbold v. Miami-Dade Cty.*, No. 11-21922, 2012 WL 3779019, *5 (S.D. Fla. Aug. 31, 2012); *see also Lasky v. 69th St. Props.*, No. 10-60552-CV, 2010 WL 2573754, *1 (S.D. Fla. June 24, 2010); *Gillas v. Sports Authority, Inc.*, 123 F. Supp. 2d 611,

615 (S.D. Fla. 2000).

Here, Johnson has not alleged that he exhausted his administrative remedies (nor has he in the other 25 gas pump suits). *See* Complaint [ECF No. 1]. And at the hearing, Johnson and his attorney acknowledged that Johnson, in fact, had not exhausted his administrative remedies. *See* Transcript [ECF No. 35] at 10. Most concerning is the fact that Johnson and his attorney, Scott Dinin, acknowledge the FCRA's exhaustion requirement, and that they have known this since at least 2014. *See id.* at 10–17. Yet they have continued to file frivolous FCRA handicap lawsuits, demanding compensatory and punitive damages, not only in the 26 gas pump suits but in a large number of other ADA/FCRA lawsuits. *See id.* And Johnson's FCRA claims, when challenged, have been dismissed, either voluntarily or involuntarily since at least 2014. *See, e.g., Johnson v. Wal-Mart Stores, Inc.*, No. 14-cv-60782, ECF Nos. 13, 15 (S.D. Fla. May 14, 2014); *Johnson v. Palm Beach Shores Resort & Vacation Villas Ass'n*, No. 16-cv-81373, ECF Nos. 12, 16 (S.D. Fla. Oct. 5 & 11, 2016); *Johnson v. Yashoda Hospitality, Inc.*, No. 15-cv-611, 2016 WL 6681023 (M.D. Fla. Nov. 14, 2016); *Johnson v. South Beach Wet Willie's Inc.*, No. 18-cv-22783, ECF Nos. 16-17, 20 (S.D. Fla. Aug. 27-28 & Oct. 30, 2018); *Johnson v. Griffin Property Investment LLC*, No. 18-cv-62577, ECF Nos. 17-18 (S.D. Fla. Dec. 4, 2018); *Johnson v. Speedway, LLC*, No. 18-cv-62991, ECF Nos. 23, 25 (S.D. Fla. Feb. 19 & 20, 2019).[3]

Johnson and Dinin's deliberate and continuous assertion of these frivolous FCRA claims not only wastes the Court's time and defendants' resources, but also constitutes a blatant abuse of the judicial system well beyond Rule 11's prohibitions. Such improper behavior may justify the imposition of sanctions greater than merely, and once again, dismissing Count II.

---

[3] Johnson has filed an unexhausted FCRA claim as recently as March 22, 2019. *See Johnson v. Lejeune Wester Petroleum, LLC*, No. 19-cv-21106-RNS.

Accordingly, the Court will require Johnson and his attorney, Dinin, to show cause why additional sanctions should not be imposed pursuant to Federal Rule of Civil Procedure Rule 11(c)(5)(2), and alternatively, the Court's inherent powers.

Turning to Count I, the Court is likewise concerned about the viability of Johnson's ADA claim, a concern which was magnified by Johnson's testimony at the hearing. In summary, the Court finds that Johnson's core ADA allegations were not credible, including, for example, his allegation that he intended to re-patronize U-Gas's gas station (and the other 25 stations) or that Defendant's station (and the other 25 stations) are "within the proximity of Plaintiff's regular travel destinations . . ." Transcript [ECF No. 35] at 24. When questioned why he gassed up at so many different Miami-Dade County stations since he resides in Fort Lauderdale, Johnson explained that he travels to the Miami-Dade County Zoo once a month. *See id.* However, as the Court takes judicial notice, none of those stations are even remotely near any conceivable route between his Fort Lauderdale residence and the zoo. Moreover, Johnson could not explain why if he patronized these Miami-Dade County stations to gas up, he patronized three different stations in close proximity to one another on August 30, 2018, or why he patronized 8 different stations in a four week period except that he "drives around a lot." *See id.* at 26–28. Nor can Johnson rationally explain why all 26 gas stations in a broad two-county area are "within the proximity of his regular travel destinations. . . ."[4] *Id.* at 25. In summary, the Court finds Johnson's ADA allegations and his related testimony not credible or plausible, justifying the dismissal of Count I with prejudice.

