UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEXANDER JOHNSON,

    Plaintiff,                              CASE NO.: 1:18-cv-24586-PCH

v.

OCARIS MANAGEMENT GROUP, INC.
*Doing business as*
U-Gas East Flagler,

    Defendant.
_____/

**RESPONSE TO COURT'S ORDER OF DOCUMENT PRODUCTION**

Scott Dinin, Counsel for Plaintiff, Alexander Johnson, by and through his undersigned counsel files this Reponse to the Court's Order of Document Production and would show unto this Honorable Court as follows:

1. Billing statements for each of the 24 lawsuits Johnson has brought against gas station owners for ADA violations in "Gas Pump Cases."

    a. There are no billing statements as defined by the Court which are similar to those in Case # 18-cv-24586-PCH "Ocaris" or Case # 18-civ-24472-Jem "Caraf Case." Of the remaining "Gas Pump" suits filed by Dinin on behalf of Johnson some were resolved during the litigation and a sum of monies were paid in settlement of the suits. A settlement statement was sent by Dinin to Johnson reflecting the total paid, the costs expended, the attorney's fees paid to Dinin and the remaining compensation paid to Johnson for his general release and hold harmless. No hourly billing statements were provided to anyone. The attorney's fees and total settlement

1

amount were the product of negotiation and agreement. All of the settlement statements are attached hereto, incorporated by reference herein and marked Exhibit 1(a). (Additional cases were settled, as reflected in the attached settlement agreements referenced in Paragraph 10 herein below. Some of the amounts are not yet disbursed and some not yet paid.)

b. Of the remaining cases all unresolved cases including "Caraf" have been dismissed by Mr. Johnson through Mr. Dinin. The cost outlays on said cases, if any, are reflected on the statements from Dinin to Johnson. These statements are attached hereto, incorporated by reference herein and marked Exhibit 1(b).

2. Emails exchanged between Johnson and Dinin as described at page 65 of the Hearing Transcript.

a. On Pages 64 and 65 of the hearing transcript, this Court compared the attorney's fee affidavit and the verification of the Complaint by Johnson which showed that the verification occurred several days prior to the purported revisions in the Complaint reflected in the Affidavit.

b. When questioned by the Court, Mr. Dinin suggested these matters may have happened all at once, he did not have time slips, and as Mr. Dinin said, "He could have signed it and we kept talking." (P.65 line 10)

c. Attached hereto, and incorporated by reference herein is the email sent by Scott Dinin to his client, Alexander Johnson at 1:33 p.m. which is marked Exhibit 2(a). These emails dated October 31, 2018 are entitled "Review Complaint Against Ocaris Management Group d/b/a U-Gas East Flagler."

    i. In the attached Exhibit is the message from Scott Dinin to his client; "See attached complaint review, and if the facts are correct please sign and date the exhibit A verification and return to us…"

  d. Attached hereto as Exhibit 2(b) and incorporated by reference herein was a lengthy reply email from Mr. Johnson to Mr. Dinin entitled in the same language in 2(a) sent on October 31, 2018 at 11:28 p.m. In this email, Mr. Johnson not only suggests several changes but includes at the end of the email:

  "After the above changes, attached find executed Exhibit A verification."

3. The Court next requested all documents reflecting Johnson's proposed revisions to the Complaints in the "Ocaris" and "Caraf" cases.

  a. Attached hereto and incorporated by reference herein are all documents reflecting Alexander Johnson's proposed revisions to the "Ocaris" complaint which is marked exhibit 3(a).

  b. The Court will find marked as 3(a)(1) the initial complaint or template on which Scott Dinin began working on 10/23/2018.

  c. Marked as 3(a)(2) was the initial draft prepared and sent on 10/31/2018 as an attachment to the email identified hereinabove as Exhibit 2(b). Also attached is the verification, predated, and referenced to in both emails.

  d. The third draft, which became the Complaint in "Ocaris" is attached as Exhibit 3(a)(3) and is incorporated herein. This exhibit incorporates the final result of the changes requested by Johnson and the changes which were in fact made. This draft was completed on 11/1/18.

e. The "Caraf" documents requested are likewise attached hereto, incorporated by reference herein and marked Exhibit 3(b).

f. The initial draft attached as 3(b)(1) was prepared on 10/15/18. This is similar to the template referenced hereinabove.

g. An email from Scott Dinin to his client, after conversations with his client and titled, "27th Avenue Caraf Oil-complaint for your review" is attached hereto, incorporated by reference herein and marked Exhibit 3(b)(2). The wording of this email is identical to the one in "Ocaris" and requests comments and changes. It reflects being sent 10/23/2018 at 4:58 p.m.

h. As reflected in the email marked 3(b) (2) a complaint was attached as well as a verification. These are attached hereto, incorporated by reference herein and marked Exhibit 3(b) (3).

i. On 10/25/2018 at 9:56 a.m., Alexander Johnson sent an email responding to Scott Dinin's request for changes. Again, changes are requested and legal strategy is discussed. This email is marked Exhibit 3(b)(4) and is attached hereto and incorporated by reference herein.

j. Revisions as requested were made and an email incorporating draft complaint number 2 was sent on 10/25/2018 at 11:35 a.m. The cover email and revised complaint are attached hereto, incorporated by reference herein and marked Exhibit 3(b)(5).

k. After further conversations, a final draft was submitted and accepted on 10/26/2018 at 9:06 a.m. Same is attached hereto, incorporated by reference herein and marked

4

Exhibit 3(b)(6).

