**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  18-CV-24586-PCH**
**CASE NO. 18-CV-24472-JEM**

ALEXANDER JOHNSON,

      Plaintiff,

v.

OCARIS MANAGEMENT GROUP INC
d/b/a U-GAS EAST FLAGER,

      Defendant.

_____/

ALEXANDER JOHNSON,

      Plaintiff,

v.

27TH AVENUE CARAF, INC. d/b/a Caraf Oil,

      Defendant.

_____/

## ORDER IMPOSING SANCTIONS

Twenty-nine years ago, Congress passed the Americans with Disabilities Act ("ADA") in an effort to remove and prevent barriers for the disabled. *See generally* 42 U.S.C. § 12101, *et seq.* The statute authorizes parties to file lawsuits against those who violate the ADA in order to benefit the disabled whom the ADA serves to protect. *Id.* Lawyers who champion these cases are granted reasonable attorney's fees for advancing Congress's laudable goal of protecting the disabled community. *Id.* This is not one of those cases. This case reveals an illicit joint enterprise between Plaintiff, Alexander Johnson, and his attorney, Scott R. Dinin of Scott R. Dinin P.A., to dishonestly

line their pockets with attorney's fees from hapless defendants under the sanctimonious guise of serving the interests of the disabled community. Through this illicit joint enterprise, Johnson and Dinin filed numerous frivolous claims, knowingly misrepresented the billable time expended to litigate these claims, made numerous other misrepresentations to the Court, and improperly shared attorney's fees in violation of the Rules Regulating the Florida Bar, all done without regard to the interests of those with disabilities.[1]

## I.  BACKGROUND

Johnson, who is hearing-impaired and a resident of Broward County, Florida, brought a two-count complaint against Defendant, Ocaris Management Group Inc., doing business as U-Gas East Flagler (*Johnson v. Ocaris Management Group Inc.* (Case No. 18-cv-24586-PCH)) ("*Ocaris*") and Defendant, 27th Avenue Caraf, Inc. doing business as Caraf Oil (*Johnson v. 27th Avenue Caraf, Inc.* (Case No. 18-cv-24472-JEM)) ("*Caraf*"). *See generally Ocaris*, [ECF No. 1]; *Caraf*, [ECF No. 1]. These cases are two of 26 identical cases[2] brought by Johnson in this Court against gas station owners located throughout Miami-Dade and Broward counties for their failure to provide closed captions or a similar capability which would, as he alleges, allow the hearing-impaired "to comprehend the television media features embedded within the gasoline pumps"

---

[1] Both Johnson and Dinin are serial ADA case filers. Dinin has filed a total of 653 cases between November 2013 and March 2019 with Johnson as the plaintiff in 131 of those cases.

[2] *Johnson v. Hialeah Gas Station Corp.*, 18-cv-24430-PCH; *Johnson v. RSJ Investments, Inc.*, 18-cv-24431-CMA; *Johnson v. CKC Food Stores, Inc.*, 18-cv-24447-PCH; *Johnson v. Lago Express, Inc.*, 18-cv-24439-MGC; *Johnson v. Simonelli USA Corp.*, 18-cv-24482-DPG; *Johnson v. 27th Avenue Caraf, Inc.*, 18-cv-24472-JEM; *Johnson v. Urbieta Group Investments, LLLP*, 18-cv-24474-UU; *Johnson v. Sunshine Gasoline Distributors*, 18-cv-24567-FAM; *Johnson v. Sunshine Gasoline Distributors, Inc.*, 18-cv-62623-WPD; *Johnson v. Spector Corp.*, 18-cv-62626-BB; *Johnson v. Ocaris Mgmt. Group Inc.*, 18-cv-24586-PCH; *Johnson v. Sunshine Gasoline Distributors, Inc.*, 18-cv-24585-UU; *Johnson v. Sathya Inc.*, 18-cv-24749-MGC; *Johnson v. Fonseca Associates & Partners*, 18-cv-24747-KMW; *Johnson v. Speedway LLC*, 18-cv-62991-BB; *Johnson v. Speedway LLC*, 18-cv-62972-UU; *Johnson v. Speedway LLC*, 18-cv-62998-BB; *Johnson v. Bermans Service Station, Inc.*, 18-cv-63081-DPG; *Johnson v. Hialeah Valero Inc.*, 19-cv-20116-CMA; *Johnson v. Circle K Stores Inc.*, 19-cv-60077-KMW; *Johnson v. Fuel Life 1, LLC*, 19-cv-60231-WPD; *Johnson v. Alex Orion, Inc.*, 19-cv-20372-CMA; *Johnson v. Talanhan LLC*, 19-cv-60755-CMA; *Johnson v. Lejeune Westar Petroleum, LLC*, 19-cv-21106-RNS; *Johnson v. Montebana Fuels LLC*, 19-cv-21105-FAM.

(the "gas pump cases"). *Ocaris*, [ECF No. 1] at 5. Because of this failure, Johnson alleges that he ". . . is unable to understand the entertainment and news content programming" as presented at the Defendants' gas pumps. *Id.* at 6. These allegations, common to all the gas pump cases, form the basis for both Count I, for violation of Title III of the Americans with Disabilities Act, which demands injunctive relief plus reasonable attorney's fees and costs, and Count II, for violation of Florida Statute section 768, the Florida Civil Rights Act ("FCRA"), which demands injunctive relief, compensatory and punitive damages, plus reasonable attorney's fees and costs. *See id.* at 6–12.