In addition, the Court notes that on April 29, 2019, the Honorable Ursula Ungaro, in a *sua sponte* order, dismissed a gas pump suit for lack of standing. *See Johnson v. Sunshine Gasoline*

---

[4] Exhibit B to this order is a list of, and locations of, all the 26 gas stations.

*Distribs., Inc.*, No. 18-cv-24585-UU, 2019 U.S. Dist. LEXIS 72743, *1 (S.D. Fla. Apr. 29, 2019).[5] The Court agrees with Judge Ungaro's analysis of the law and its application to the facts materially identical to those in this case. Therefore, rather than provide a detailed analysis of the law as applied to these facts here, the Court adopts and makes part of this order by reference the legal and factual analysis in Judge Ungaro's order. In determining whether Johnson is entitled to injunctive relief in this case based on whether Johnson has standing by establishing a "real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury," I have considered the four factors set forth in *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1327 (11th Cir. 2013): "(1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business." After doing so, I find that Johnson has not established the requisite real and immediate threat of future injury arising from defendant's failure to provide closed caption or a similar facility for its gas pump videos.[6] For this additional reason, the Court will dismiss Count I with prejudice.

The Court now turns its attention to the matter of its greatest concern—Johnson's request for attorney's fees and costs. Johnson seeks the sum of $7,350 for fees and $493.85 for costs purportedly incurred in prosecuting this unremarkable, boilerplate default case. *See* Exhibit K at 8. In the Court's view, the claimed fees do not reflect the actual time expended to prosecute this

---

[5] A copy of Judge Ungaro's order is attached as Exhibit C.

[6] The Court notes that Johnson alleges that he has been denied access to the "news and entertainment" benefit of the gas pump video presentations. Complaint [ECF No. 1] at 4. However, the contents of these video presentations, based on the Court's observation to the extent that the Court's attention to the videos has been enhanced by this lawsuit, are mostly commercials for products or services. Thus, to the extent that customers even view the videos while pumping gas and cleaning their windshields, the value of the video generally inures to the benefit of the gas station owner, rather than the customer. It is noteworthy that at the hearing, the Court was advised that Johnson settled several other gas pump suits by having the owners disconnect the videos and pay attorney's fees. *See* Transcript [ECF No. 35] at 5–8. Moreover, as Judge Ungaro observes, the videos are analogous to background music played at a restaurant for which auxiliary hearing aids are not required by the ADA. *See McNeil v. Time Ins. Co.*, 205 F.3d 179, 187 (5th Cir. 2000).

case. *See* Transcript [ECF No. 35] at 9–10. Attached to the order as Exhibit D is a copy of Dinin's billing summary in this case.[7] Also attached as Exhibit E is a copy of Dinin's billing summary in *Johnson v. 27th Avenue Caraf*, No. 18-cv-24472-JEM ("*Caraf*"), another gas pump suit in which Johnson also sought a default judgment for injunctive relief and damages together with attorney's fees and costs. Both billing summaries purportedly set forth the description of each task performed, who performed the task, the date the task was performed, the amount of time spent performing the task, the hourly rate attributed to the person performing the task,[8] and the total amount billed for the task. The Court includes Dinin's *Caraf* billing summary because when compared to the billing summary of this case, it reveals a remarkably similar and questionable billing pattern.[9] At the hearing, Dinin confirmed that the information in his summary submitted here was accurate. *See* Transcript [ECF No. 35] at 10.

In order to evaluate the reasonableness of the billing summaries, the Court analyzed all of the billing summary entries. The Court's analysis included, among other things, comparing each docket entry with the related billing information. After doing so, the Court has determined that the billing summaries constitute gross time inflation for the tasks purportedly performed and that numerous entries setting forth the purported task, as well as who performed the task, are simply not credible. It is noteworthy that the defendants did not respond to the complaints, defaults were entered, and there was not a single substantive motion filed except for motions for default judgment, which is not even included in the billing summary here.