4. Contemporaneously taken notes mentioned at Transcript pages 65 and 99 relating to "Ocaris" and "Caraf."

    a. After diligent search, no such notes are any longer in existence. Mr. Dinin after preparing the documents related to the Defaults and attorney fee affidavits did not keep the rough notes and records which he used to reconstruct his time. However, in answers to be provided herein below, the Court should be able to confirm the constant and persistent communications between Mr. Dinin and Mr. Johnson.

5. Contemporaneously made Time Sheets and notes showing work performed by Dinin, paralegals and other employees in Dinin's office in "Ocaris" and "Caraf" cases including records on "all" my pads" referenced in transcripts at page 102.

    a. The pads referred to at page 102 would contain the same rough notes and records referred to on pages 65 and 99, and were as in those cases disposed of after the final default related documents were finalized. However, as mentioned by Scott Dinin at page 102 of the transcript, he sorely lacked the requisite experience to properly run a law office, to appropriately keep records of billable hours or maintain time management records. It would be helpful for the Court to know the following with regard to Mr. Dinin's background and history as an attorney.

        i. Mr. Dinin, due to his learning difficulties as described in the Transcript of the hearing, has no high school diploma.

        ii. He failed out of college on his first attempt after his father died when he was 20.

      iii. Eventually went back to school and received a 2 year M.B.A. at the University of San Diego.

      iv. Passed the Bar exam in 1995.

      v. Admitted to the Bar in 1996, unable to find <u>any</u> employment as a lawyer

      vi. His work history from 1993 is as follows;

          1. Lexis-Nexis Business Services (1993-1999)

          2. Auto Parts Sales, Autobahn (1999-2001)

          3. Turn-Around Associates (2001-2004)

          4. Real Estate Sales (2004-2006)

          5. Real Estate Broker (2006-2008)

          6. Solo Practitioner (2008-2019)

      vii. Mr. Dinin had his first client in 2008.

      viii. Mr. Dinin's first ADA case was in 2012.

      ix. Mr. Dinin's first actual trial was in 2017 and he associated experienced counsel to try the case with him.

      x. He has not had any hourly billing clients and most of his fees are contingent and based on settlements.

6. Print-out of computer generated template for complaint filed in the "Gas Pump Cases"

    a. Already provided as part of Exhibit 3. Additional computer generated templates are attached as Exhibit 6(a) are attached hereto and incorporated by referenced herein.

    b. The template used comprise Version 1 and were used in the following;

      i. RSJ Investments

6

      ii. Lago Express Ltd.

     iii. Simonelli

     iv. 27th Ave Caraf

      v. Griffin Property

     vi. Urbieta Group

    vii. Ocaris

c. Attached hereto as Exhibit 6(b) and incorporated by reference herein which comprise Template Version 2 were used in the following:

      i. Fonseca Associates

     ii. Saytha

d. Attached hereto as Exhibit 6(c) and incorporated by referenced herein comprise Template Version 3 and were used in the following:

      i. Bermans Service Station

     ii. Circle K Stores

     iii. Hialeah Valero

e. Attached hereto and incorporated by reference herein as Exhibit 6(d) is Template Version 4 which was used in the matters identified as;

      i. Fuel Life 1

     ii. Montebana Fuels

     iii. Le Jeune Westar Petroleum

     iv. 2721 Le Jeune Investments

      v. 7-Eleven, Inc.

      vi. MC Energy

      vii. Alex Orion

      viii. Talanhan

  f. Attached hereto as Exhibit 6(e) and incorporated by reference herein is Template Version 5 which was used in matters identified as;

      i. Baby Marathon

      ii. Ednic Trading

      iii. Northwest Marathon

      iv. Synergy Petroleum

      v. Urbreta Store Operations

  g. Attached hereto as Exhibit 6(f) and incorporated by reference herein is Version 6 of the Template used for CC Gas Station only.