On May 9, 2019, this Court held an evidentiary hearing on Johnson's Motion for Entry of Final Default Judgment Against Defendant Ocaris Management Group Inc. *See Ocaris*, [ECF No. 35]. At the hearing, the Court made several findings which are detailed in the Court's May 30, 2019 Order Denying Plaintiff's Motion for Final Default Judgment ("the Show Cause Order").[3] *Ocaris*, [ECF No. 36]. At the May 9, 2019 hearing this Court found that Johnson and Dinin knowingly filed frivolous claims for damages under the Florida Civil Rights Act to which both knew Johnson was not entitled because he had failed to exhaust his administrative remedies. *See generally Ocaris*, [ECF No. 35]. This Court also found that Dinin had egregiously inflated and misrepresented his billable time in both *Ocaris* and *Caraf*.[4] *Id.* In the Show Cause Order, the Court ordered both Johnson and Dinin to appear at an evidentiary hearing to show cause why sanctions should not be imposed on them pursuant to Federal Rule of Civil Procedure 11(c) and the Court's inherent power. *Ocaris*, [ECF No. 34, 36] at 12. Subsequently, the Court added Local Rule 11.1(c)

---

[3] The Court hereby adopts all factual and legal findings made in the Show Cause Order. *See Ocaris*, [ECF No. 36].

[4] This Court presides over *Ocaris*, but the Honorable Jose E. Martinez presides over *Caraf*. Johnson and Dinin requested that this Court consolidate the cases for the purposes of imposing sanctions because the improper conduct is nearly identical in both cases. *See* Orders Consolidating Rule to Show Cause Hearings in *Ocaris*, [ECF No. 43] and *Caraf*, [ECF No. 20]. Therefore, this order imposes sanctions in both *Ocaris* and *Caraf*.

as another basis for the imposition of sanctions. *Ocaris*, [ECF No. 67]. The Court also ordered

Johnson and Dinin to produce various documents from not only the gas pump cases, but also a

sampling from their other ADA cases. *See Ocaris*, [ECF Nos. 34, 43, 47, 57, 60, 66, 75, 76, 82].

Johnson and Dinin produced these and other documents of their choice to the Court and, along

with their attorneys, appeared at the show cause hearing on July 22, 2019.[5] At the show cause

hearing, the Court determined that sanctions were warranted and dismissed both the *Ocaris* and

*Caraf* cases. *Ocaris*, [ECF No. 78] at 90; *see also Ocaris*, [ECF No. 35] at 36–38. In this Order,

the Court outlines Johnson and Dinin's unethical and sanctionable conduct, conducted in bad faith,

and imposes additional sanctions on both.

## II.      AUTHORITY TO IMPOSE SANCTIONS

Federal Rule of Civil Procedure 11(b) states that

> [b]y presenting to the court a pleading, written motion, or other
> paper—whether by signing, filing, submitting, or later advocating it—
> an attorney or unrepresented party certifies that to the best of the
> person's knowledge, information, and belief, formed after an inquiry
> reasonable under the circumstances: . . . the claims, defenses, and
> other legal contentions are warranted by existing law or by a
> nonfrivolous argument for extending, modifying, or reversing existing
> law or for establishing new law . . . , [and] the factual contentions have
> evidentiary support or, if specifically so identified, will likely have
> evidentiary support after a reasonable opportunity for further
> investigation or discovery.

In deciding whether to impose sanctions for a violation of Rule 11, the Court must consider "(1)

whether the party's claims are objectively frivolous; and (2) whether the person who signed the

pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516,

524 (11th Cir. 1998). Sanctions pursuant to Rule 11 "are warranted when a party files a pleading

that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance

---

[5] The Court hereby adopts all oral factual and legal findings made at the July 22, 2019 show cause hearing. *See Ocaris*,
[ECF No. 78].

of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Id.*

The Court may also issue sanctions pursuant to its inherent power. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). "The key to unlocking a court's inherent power is a finding of bad faith. A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (internal citations and quotations omitted). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 1215.

This District's Local Rule 11.1 also gives it authority to impose sanctions. Local Rule 11.1(c) states: "The standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating the Florida Bar. For a violation of any of these canons in connection with any matter pending before this Court, an attorney may be subjected to appropriate disciplinary action."

## III.   DISCUSSION

The Court finds that Johnson's and Dinin's egregious actions and bad faith concerning their ADA cases warrant sanctions for several reasons: (1) Dinin and Johnson abused the ADA solely for their own financial gain including, but not limited to knowingly and continuously filing frivolous claims;[6] (2) Dinin knowingly and grossly inflated, and then misrepresented, the time he expended in litigating *Ocaris*, *Caraf*, and other ADA cases; (3) Dinin and Johnson made several misrepresentations to the Court concerning material matters, many under oath, in *Ocaris*, *Caraf*, and other ADA cases; and (4) Dinin and Johnson shared attorney's fees from their ADA cases in violation of the Rules Regulating the Florida Bar.

---

[6] In its Show Cause Order, the Court fully described Johnson and Dinin's unethical conduct in repeatedly alleging frivolous claims, when they knew those claims had no merit.