The following are just some of the examples of Dinin's highly questionable billing. To

---

[7] Technically, the billing is by Scott Dinin, P.A. However, since Scott Dinin is the firm's owner and sole person who purportedly performed all of the legal work, Dinin, P.A. and Scott Dinin will be referred to collectively as "Dinin."
[8] While Dinin claims to charge $500 per hour for his work, he has never had any bill-paying client, much less any that he charged $500 per hour. *See id.* at 68–69.
[9] Interestingly, the day after the May 9, 2019 hearing in this case, Johnson filed a Notice of Withdrawal of Plaintiff's Motion for Entry of Final Default Judgment in *Caraf*.

begin, the complaints in the 26 gas pump suits are identical except for the defendant's name, the location of the station, and the date or dates on which Johnson "patronized" the station.[10] In turn, the vast majority of the allegations in the gas pump complaints are taken verbatim from Johnson's basic "boilerplate" complaints which he has previously filed in dozens of other ADA cases.[11] Both the complaint in this case and in *Caraf* were drafted after numerous other gas pump complaints had been filed, so there was essentially nothing new, except for details about each station. Yet, Dinin, here, attributed 3.4 hours at $500 per hour for "review file and send to draft complaint" and "draft complaint" and in *Caraf*, 3.5 hours to draft that complaint. *See* Exhibits D, E. After advising that it considered the instant complaint to contain boilerplate verbatim allegations common to the many dozens of other ADA complaints he had filed for Johnson, the Court asked Dinin to tell the Court where it was wrong and to identify different wording among the complaints. Dinin responded, "I don't know if there are [sic] any different wording." Transcript [ECF No. 35] at 52–53. In spite of numerous opportunities to do so, Dinin was unable to provide any credible explanation for the apparently excessive billing for these complaints at $500 per hour except that he is "heavily dyslexic" and needs to reread the complaints. *Id.* at 53–58.

Even more troubling are the billing entries following the drafting of the boilerplate complaints. For example, here, Dinin subsequently billed: "send complaint to client for review" (0.1 hour), "discuss with client" (0.2 hours), "receive client revisions" (one hour), and "finalize client revisions" (0.5 hours). *See* Exhibit D. These entries reflect gross billing inflation given the repetitive nature of the numerous previously filed boilerplate complaints, even if these tasks had actually been performed. However, it appears to the Court that these tasks had not been

---

[10] There was a miniscule difference in a few of the complaints.
[11] The basic "boilerplate" ADA allegations are, of course, stored in Dinin's computer. *See id.* at 52.

performed. There is no apparent need to revise the boilerplate complaint and Dinin was unable to explain why a revision was needed or what the purported revisions may have been. *See* Transcript [ECF No. 35] at 60–63.[12] Further casting doubt on the credibility of these entries is that on October 31, 2018, Johnson executed his verification attached to the complaint, verifying "under penalty of perjury . . . that the allegation in the foregoing complaint are true and correct. . . ." Complaint [ECF No. 1] at 13. At the hearing, Johnson testified that the October 31, 2018 verification was correct and that before he signed it he had "read the final version of the complaint to make sure it was accurate." Transcript [ECF No. 35] at 44–45. However, Johnson's verification and the testimony at the hearing reveal that Dinin's entries regarding the revision of the complaint were chronologically impossible because those tasks were purportedly performed on November 1, 2018, the day <u>after</u> Johnson verified the accuracy of the final version of the complaint. *See id.* at 62–64. Thus, it is obvious that Dinin's November 1, 2018 billing entries are incompatible with Johnson's sworn verification, further undermining the credibility of these entries.

While Dinin testified that he personally performed all of the tasks identified in the summary, including all of the clerical-type tasks such as e-filing court documents, *see id.* at 76, a closer analysis of the summary indicates otherwise. For example, Dinin billed 0.3 hours to "Research prior ADA" on October 23, 2018 and one hour to "Research prior ADA" on November 29, 2018. *See* Exhibit D. These seemingly identical tasks simply entailed pulling up the Court's Pacer system to determine whether a prior ADA suit had been brought against defendant's station. Dinin claims to have personally performed these rather basic tasks. *See* Transcript [ECF No. 35] at 90–92. However, aside from the fact that it is reasonable to assume that such tasks could and

---

[12] Similarly, in *Caraf*, Dinin billed 1.7 hours for revising the complaint after reviewing it with Johnson and obtaining his approval. *See* Exhibit E. Again, Dinin was unable to explain what revisions were made and why it took him 1.7 hours to make them to a boilerplate complaint. *See* Transcript [ECF No. 35] at 66–67.

should be performed by a paralegal, secretary, or junior associate, not a $500 per hour attorney, the billing summary of costs reflects that paralegals, Rebecca Johnson and Stephanie Serrano, not Dinin, were the ones who actually used Pacer on October 23 and November 29, respectively to "Search for Prior ADA." *See* Exhibit D.