7. A printout of the computer generated template for Johnson ADA cases for the past six months (including gas pump cases).

  a. A total of 15 ADA cases were filed by Alexander Johnson in the six months period prior to October 25, 2018.

  b. The cases filed involved several different alleged ADA violations. Each of the Exhibits number 7(a) – 7(h) are the templates used for one or more of the suits. They are as follows;

      i. 7(a) – Milos Enterprises described as Service Dog Food Franchise

      ii. 7(b) – Be True LLC and South Beach Wet Willies described as Service Dog Restaurant / Deli / Bakery

8

       iii. 7(c) – Comcast Cable described as closed captions

       iv. 7(d) – Whitelaw Hotel described as TTY- Physical Visit

       v. 7(e) – City of Dania Beach described as Title II 504 Service Animal

       vi. 7(f) – Ocean Plaza 625 described as TTY- Physical Visit and Call

       vii. 7(g) – Universal Holding, Peoples Trust described as closed captions – web (or website)

       viii. 7(h) – Driver's Education Com described as Closed Captions Web

       ix. 7(i) – 4 "Gas Pump" cases described as closed captions – gas stations

8. All documents related to the use of the PACER System

    a. Attached hereto and incorporated by reference herein and marked Exhibit 8(a)(1-4) are the following documents generated in the "Ocaris" case;

       i. Exhibit 8(a)(1) is a pacer receipt dated 11/29/2018 a civil party search, a specific and a search receipt for Ocaris Management.

       ii. Exhibit 8(a)(2) is a SunBiz search dated 10/16/18 for Ocaris

       iii. Exhibit 8(a)(3) is a Pacer Service Center receipt dated 10/23/2018 for Ocaris and follow up on contemporaneous searches for U Gas and also for bankruptcy records.

       iv. Exhibit 8(a)(4) are additional Pacer searches dated 11/29/18 for U Gas and Ocaris.

    b. Attached as Exhibit 8(b) and incorporated by reference herein are additional Pacer searches for "Caraf."

9. Correspondence and other forms of communication between Dinin and the Plaintiff

    a. As indicated at line 25 on page 87 of the transcript. Mr. Dinin sent communications to Plaintiff on February 14, 2019 and March 14, 2019 to Ocaris, its corporate representative and U Gas, as cumulative Exhibit 9, by priority mail. See attached receipts and included copies of the proposed Complaint to Defendant and/or its representatives.

10. Additional documents for Court to Consider at June 12, 2019 hearing.

    a. Attached hereto, incorporated by reference herein and marked Exhibit 10(a) pursuant to this Court's Order in <u>Johnson v. CKC Food Stores, Inc.</u>, Case number 18-cv-24447-HUCK/McAliley, a copy of the Confidential Settlement Agreement as well as correspondence between Dinin and Defendant C.K.C. Food Stores and counsel.

    b. Exhibit 10(b) attached hereto incorporated by reference herein a method of communication between Johnson and Dinin established ADA violation for Scott Dinin to use in lawsuit on behalf of Johnson.

    c. Exhibit 10(c) attached hereto incorporated by reference herein a positive actions taken by Mr. Dinin in an effort to address issues raised by this Court at the default hearing and to improve his practice.

    d. Exhibit 10(d) attached hereto incorporated by reference herein an Order from Judge Bloom denying Defendant Motion to Dismiss in a "Gas Pump" case brought by Dinin establishing that, for Judge Bloom, a cause of action was made with standing being satisfied for ADA purposes.

    e. Exhibit 10(e) attached hereto incorporated by reference herein a letter from

      University of Miami Health Systems confirming an appointment set up by Dinin in effort to deal with his visual sequence disorder.

  f. Exhibit 10(f) attached hereto incorporated by reference herein are settlement agreements on the settled "gas pump" cases which are;

     i. Fonseca Associates
     ii. 7-Eleven
     iii. Speedway
     iv. CKC Foods
     v. McEnergy, LLC
     vi. Urbieta Group
     vii. LeJeune Weston
     viii. Hialeah Valero
     ix. Montebana Fuels
     x. Fuel Life
     xi. Griffin Property
     xii. Sunshine Gasoline Distributers, Inc.

  g. Exhibit 10(g) attached hereto incorporated by reference herein is an email confirmation for D.D.C.S. Administrative Management Review (previously known as Law Office Management Assistance Services), a Florida Bar service to assist in the administration and management of Mr. Dinin's office to recognize any deficiencies in his administrative practices and improve upon them.

Respectfully submitted,

*/s/ Alvin E. Entin*
Alvin E. Entin, Esq.
Fla. Bar No. 127027
aentin@hotmail.com
Entin Law Group, P.A.
633 South Andrews Avenue, Suite 500
Ft. Lauderdale, Florida 33301
Tel: (954) 761-7201 / Fax: (954) 764-2443

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 5, 2019 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

ENTIN LAW GROUP, P.A.
The Litigation Building, Suite 500
633 South Andrews Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 761-7201
Facsimile: (954) 764-2443

By:/s/ *Alvin E. Entin*
    ALVIN E. ENTIN
    Fla. Bar. No. 127027