### A. Dinin and Johnson Acknowledge Abuse of the ADA

Now represented by very competent and experienced legal counsel, and now that their illicit joint enterprise has been exposed, Johnson and Dinin acknowledged their ethical transgressions at the show cause hearing. *See generally Ocaris*, [ECF No. 78]. And, in an obvious effort to minimize potential sanctions, Johnson and Dinin proposed that their transgressions, while serious, were merely the result of Dinin's inexperience, lack of legal sophistication, incompetence, and of Johnson's reliance on the advice of his attorney, rather than intentional malfeasance. *Id*. In effect, Johnson and Dinin's defense is one of "empty head but a pure heart."[7] There are two problems with this argument. First, "[a]n empty head but a pure heart" does not constitute a defense for their transgressions. *See Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986). And more importantly, as discussed at the two hearings and below, Johnson and Dinin's own statements and documents clearly reveal neither acted with a pure heart. Rather, each deliberately and knowingly abused the ADA and the legal system solely for their own financial gain, and in total disregard of the hearing-impaired for whom they sanctimoniously but disingenuously professed to have brought these lawsuits. In doing so, they have, unfortunately, undermined the credibility of legitimate ADA cases.

### B. Systemic Inflated Billing

The Court finds that in both *Ocaris* and *Caraf*, as well as in other ADA cases, Dinin egregiously inflated his attorney's fees claims by overbilling for simple, repetitive tasks and by billing for work which he did not perform. Some examples of Dinin's pattern of overbilling in *Ocaris* and *Caraf* are detailed in the Court's Show Cause Order; thus, the Court will not repeat

---

[7] *See Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986) (rejecting a party and her attorney's contentions that their misrepresentations in court were excusable because they misunderstood the law and referring to their defense as one of "empty head but a pure heart").

6

those findings here. *See generally Ocaris*, [ECF No. 36]. However, Johnson and Dinin produced additional documents subsequent to that Order which not only further substantiate the Court's finding of Dinin's gross overbilling in *Ocaris* and *Caraf*, but reveal systemic misrepresentations of his billing throughout Johnson and Dinin's ADA litigation. The Court has determined that the abusive overbilling and frivolous claims are not limited to the gas pump cases. The additional documents disclose gross overbilling and other wrongdoings that permeate other ADA cases filed by Dinin for Johnson and other plaintiffs. Dinin's systemic overbilling is disclosed by the Court's further review of Dinin's work product compared to the time he claims he expended to produce it. Again, Dinin claimed fees from the Court far in excess of what is reasonable to perform tasks. When faced with these disclosures, Dinin readily admitted his improper billing practices. *See Ocaris*, [ECF No. 78] at 19, 36–37, 75–83.

In *Johnson v. Roshni Investments Group, Inc.* (Case No. 17-cv-60990-WPD), one of numerous cases brought against hotels, including frivolous FCRA claims, Johnson and Dinin sought a default judgment, claiming attorney's fees even more inflated than those claimed in *Ocaris* and *Caraf*.[8] For example, Dinin billed 6.2 hours at $400 per hour to draft, review, and file, as filed here, a boilerplate complaint virtually identical to those which Dinin previously filed in his numerous other ADA cases, including many against other hotels. *Roshni*, [ECF No. 17-1] at 6. The only non-boilerplate allegations in the *Roshni* complaint were the defendant's name and miniscule factual differences. *See Ocaris*, [ECF No. 78] at 27–28. Dinin also billed 1.8 hours to draft and file a simple form motion for clerk's default, and billed 1.7 hours to draft an Amended Complaint where he merely changed the name of the defendant from "Roshni Investments L.L.C."

---

[8] Based on the large number of ADA cases that Johnson and Dinin have filed, it is not an illogical leap to conclude that these same abuses occurred in some or all of those cases. However, that is speculative and is not taken into account by the Court in formulating appropriate sanctions here.

to "Roshni Investments Group, Inc." *See Roshni*, [ECF No. 17-1] at 6; *compare Roshni*, [ECF No. 1] *with Roshni*, [ECF No. 10; *see also Roshni*, [ECF No. 8].

Similarly, in *Ocaris*, the additional documents reveal Dinin billed 1.5 hours to "receive" and "finalize client revisions" to the proposed draft complaint pursuant to an e-mail instruction from Johnson. *Ocaris*, [ECF No. 16-1] at 4. However, Johnson's e-mail reveals that only three de minimis changes were made: to correct a typographical error and to minimally reword two sentences. *See Ocaris*, [ECF No. 39-2] at 1–5. And, in *Caraf*, Dinin billed 0.7 hours to make several similarly de minimis changes to the complaint such as: to change three words from the plural to the singular, to add "(a)" and "-" to legal citations, and to remove one sentence from the proposed complaint.[9] *Caraf*, [ECF No. 12-1] at 6; *Ocaris*, [ECF No. 39-3] at 70–73. It is unreasonable for Dinin to claim the amounts he did to make such limited changes. These are only a few examples of Dinin's systemic and unethical overbilling which he misrepresented to the Court to be true accountings of the time he actually expended.

Moreover, at the May 9, 2019 hearing, Dinin's various explanations in response to the Court's expressed concerns were implausible, misleading, and unconvincing. For example: "typos;" "scrivener's errors;" the entry is "wrong;" lack of qualified support staff; his dyslexia; maybe some other work, not described, is combined with the described work; his inexperience in running a law office, etc. *See Ocaris*, [ECF No. 35] *passim*. Notably, at the show cause hearing, Dinin's attorney not only acknowledged the overbilling, but acknowledged that "[Dinin] was not totally candid with the Court in response to [the Court's] questioning" and Dinin should have advised the Court that he does not maintain contemporaneous time records and that Dinin's billing representation to the Court "was all an estimate." *See Ocaris*, [ECF No. 78] at 19, 77. Consistent

---

[9] Below, the Court will discuss in detail this deleted sentence as it exposes the true motive for this illicit joint enterprise.