As another example, billing entries 26 and 27 of the summary state: "26 – draft and efile status report after scott [Dinin's] approval"(0.5 hours) and "27 – review and approve status report to efile" (0.2 hours). *See* Exhibit D. It appears obvious that entry 26, purportedly Dinin's work, was not performed by Dinin but rather someone else for submission to Dinin for his review and approval, as would be expected regarding another very simple and brief task.

In order to evaluate the reasonableness of the time ascribed to specific billed tasks, the Court has, in both this case and in *Caraf*, compared every one of Johnson's court-filings in the dockets with the time Dinin has ascribed to preparing that filing. In every instance the Court has determined that the time ascribed is unreasonably greater than the filing justifies, even if the work had been performed by a junior associate or qualified paralegal, rather than an experienced $500 per hour lawyer. The following exhibits are some examples of those filings, with the ascribed time noted. The Court gives no further discussion or explanation because the exhibits, which are mostly simple, boilerplate-type filings, speak for themselves:[13]

- Exhibit F, Status Report (0.7 hours)

- Exhibit G, Motion for Entry of Clerk's Default (0.6 hours)

- Exhibit H, Motion for Entry of Clerk's Default (*Caraf*) (1.3 hours)

- Exhibit I, Motion for Extension of Time to File Motion for Final Default Judgment

---

[13] Again, the Court notes the similarity between the filings and billing summaries in this case and in *Caraf*.

(0.6 hours)

- Exhibit J, Motion for Extension of Time to File Motion for Final Default Judgment (*Caraf*) (1.0 hours)

- Exhibit K, Motion for Entry of Final Default Judgment (this filing was not included in the billing summary for this case)

- Exhibit L, Motion for Entry of Final Default Judgment (*Caraf*) (3.0 hours)

In addition to the obvious overbilling for court-filed documents, the Court finds similar overbilling for other reported tasks. For example, here, in billing entries 1 through 4, Dinin ascribes a combined 3.6 hours to "telecon with client on violations," "[complete] initial research and set up file," "meet with client [to] sign retainer," "and "[complete] follow up research following meeting." *See* Exhibit D. Similarly in *Caraf*, in billing entries 1 through 5, Dinin ascribes a combined 2.5 hours to "telecon with client on lack of [closed captions] on gas pumps," "receive and review client email regarding lack of [closed captions] on gas pumps and telecon client," "[create] hard copy folder," "file creation and send retainer to client," and "receive[] signed retainer from client, sign and upload." *See* Exhibit E. These tasks are presumably repeated in and billed for in the other 24 gas pump suits.[14] The Court finds, based on experience, common sense, and the blatant overbilling pattern relating to the court-filed documents, it is not credible that Dinin personally expended all of the reported time performing these tasks, given that many are routine, administrative or clerical tasks or that the times ascribed to these tasks are reasonable. Other examples include, "sent for service," updating client "re: ROS [return of service]" and filing documents with the court. *Id.*

---

[14] While the Court has access to the *Caraf* billing summary, it does not have access to the billing summaries in the other 24 gas pump suits.

In summary, the Court finds that Johnson's submission in support of his claim for fees and costs in this case, as reflected in Dinin's billing summaries and testimony at the hearing, is not credible, reflects blatantly exaggerated overbilling, is misleading, and is an abuse of the judicial process. As a result, the Court concludes that Johnson's request for attorney's fees and costs is not submitted in good faith. Therefore, Johnson is not entitled to recover either attorney's fees or costs.

Finally, in view of Johnson's and Dinin's bad faith in knowingly filing a patently frivolous FCRA claim here, following a pattern of doing so in several dozens of Johnson's cases going back to at least 2014, and submitting a claim for attorney's fees which is not credible and is grossly inflated, it appears that they may have violated Federal Rule of Civil Procedure 11 or have otherwise abused the process of the Court. Accordingly, it is ORDERED that:

1. The Court's Order Granting Plaintiff's Motion for Final Default Judgment [ECF No. 17] is vacated.

2. Motion for Entry of Final Default Judgment [ECF No. 16] is denied, and

3. Pursuant to Federal Rule of Civil Procedure Rule 11(c)(3), or alternatively, pursuant to this Court's inherent power, the Court orders Plaintiff, Alexander Johnson, and his attorney, Scott Dinin, to appear before the Court at 10:00 a.m. on Wednesday, June 12, 2019 to show cause why additional sanctions should not be imposed on them.

**DONE AND ORDERED** in Chambers, at Miami, Florida, on May 3O 2019.

PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

cc: counsel of record