8

with Dinin's lack of candor with the Court, not only did Dinin omit to disclose to the Court that he did not maintain contemporaneous time records and that his billing reports "were all an estimate," Dinin represented to the Court that he did keep contemporaneous time records. *See Ocaris*, [ECF No. 35] at 43, 65, 99, 102.[10]

Ironically, in Dinin's memorandum filed in anticipation of the show cause hearing, Dinin's attorney cites the following quote from *Baruch v. Giblen*, 164 So. 831, 833 (Fla. 1935):

> There is but little analogy between the elements that control the determination of a lawyer's fee and those which determine the compensation of skilled craftsmen in other fields. Lawyers are officers of the court. The court is an instrument of society for the administration of justice. Justice should be administered economically, efficiently, and expeditiously. The attorney's fee is, therefore, a very important factor in the administration of justice, and if it is not determined with proper relation to that fact it results in a species of social malpractice that undermines the confidence of the public in the bench and bar. It does more than that. It brings the court into disrepute and destroys its power to perform adequately the function of its creation.

Here, we have precisely the species of "social malpractice" that the Florida Supreme Court had in mind—undermining public confidence in lawyers and the judicial system.[11]

## C. Misrepresentations to the Court

In addition to their misrepresentations regarding their claims for reasonable attorney's fees, both Johnson and Dinin made several other misrepresentations to the Court in litigating their ADA cases, several under oath. Rule 4-3.3(a)(1) of the Rules Regulating the Florida Bar states, "A

---

[10] This recent disclosure explains why Dinin did not comply with the Court's April 4, 2019 order to "appear at the [May 9, 2019] hearing and make available appropriate evidence to support his claim for damages, fees, and costs, including original contemporaneously prepared time records representing legal services provided." *Ocaris*, [ECF No. 17] at 3–4.

[11] *See* Raychel Lean, *Florida's Serial ADA Lawsuits: Long Overdue or 'Legal Extortion*,' Daily Business Review (Nov. 1, 2018), https://www.law.com/dailybusinessreview/2018/11/01/floridas-serial-ada-lawsuits-long-overdue-or-legal-extortion/ and Raychel Lean, *Closed Captioning on Gas Pump TVs – the New Frontier of Florida's ADA Suits*, Daily Business Review (Jan. 17, 2019), https://www.law.com/dailybusinessreview/2019/01/17/closed-captioning-on-gas-pump-tvs-the-new-frontier-of-floridas-ada-suits/ (raising serious questions about potentially abusive attorney's fee claims in serial ADA cases).

lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." The Court finds that Dinin, in making several misrepresentations outlined next, violated Rule 4-3.3(a)(1).

### 1. Dinin Misrepresented His Legal Qualifications

To begin, during the May 9, 2019 hearing on the Motion for Default Judgment, Dinin attempted to justify his claimed $500 per hour billing rate by representing in some detail that he is a highly qualified, experienced litigation attorney. *See generally Ocaris*, [ECF No. 35]. Dinin has repeatedly made that same representation in support of his claims for attorney's fees in other ADA cases. *See e.g., Roshni*, [ECF No. 17-1]. However, after the hearing and contrary to those earlier representations, Dinin submitted a memorandum of law in an apparent attempt to explain that his improper conduct was inadvertent and the result of his inexperience and incompetence; that "he sorely lacked the requisite experience to properly run a law office, to appropriately keep records of billable hours or maintain time management records." *Ocaris*, [ECF No. 39] at 5. Dinin also disclosed that he "has no high school diploma," he "failed out of college on his first attempt," and while he was "[a]dmitted to the Bar in 1996 [he was] unable to find <u>any</u> employment as a lawyer." *Id.* at 5–6 (emphasis in original). During the next 12 years, Dinin worked in a number of nonlegal jobs. *Id.* at 6. Dinin did not have his first legal client until 2008 when he began his law practice as a sole practitioner, and he had his first ADA case in 2012. *Id.* Dinin's "first actual trial was in 2017 and he associated experienced counsel to try the case with him." *Id.* At the show cause hearing, Dinin's counsel also posited that Dinin was not qualified to hold himself out as an experienced attorney. *See Ocaris*, [ECF No. 78] at 75–77. These disclosures stand in stark contrast with Dinin's representations to this and other courts that he is a highly competent, experienced litigation attorney entitled to the generous hourly rate he purports to merit.

Dinin's recent disclosure of when he started to practice law, stands in direct conflict with his numerous misrepresentations to this and other courts. While he now admits that he didn't practice law until 2008, in support of his attorney's fees application in both *Roshni* and *Johnson v. Winn-Dixie Stores, Inc.* (Case No. 16-cv-61308-WPD), Dinin represented that he began practicing law in 1996. *Roshni*, [ECF No. 17-1] at 1; *Winn-Dixie*, [ECF No. 70-1] at 1. In *Caraf*, Dinin represented that he has practiced law since 2001. *Caraf*, [ECF No. 12-1] at 4.

Both to this Court and others, Dinin has touted his ADA trial experience by referring to his success in the trial of *Juan Carlos Gil v. Winn Dixie Stores, Inc.* (Case No. 16-cv-23020), misleadingly implying that he actually tried that case. For example, in *Johnson v. Winn-Dixie Stores, Inc.* (Case No. 16-cv-61308-WPD), Dinin did not disclose, as he does now, that due to his complete lack of trial experience he wisely engaged the services of a trial lawyer to actually try the case. *See Winn-Dixie*, [ECF No. 70-1] at 3. Rather, Dinin, taking full credit, represented that he "was Plaintiff's attorney at trial before the Honorable [Robert N.] Scola in *Juan Carlos Gil v*[.] *Winn Dixie Stores, Inc.*[,] No. 16-cv-23020," and that "[a]t trial, [he] presented facts and evidence proving that Winn Dixie Stores, Inc. failed to make provisions for the blind and visually impaired within its website." *Id.* In reality, however, as a review of the *Gil* trial transcript reveals, Dinin did not utter a single word during the two-day bench trial. *See Winn-Dixie*, [ECF Nos. 64, 65]. And, the *Gil* trial is the only trial which Dinin purports to have tried.

### 2. *Dinin Misrepresented Assistance Available to His Firm*

At the May 9, 2019 hearing, Dinin also attempted to excuse his clearly excessive billing and other shortcomings in handling his voluminous ADA cases by representing that he did not have a qualified or "licensed" paralegal, or other qualified staff, who could assist him. *See Ocaris*, [ECF No. 35] *passim*. Thus, he had to perform and bill for many simple, repetitive, and

administrative tasks which, he admits, would otherwise properly be performed by a competent paralegal or junior associate. *Id.* at 71–72, 91–93. This was yet another misrepresentation. Dinin had several paralegals to assist him, one of whom we now know is extremely experienced and competent in ADA litigation. Karen Leicht's LinkedIn profile reveals that she has worked with Dinin from 2009 (not long after Dinin began practicing law) to 2012 and then from 2014 to now, and that she received a Bachelor of Science degree in Accounting in 1979 and a Master's degree in Business Administration in 1981 from San Diego State University.[12] Leicht claims to be a "senior paralegal" at Dinin's firm with extensive experience handling all facets of ADA litigation in federal court.[13] She also claims to train the firm's other nine staff members.[14]

At the May 9, 2019 hearing, Dinin claimed that he could not, and therefore did not, bill for his paralegals' work because they were not "licensed." *See Ocaris*, [ECF No. 35] at 99–100. This explanation is unconvincing. There is no paralegal "licensure" in Florida and no requirement that a paralegal be licensed for billing or any other purpose.[15] It is implausible that someone as well

---

[12] *See Karen Leicht LinkedIn Profile*, LinkedIn, https://www.linkedin.com/in/karen-leicht-a0861271 ("All aspects of USDC litigation (Florida, New York, Illinois). ADA law, contracts, insurance, maritime. Include [sic]: Complaints; Answers & Affirmative Defenses; Responses to Motions to Dismiss, Motions for Summary Judgment, and Show Cause Orders; Motions to Dismiss; Summary Judgments; Discovery propounding and response. Correspondingly all filings in state matters – insurance and PI. Draft wills and trusts. Train all staff in office in all positions (9 staff members).").

[13] *Id.*

[14] *Id.*

[15] While there is no licensing requirement, Chapter 20 of the Rules Regulating the Florida Bar, provides a purely voluntary process by which a paralegal may "register," which registration is not required in order to allow an attorney to bill for a paralegal's work done under the attorney's supervision. Thus, Leicht, who is extremely well qualified to serve as Dinin's paralegal, need not be licensed or even registered to do so. Although it is not clear whether Leicht voluntarily registered, it is beyond dispute that she far exceeds the registration qualifications. Rule 20-3.1 of the Rules Regulating the Florida Bar sets forth the modest qualifications for voluntary registration, and Leicht's profile confirms that she far exceeds them. *See FAQs About Registration and the Program*, The Florida Bar, https://www.floridabar.org/about/frp/faq-registration/#Do; *Karen Leicht LinkedIn Profile*, LinkedIn, https://www.linkedin.com/in/karen-leicht-a0861271.

qualified in ADA litigation as is Leicht, that she, or one of Dinin's other paralegals, [16] did not perform many of the billed-for-tasks which Dinin attributed to himself. Dinin's explanation that he had to perform and bill for all of the reported tasks because he had no licensed paralegal is equally implausible.[17]

### 3. *Johnson and Dinin Misrepresented Their True Motive*

Johnson and Dinin portray themselves to courts, and to the public, as defenders of the civil rights of the disabled community by enforcing the ADA on its behalf. *See Ocaris*, [ECF No. 78] at 40–41, 45–47, 54; *Ocaris*, [ECF No. 12-1] at 4. In fact, Scott R. Dinin P.A.'s website proclaimed that it ". . . . is dedicated to the RIGHTS of the disabled."[18] Dinin has also been quoted in publications stating that his plaintiffs are "heroes" and he "approaches ADA cases from a 'civil rights perspective.'"[19] Dinin asserts that "his clients try to end disputes before coming to him, but in many cases a lawsuit is 'the only way.'" *Id.* Regarding the lack of closed captions on video screens at the gas stations which Johnson sued, Dinin stated, "This is 2019. We all know a law was passed in 1990 saying any TV has to have captions available for it. . . . Someone's got to send

---

[16] Judith Equels, a Law Firm Management Consultant with the Florida Bar, who at Dinin's request following the May 9, 2019 hearing, evaluated Scott R. Dinin P.A., notes that the firm employs at least two other paralegals among his staff who qualify or may qualify for registration: Chris de Silva and Rebecca Johnson. *See Ocaris*, [ECF No. 81-4] at 2, 5–6, 12; *Ocaris*, [ECF No. 78] at 30. In addition, there is Christopher Madden who has been a paralegal at Scott R. Dinin, P.A. from November 2017 to present and received a Bachelor of Science degree from Embry-Riddle Aeronautical University in 2012. *See Christopher Madden LinkedIn Profile*, LinkedIn, https://www.linkedin.com/in/christopher-madden-114b6659/.

[17] In fact, the billing summary with the bill of costs submitted in *Ocaris*, for example, certainly indicates that Rebecca Johnson and Stephanie Serrano actually performed some of the tasks for which Dinin claimed credit, and that an unnamed person actually "draft[ed] and efile[d] [a] status report after Scott['s] approval." *See Ocaris*, [ECF No. 16-1] at 4.

[18] Scott R. Dinin P.A., https://www.dininlaw.com/.

[19] Raychel Lean, *Florida's Serial ADA Lawsuits: Long Overdue or 'Legal Extortion*,' Daily Business Review (Nov. 1, 2018), https://www.law.com/dailybusinessreview/2018/11/01/floridas-serial-ada-lawsuits-long-overdue-or-legal-extortion/.

a message to these companies . . . ."[20] and these suits are for "all the other [disabled] people coming to this [gas] station." *See Ocaris*, [ECF No. 35] at 40–41.

Johnson and Dinin profess to bring these gas pump cases motivated by a sincere desire to help the hearing-impaired community by obtaining closed caption capabilities on the gas pump videos. Dinin holds himself out as an attorney fighting for the rights of "heroes" like Johnson. At the May 9, 2019 hearing and in his filings in support of his request for attorney's fees in various ADA cases, Dinin echoes this same motivation. *See Ocaris*, [ECF No. 35] at 5, 19–20; *Ocaris*, [ECF No. 78] at 46–47 and *Caraf*, [ECF No. 12] at 7 ("Plaintiff . . . has shown that his claims are proper and well-motivated."). However, this proclaimed admirable motive is in stark contrast to Dinin and Johnson's true motivation for bringing these gas pump cases. The record, sadly, reveals that that they had a different, completely selfish motive in bringing these cases which benefit no one except Johnson and Dinin, and that they engaged in self-dealing without regard to the legitimacy of their ADA claims or the hearing-impaired community. The record, including numerous settlement agreements between Johnson and the gas station owners, exposes the true motive for these lawsuits. These agreements reveal that the majority of the settlement agreements which Dinin has produced for the Court's review, provide no remedial relief whatsoever, only payment of Johnson's legal fees and costs and dismissal with prejudice. *See generally Ocaris*, [ECF No. 39-8]. In the other settlements, the remedial remedy was simply turning off the videos at the gas pump, and, of course, payment of fees and costs and dismissal. *Id.* While these settlement agreements represent only a sampling of the gas pump suit settlements, at the May 9, 2019 hearing the Court was advised by Dinin and a gas station owner's attorney that turning off the videos was

---

[20] Raychel Lean, *Closed Captioning on Gas Pump TVs – the New Frontier of Florida's ADA Suits*, Daily Business Review (Jan. 17, 2019), https://www.law.com/dailybusinessreview/2019/01/17/closed-captioning-on-gas-pump-tvs-the-new-frontier-of-floridas-ada-suits/.

the typical remedial remedy required by the gas pump settlements. *See Ocaris*, [ECF No. 35] at 5–8, 40–41.

Thus, it is clear that these cases, rather than being a legal mechanism for meaningful remediation to benefit the purported beneficiaries, the hearing-impaired community, they are solely about profiting from inflated attorney's fees. And, Johnson and Dinin manipulated the process so as not to "sabotage" their profitable enterprise.

### 4.   *Johnson and Dinin Avoid Sabotaging Their Profitable ADA Cases*

Remember the October 28, 2018 e-mail discussed above in which Johnson instructs Dinin to remove one sentence from the proposed *Caraf* complaint?[21] Well, keeping in mind that the only remedial relief obtained in the settlements, where any relief was obtained, was turning off the videos, Johnson's instruction dramatically underscores that Johnson and Dinin's true motive behind filing these lawsuits was solely to obtain payment from the gas station owners without regard for the hearing-impaired community. Johnson instructs Dinin to:

> Please remove [from the proposed complaint] "Defendant's representative did not turn off the television media feature within the gas pump to prevent further discrimination." (I do not know if this is true or not. Perhaps they did after I drove off. In any case we do not need to <u>sabotage</u> our other cases by providing defendants a defense by giving them a partial remedy and answer to our complaints.)

*See Ocaris*, [ECF No. 39-2] at 1–5. (emphasis added). This e-mail lays bare the disturbing fact that because these gas pump cases were so profitable for Johnson and Dinin, they did not want to "sabotage" them by advising the gas station owners that they can easily avoid ADA liability by

---

[21] *See supra* note 9 and accompanying text.

simply turning off the videos.[22] In other words, Johnson was instructing Dinin to not kill the goose laying their golden eggs. Their singular motivation to obtain payment of legal fees begs the question, "What's in it for Johnson?" The answer follows.

### D. Dinin Shares Fees with Johnson

The answer is rather simple and straightforward—Dinin shares his excessive fees with Johnson, generally on a fifty-fifty split. Dinin's documents expose this illegitimate aspect of their enterprise. Those documents include settlement statements between Dinin and Johnson, together with the related checks payable to Johnson, which establish this long-standing unethical fee-sharing arrangement. *See generally Ocaris*, [ECF No. 39-1]. Faced with this irrefutable proof, at the July 22, 2019 hearing, Dinin and Johnson's attorneys candidly admitted this serious ethical transgression. *See Ocaris*, [ECF No. 78] at 21–23, 52–55. As Rule 4-5.4(a) of the Rules Regulating the Florida Bar commands, "A lawyer or law firm shall not share legal fees with a nonlawyer" except in limited circumstances not applicable here.

Johnson's fee sharing was not only unethical, it was very profitable for him. To begin, Johnson has no occupation, and except for his disability payments, has no other source of income. *See Ocaris*, [ECF No. 78] at 64–66. The federal income tax forms 1099-Misc. issued by Scott R. Dinin, P.A. reflect that it shared its fees with Johnson ($18,810.30 in 2016, $22,435.48 in 2017, and $43,376.00 in 2018), reflecting Johnson's substantial and increasing profits as their enterprise matured. *Id*. at 58–59.

---

[22] Even Dinin's attorney could not disagree with the Court's view of the e-mail: "I'm not telling you Your Honor is wrong in analyzing the e-mail, but that e-mail was from 2017 . . . . So, as bad as it is, it's not an indication that's where [Dinin and Johnson] started." *Ocaris*, [ECF No. 78] at 95. Johnson, rather than conceding the obvious, as Dinin candidly does, "ask[s] the Court to consider that Mr. Johnson was concerned that by inserting the factually incorrect statement, even if true, would incentivize defendants to permanently turn off their videos screens in lieu of installing closed captioning" which "was Mr. Johnson's litigation goal." *Ocaris*, [ECF No. 80] at 8. The Court has considered and rejects Johnson's alternate interpretation as not reasonable, particularly in view of those settlement agreements which provided no remediation, only attorney's fees and costs.

## IV.   SANCTIONS

When a court is presented with a case revealing a pattern of unethical, abusive litigation, such as that presented here, the court is obligated, in accordance with Canon 3(B)(6) of the Code of Conduct for United States Judges, to act to control its own affairs and to protect the judicial process. This case reveals an unethical, audacious, wholly self-serving joint enterprise between Johnson and Dinin who sought only to improperly profit from ill-gotten attorney's fees obtained by abusing the ADA. Johnson and Dinin did so by knowingly and continuously filing objectively frivolous claims, inflating their claims for attorney's fees, then sharing those attorney's fees, and misrepresenting material facts to the Court, all without regard for the interests of the hearing-impaired community whom they profess to benefit. Johnson and Dinin have failed to uphold the laudable goals of the ADA and instead have used the ADA as a guise for their enterprise with the hidden agenda of sharing unjustified attorney's fees. This conduct warrant sanctions pursuant to Rule 11, the Court's inherent powers, and Local Rule 11.1.

Both Johnson and Dinin violated Rule 11 by continuously filing claims for damages pursuant to the Florida Civil Rights Act which they knew were objectively frivolous because Johnson had not exhausted his administrative remedies. As detailed in the Show Cause Order, Johnson and Dinin were on notice, and had been for several years, that they had no viable FCRA claim, yet they included that claim in the gas pump complaints, as well as other ADA cases. *See generally Ocaris*, [ECF No. 36]. Moreover, the gas pump ADA claim cases are objectively frivolous in that they were filed not for the purpose of obtaining meaningful remediation, but rather for profit.[23] For the aforementioned reasons, the Court finds that Johnson and Dinin, in bad faith,

---

[23] That Johnson and Dinin believed that their claims were objectively frivolous is demonstrated not only by the fact that when their FCRA claims were challenged they were voluntarily dismissed immediately, but also by those settlement agreements which provided for no remediation of the purported ADA violations and by Johnson's "sabotage" e-mail.

filed the objectively frivolous claims, including their FCRA claims which were asserted to obtain compensatory damages which are not recoverable under the ADA.[24] Sanctions are also warranted pursuant to the Court's inherent power. Further justifying the Court's imposition of sanctions, the Court finds that Dinin, with Johnson's knowledge and assistance, knowingly, continuously, and in bad faith violated several Rules Regulating the Florida Bar warranting sanctions pursuant to Local Rule 11.1 including: (1) Rule 4-3.3 by making false statements to the Court; (2) Rule 4-1.5 by claiming clearly excessive and unreasonable attorney's fees; and (3) Rule 4-5.4 by improperly sharing fees.[25]

In addition to the dismissal of these two cases with prejudice and denial of Johnson's claim for recovery of attorney's fees and costs, and in consideration of the egregious and bad faith nature of Johnson and Dinin's conduct and their ability to pay, the Court imposes the following sanctions:

1. Johnson and Dinin shall disgorge all fees and costs recovered in each of the gas pump cases. This amount shall be returned to the defendants in those cases, together with a copy of this order on or before November 1, 2019, at which time Johnson and Dinin shall submit to the Court a full accounting of the amounts due to each Defendant and the amounts paid, which accounting shall be under oath.

2. In addition, Johnson and Dinin shall each pay a penalty of $59,900.00, which is an amount equal to the total amount to be disgorged to the defendants in the gas pump

---

[24] For example, in *Ocaris*, they represented to the Court that Johnson was entitled to $4,000.00 to "properly compensate Mr. Johnson for those losses." *Ocaris*, [ECF No. 35] at 9.

[25] Sanctions are not only warranted against Dinin for his ethical violations but also against Johnson who aided and abetted Dinin by reason of: his knowing participation in Dinin's ethical violations which the Court finds based on Johnson's knowledge that his FCRA claims were meritless, his "sabotage" e-mail to Dinin, his receiving a 50% share of Dinin's fees, as well as his sworn verification of the gas pump complaints, and his testimony at the May 9, 2019 hearing which was not credible. *See Baker*, 158 F.3d at 526–27 (finding that a district court may impose sanctions against a plaintiff for violating Rule 11).

cases. *See* [ECF No. 81] at 7.[26] In view of the nature of the ADA claims involved in these cases, and at Johnson's and Dinin's option, this penalty may be paid to Disability Independence Group, a 501(c)(3) non-profit organization located in Miami-Dade County, Florida protecting and enforcing the rights of individuals with disabilities. Otherwise the penalty shall be paid to the Clerk of the Court. Nevertheless, Johnson has represented to the Court that he is without the financial ability to pay a monetary penalty in any substantial amount. Johnson has provided, and the Court has reviewed, the financial information which he has submitted. In view of Johnson's representations that he is without the financial ability to pay a penalty in any substantial amount, the Court finds that providing an alternative, non-financial sanction is appropriate. And, in determining that some additional sanction, in addition to those set forth below, is necessary to discourage Johnson from engaging in further sanctionable conduct, such as that described above, the Court notes Johnson's failure to fully acknowledge and take responsibility for his own sanctionable conduct, instead implicitly and explicitly offering the unconvincing excuse that he was merely the victim of, and mislead by, his attorney, not a knowing participant in their illicit enterprise. Therefore, as an alternative to a monetary sanction, Johnson may elect to perform 400 community service hours for the Disability Independence Group, Inc., a 501(c)(3) non-profit corporation serving the interests of the disabled community (or such other similar entity which Johnson selects, subject to the Court's approval). One half of those hours shall be performed by October 1, 2020 and the remainder by October 1, 2021. Every six months Johnson must file a

---

[26] Johnson and Dinin represent that $23,500 is due but not yet paid pursuant to settlement agreements with defendants in other gas pump cases and that those defendants will be advised that they are not to pay the monies due. *See* [ECF No. 81] at 7.

report with the Court stating the number of hours performed to date. *See Singh v. Capital Univ. Law & Graduate Ctr.*, Case No. 00-3244, 2000 WL 1720616, *2 (6th Cir. Nov. 7, 2000); *see also Singh v. Capital Univ. Law & Graduate Ctr.*, Case No. 99-3564, 2000 WL 302778 (6th Cir. Mar. 17, 2000).

3.  Johnson and Dinin are enjoined from filing any ADA complaint in any federal or state court in Florida or any court outside of Florida without first obtaining written permission from this Court. In the event that it is later determined by this or any other court that Johnson or Dinin may file ADA complaints, if either does so, he shall file a copy of this order with the complaints.

4.  Pursuant to Canon 3(B)(6) of the Code of Conduct for United States Judges, the Court is compelled to, and will, refer Scott R. Dinin to the Southern District of Florida Ad Hoc Committee on Attorney Admissions, Peer Review and Attorney Grievance for investigation of his actions and omissions in the above styled cases, as well as his other ADA cases, which actions and omissions are set forth in this order and the Court's May 30, 2019 Show Cause Order.

5.  Pursuant to Canon 3(B)(6) of the Code of Conduct for United States Judges, the Court is compelled to, and will, refer Scott R. Dinin to the Florida Bar for investigation of his actions and omissions in the above styled cases, as well as his other ADA cases, which actions and omissions are set forth in this order and the Court's May 30, 2019 Show Cause Order.[27]

---

[27] The Ad Hoc Committee and the Florida Bar may also wish to review Dinin's competency to litigate cases and manage a law practice on their own in view of his recent admissions of his lack of experience, knowledge, and competence in these areas. *See Ocaris*, [ECF No. 39] at 5–6.

6.  Scott R. Dinin is ordered to file this Order in every ADA case he has filed in federal and state court within the last twenty-four months.

**V.      CONCLUSION**

For the reasons set forth above, both *Ocaris* and *Caraf* are **DISMISSED WITH PREJUDICE**. The Court retains jurisdiction to enforce the sanctions against Johnson and Dinin. The cases are **CLOSED** and all pending motions are denied as moot. The clerk is ordered to provide a copy of this order, the show cause order (*Ocaris*, [ECF No. 36]), and the transcripts for the May 9, 2019 (*Ocaris*, [ECF No. 35]) and July 22, 2019 (*Ocaris*, [ECF No. 78]) hearings to the Florida Bar and to the Ad Hoc Committee on Attorney Admissions, Peer Review and Attorney Grievance.

**DONE** and **ORDERED** in Chambers in Miami, Florida on August 23, 2019.

PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

cc: counsel of record